## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| PHILIP ANGUS, MARK WIEDDER, TANIA GARCIA, EDWARD BURDICK, RAY HARTER, DANIELLE MEIS, JONTHAN KELLEY, RYAN MARTIN, ARTHUR DORE, ANN KELLY, KEITH KELLY, RANDY MONIZ, HOLLY RINGLING, JOHN SCOTT SMITH, CHRISTOPHER P. KENNEDY, RAFAEL HERNANDEZ, WILLIAM WORTON, HASSAN NASRALLAH, NATHAN SILVA, LAURIE EWING SCANLON, EVERETT TURNER, and ALLIE MCLAUGHLIN, on behalf of themselves and all others similarly situated, | Case No.: 2:21-cv-10657-MFL-DRG  Hon. Matthew F. Leitman |
| Plaintiffs, vs. | |
| FLAGSTAR BANK, N.A., f/k/a FLAGSTAR BANK, FSB, a Michigan-based federally chartered stock savings bank, | |
| Defendant. | |

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND TO DIRECT NOTICE OF PROPOSED SETTLEMENT TO THE CLASS

Proposed Settlement Class Representatives Philip Angus, Mark Wiedder,

Tania Garcia, Ray Harter, Danielle Meis, Jonathan Kelley, Ryan Martin, Arthur

Dore, Randy Moniz, Holly Ringling, John Scott Smith, Christopher P. Kennedy, Rafael Hernandez, William Worton, Hassan Nasrallah, Nathan Silva, Laurie Ewing Scanlon, Everett Turner, and Allie McLaughlin ("Plaintiffs"), on behalf of themselves and all others similarly situated, seek the Court's approval of the Settlement Agreement and Release attached hereto, and submit that the Settlement Class should be preliminarily certified, and the Settlement preliminarily approved as fair, reasonable, and adequate. Plaintiffs request the Court enter the order proposed by the Parties directing that the Settlement Class be notified of the proposed Settlement in the manner set forth in the Notice Plan and schedule a Final Approval Hearing. This Motion is supported by the Brief contained herein. The Parties have conferred, and Defendant does not oppose the relief requested herein.

Dated: October 1, 2025

Respectfully Submitted,

*/s/ John A. Yanchunis*

John A. Yanchunis
**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
(813) 223-5505
jyanchunis@ForThePeople.com

*Interim Lead Counsel – First Data Breach, Interim Co-Lead Counsel – Second Data Breach, and Proposed Class Counsel*

Norman E. Siegel MO #44378

**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100
siegel@stuevesiegel.com

*Interim Co-Lead Counsel – Second Data Breach and Proposed Class Counsel*

Jeffrey S. Goldenberg
**GOLDENBERG SCHNEIDER, L.P.A**
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
Tel: (513) 345-8291
Email: jgoldenberg@gs-legal.com

Gary E. Mason
**MASON LLP**
5335 Wisconsin Avenue, NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290
Email: gmason@masonllp.com

Charles E. Schaffer
**LEVIN, SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (212) 592-1500
Email: cschaffer@lfsblaw.com

M. Anderson Berry
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, CA 95825
(916) 777-7777
aberry@justice4you.com

Brian D. Flick (OH #0081605)
**DannLaw**

iii

P.O. Box 6031040
Cleveland, Ohio 44103
Phone: (216) 373-0539
Fax: (216) 373-0536
notices@dannlaw.com

Bryan L. Bleichner
**Chestnut Cambronne PA**
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Telephone: (612) 339-7300
bbleichner@chestnutcambronne.com

***Interim Executive Committee – First Data
Breach***

E. Powell Miller
**The Miller Law Firm, P.C.**
950 W. University Drive, Suite 300
Rochester, Michigan 48307
Telephone: (248) 841-2200
epm@millerlawpc.com

Rachel K. Tack
**Zimmerman Reed LLP**
1100 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402
Telephone: (612) 341-0400
Email: rachel.tack@zimmermanreed.com

Danielle L. Perry
**Mason LLP**
5335 Wisconsin Avenue NW, Suite 640
Washington, District of Columbia 20015
Telephone: (202) 429-2290
Email: dperry@masonllp.com

Michael Reese
**Reese LLP**

iv

100 W. 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 594-5300
Email: mreese@reesellp.com

Jamisen A. Etzel
**Lynch Carpenter LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222
Telephone: (412) 322-9243
Email: jamisen@lcllp.com

*Plaintiffs Executive Committee – Second Data Breach*

David H. Fink
Fink Bressack PLLC
38500 Woodward Avenue, Suite 350
Bloomfield Hills, Michigan 48304
Telephone: (248) 971-2500
Email: dfink@finkbressack.com

*Interim Liaison Counsel – Second Data Breach*

Adam E. Polk (State Bar No. 273000)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
apolk@girardsharp.com

Krysta Kauble Pachman (280951)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029
Tel: (310) 789-3100
kpachman@susmangodfrey.com

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, do hereby certify that on October 1, 2025, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

*/s/ John A. Yanchunis*
John A. Yanchunis

## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

PHILIP ANGUS, MARK WIEDDER, TANIA GARCIA, EDWARD BURDICK, RAY HARTER, DANIELLE MEIS, JONTHAN KELLEY, RYAN MARTIN, ARTHUR DORE, ANN KELLY, KEITH KELLY, RANDY MONIZ, HOLLY RINGLING, JOHN SCOTT SMITH, CHRISTOPHER P. KENNEDY, RAFAEL HERNANDEZ, WILLIAM WORTON, HASSAN NASRALLAH, NATHAN SILVA, LAURIE EWING SCANLON, EVERETT TURNER, and ALLIE MCLAUGHLIN, on behalf of themselves and all others similarly situated,

Case No.: 2:21-cv-10657-MFL-DRG

Hon. Matthew F. Leitman

       Plaintiffs,

vs.

FLAGSTAR BANK, N.A., f/k/a FLAGSTAR BANK, FSB, a Michigan-based federally chartered stock savings bank,

       Defendant.

## PLAINTIFFS' BRIEF IN SUPPORT OF THEIR UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND TO DIRECT NOTICE OF PROPOSED SETTLEMENT TO THE CLASS

# **TABLE OF CONTENTS**

CONCISE STATEMENT OF THE ISSUES PRESENTED............................................. iii

CONTROLLING OR MOST APPROPRIATE AUTHORITIES .................................. iv

TABLE OF AUTHORITIES......................................................................................v

I.     INTRODUCTION ..............................................................................................1

II.    FACTUAL BACKGROUND ..............................................................................2

       A. Overview of the Litigation.......................................................................2

       B. The Terms of the Proposed Settlement ...................................................3

            1.   The Settlement Class...........................................................................3

            2.   The Settlement Fund ...........................................................................4

            3.   Provision of Notice to the Settlement Class ......................................6

            4.   Opt-Out and Objection Procedures....................................................8

            5.   Service Awards, Attorneys' Fees, and Expenses...............................9

            6.   Release Provisions ............................................................................10

III.   THE SETTLEMENT CLASS MEETS THE CERTIFICATION REQUIREMENTS 10

       A. The Settlement Class Satisfies the Requirements of Rule 23(A)  ........11

            1.   The Settlement Class is Sufficiently Numerous ..............................11

            2.   Common Questions of Law and Fact Exist ......................................11

            3.   Plaintiffs' Claims are Typical of the Class......................................12

            4.   Plaintiffs Satisfy the Adequacy Requirement ..................................12

       B. The Settlement Class Satisfies the Requirements of Rule 23(B)(3) ....13

            1.   Common Questions of Law or Fact Predominate.............................13

            2.   A Class Action is Superior  ...............................................................14

i

IV.    THE COURT SHOULD APPOINT CLASS COUNSEL ...........................................14

V.    THE COURT SHOULD DIRECT NOTICE TO THE CLASS ..................................15

    A.  The Standard for Issuance of Notice......................................................................15

    B.  The Settlement is Fair, Reasonable, and Adequate ................................................17

        1.  Plaintiffs and Their Counsel Have Provided Excellent Representation to the Settlement Class.......................................................................................17

        2.  The Settlement Resulted from Arm's Length Negotiations...........................17

        3.  The Relief Provided by the Settlement is Excellent ....................................18

        4.  The Settlement Treats Class Members Equitably ..........................................19

        5.  Other Agreements ..........................................................................................19

    C.  Sixth Circuit: The Settlement is Fair, Reasonable, and Adequate ........................20

        1.  There Is No Risk of Fraud or Collusion.........................................................20

        2.  Complexity, Expense, and Duration Support Approval..................................21

        3.  The Amount of Discovery Engaged in Supports Approval ............................22

        4.  The Likelihood of Success on the Merits Supports Approval .......................22

        5.  The Views of Plaintiffs and Counsel Support Approval ................................23

        6.  The Public Interest Supports Approval of the Settlement...............................23

VI.    THE COURT SHOULD APPROVE THE NOTICE PLAN ......................................24

VII.    CONCLUSION.......................................................................................................25

## <u>CONCISE STATEMENT OF THE ISSUES PRESENTED</u>

1.      Whether the Court should preliminarily approve the Parties' proposed class action Settlement, enter the order proposed by Plaintiffs directing the Settlement Class be notified of the proposed Settlement in the manner set forth in the Notice Plan, and schedule a Final Approval Hearing.

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

*Thomsen v. Morley Companies, Inc.*, 639 F. Supp. 3d 758 (E.D. Mich. 2022) (Ludington, J.);

*Hummel v. Teijin Auto. Techs., Inc*., No. 2:23-CV-10341, 2024 WL 4278752 (E.D. Mich. Sept. 24, 2024) (Leitman, J.).

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Barry v. Corrigan*, 79 F. Supp. 3d 712, 731 (E.D. Mich. 2015) .............................11

*Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) ...............................12

*Calloway v. Caraco Pharm. Lab'ys*, 287 F.R.D. 402, 407 (E.D. Mich. 2012).........14

*Daffin v. Ford. Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) ................................11

*Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886, 894 (6th Cir. 2019) ............... 16, 20

*Garner Props. & Mgmt. v. City of Inkster*, 333 F.R.D. 614, 626 (E.D. Mich. 2020)

.................................................................................................................11, 16

*Hummel v. Teijin Auto. Techs., Inc.*, No. 2:23-CV-10341, 2024 WL 4278752 (E.D.

Mich. Sept. 24, 2024) ..................................................................................iv, 10

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996) ...............................13

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen.*

*Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)...................................................20

*Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008).......20

*Poplar Creek Dev. Co. v. Chesapeake Appalachia*, L.L.C., 636 F.3d 235, 245 (6th

Cir. 2011) ............................................................................................................20

*Sheick v. Auto. Component Carrier, LLC*, No. 09-14429, 2010 WL 3070130, at *11

(E.D. Mich. Aug. 2, 2010) ....................................................................................16

*Thomsen v. Morley Companies, Inc.*, 639 F. Supp. 3d 758 (E.D. Mich. 2022).....10, passim

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)..........................11, 12, 13

## **Rules**

Fed. R. Civ. P. 23(a)(1)...................................................................................11

Fed. R. Civ. P. 23(a)(2)...................................................................................11

Fed. R. Civ. P. 23(a)(3)...................................................................................12

Fed. R. Civ. P. 23(a)(4)...................................................................................12

Fed. R. Civ. P. 23(b)(3)...................................................................................13

Fed. R. Civ. P. 23(c)(2)(B)..............................................................................24

Fed. R. Civ. P. 23(e) .......................................................................................11

Fed. R. Civ. P. 23(e)(1)(B)..............................................................................24

Fed. R. Civ. P. 23(e)(2).......................................................................... 16, 18, 20

Fed. R. Civ. P. 23(g)(1) ...................................................................................15

## I.      INTRODUCTION

Following hard-fought settlement negotiations, including two full-day mediation sessions guided by the Honorable Gerald E. Rosen (Ret.) acting as mediator, the Parties[1] have reached a proposed Settlement to resolve claims arising from the two Data Breaches Flagstar experienced in 2021. The Settlement, achieved only after significant investigation, motion practice, and extended arm's-length negotiations, creates a non-reversionary common fund of $31,500,000 for the benefit of approximately 2,187,170 Settlement Class Members, including (i) reimbursement for Documented Monetary Losses of up to $25,000; (ii) three years of Credit Monitoring services; (iii) California Statutory Payments of up to $100; and (iv) Residual Cash Payments of up to $599. Subject to Court approval, the Settlement Fund will also pay for Notice Costs, Administrative Costs, Service Awards, and Attorneys' Fees and Expenses.

Considering the valuable benefits tailored to the facts of the case, and the risks faced through continued litigation, the Court should conclude that it is likely to find the Settlement "fair, reasonable, and adequate" under Rule 23(e)(2). Plaintiffs thus move for an order preliminarily approving the proposed Settlement, appointing

---

[1] Capitalized terms used in this Motion and Brief have the same meaning as in the Settlement Agreement and Release, attached hereto as Ex. A. The "Parties" to the Settlement means the Settlement Class Representatives, on behalf of themselves and the Settlement Class, and Flagstar. Ex. A ¶ 2.26.

Class Counsel and the Settlement Class Representatives, authorizing the provision of notice to the Settlement Class, and scheduling a Final Approval Hearing.

This request is unopposed. In support of this Motion, Plaintiffs submit the Settlement Agreement ("Settlement Agreement" or "Agreement") (**Ex. A**), which includes a Consumer Settlement Benefits Plan ("CSBP") (**Ex. A-1**); the Joint Declaration of Proposed Co-Class Counsel John A. Yanchunis and Norman E. Siegel ("Joint Decl.") (**Ex. B**); the Declaration of Brandon Schwartz on behalf of the proposed Settlement Administrator, Eisner Advisory Group LLC ("EAG"), ("Schwartz Decl.") (**Ex. C**), including the Notice Plan (**Exs. C-3–C-5**) and Claim Form (**Ex. C-6**); the Proposed Order preliminarily approving the Settlement and directing notice (**Ex. D**); and a Proposed Timeline of Settlement Events (**Ex. E**).

## II.    FACTUAL BACKGROUND

### A.    Overview of the Litigation

On March 5, 2021, Flagstar announced that cyber criminals infiltrated a file sharing platform used by Flagstar and accessed the personally identifiable information ("PII") of approximately 1.47 million individuals in the United States (the "First Data Breach"). On June 17, 2022, Flagstar announced that cyber criminals infiltrated Flagstar's network and accessed the PII of approximately 1.5 million individuals in the United States (the "Second Data Breach") (together the "Data Breaches"). The Data Breaches impacted the personal information of approximately

2

2,187,170 U.S. consumers, including approximately 364,000 California residents.

Multiple putative class action lawsuits were filed against Flagstar, which were then consolidated in *Angus et al. v. Flagstar Bank, N.A.*, Case No. 2:21-cv-10657-MFL-DRG on August 25, 2025. ECF No. 108. A Fifth Consolidated Class Action Complaint ("5AC") was filed in the consolidated Action for purposes of effectuating the proposed Settlement. ECF No. 112.

Parallel to their litigation, the Parties engaged in arm's-length settlement negotiations beginning in April 2025. Judge Rosen oversaw the negotiations, including two in-person mediation sessions on July 18, 2025 and August 8, 2025. On August 8th, the Parties accepted a mediator's proposal to resolve the Action, and executed a binding term sheet, which was superseded by the Settlement Agreement.

### B.    The Terms of the Proposed Settlement

#### 1.    The Settlement Class

The proposed Settlement Class is defined as follows:

> All persons in the United States whose personally identifying information ("PII") was impacted by either or both of the two Data Breaches Flagstar experienced in 2021, as reflected in the Class List.

Ex. A ¶ 2.34. The Settlement Class includes (i) a Nationwide Settlement Class, representing approximately 2,187,170 individuals impacted by the Data Breaches and (ii) a California Settlement Class, representing approximately 364,000

California Settlement Class members. *Id.*[2]

### 2.     The Settlement Fund

Following Preliminary Approval, Flagstar will make a payment of $31,500,000 into a Settlement Fund for (i) Notice Costs; (ii) Administrative Costs; (iii) Service Awards approved by the Court; (iv) Attorneys' Fees and Expenses approved by the Court; and (v) Settlement benefits for the Settlement Class as provided for in the Consumer Settlement Benefits Plan (Ex. A-1) as approved by the Court. Ex. A ¶¶ 3.1–3.2. The Settlement Class Member benefits include:

- **Reimbursement of Documented Monetary Losses.** Reimbursement of documented Monetary Losses fairly traceable to the Data Breaches up to $25,000 per individual. Monetary Losses may include, without limitation, unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs that were incurred on or after the Data Breaches through the date of Claim submission; and miscellaneous expenses. Ex. A-1, CSBP ¶ 2.

- **Credit Monitoring.** Three years of Credit Monitoring which will include three bureau credit monitoring and $1 million in identity theft insurance protections. *Id.* ¶ 3.

- **California Statutory Payment.** Settlement Class Members who resided in California at the time of the Data Breaches may elect to receive a statutory cash payment of up to $100 on a claims-made basis. To be eligible, California Settlement Class Members must submit an attestation that they were residents

---

[2] The Settlement excludes (i) Flagstar, any entity in which Flagstar has a controlling interest, and of Flagstar's officers, directors, legal representatives, Successors, Subsidiaries, and assigns; (ii) any judge, justice, or judicial officer presiding over the Action and the members of their immediate families and judicial staff; and (iii) any individual who timely and validly opts out of the Settlement Class. *Id.*

of California at the time of the Data Breaches. This benefit may be stacked with any other claim. *Id.* ¶ 4.

- **Residual Cash Payment.** All Settlement Class Members may also submit a claim for a Residual Cash Payment. The amount of this benefit shall be determined pro rata based on the amount remaining in the Settlement Fund following payment of the Attorneys' Fees and Expenses, Service Awards, Administrative Costs, Credit Monitoring costs, Claims for reimbursement of documented Monetary Losses, and claims for California Statutory Payments. The Residual Cash Payment shall not exceed $599 per individual, but is currently estimated at $60. *Id.* ¶ 5.

Settlement Class Members seeking any of these benefits must complete and submit either a written or online Claim Form to the Settlement Administrator, postmarked or electronically submitted on or before the Claims Deadline. Ex. B ¶ 38; Ex. A-1 ¶ 15. Settlement Class Members with Monetary Losses must submit documentation supporting their Claims. Ex. B ¶ 38; Ex. A-1 ¶ 2.

In the event that the aggregate amount of payments for unreimbursed documented Monetary Losses and California Statutory Payments exceeds the remaining amount in the Settlement Fund after payment of Attorneys' Fees and Expenses, Service Awards, Administrative Costs, and Credit Monitoring services, then each Settlement Class Member's Claim for documented Monetary Losses and California Statutory Payments shall be proportionately reduced on a pro rata basis, and there will be no Residual Cash Payment. Ex. A-1 ¶ 16; Ex. B ¶ 39.

If any money remains in the Settlement Fund more than one hundred and fifty (150) days after the distribution of Settlement payments to the participating

Settlement Class Members, or thirty (30) days after all reissued Settlement checks are no longer negotiable, whichever occurs later, any remaining money shall be used to purchase an extension of the Credit Monitoring services for those who submitted an Approved Claim for that relief, and, in the event the amount remaining is insufficient to purchase any additional Credit Monitoring term, awarded to the designated and Court-approved cy près recipients. Ex. A-1 ¶ 13; Ex. B ¶ 40.

### 3.    Provision of Notice to the Settlement Class

Proposed Class Counsel have retained, and request that the Court appoint, EAG as the Settlement Administrator to provide notice to Settlement Class Members and to process claims. Ex. B ¶ 41; Ex. C ¶ 1. EAG is a widely-regarded expert with the experience and capability to handle a case of this magnitude. Ex. C ¶ 2. Plaintiffs propose that Notice be provided as follows:

Within thirty (30) days of entry of the Preliminary Approval Order, Flagstar will provide the Settlement Administrator a Class List, which shall include Settlement Class Members' full names, last known postal addresses, and email addresses (to the extent available). Ex. A ¶ 9.2. The Settlement Administrator shall provide direct Notice to Settlement Class Members by the Notice Date, which is sixty (60) days from the entry of the Preliminary Approval Order. *Id.* ¶¶ 2.21, 9.2.

Where physical addresses have been provided for Settlement Class Members, Postcard Notices (Ex. C-3) shall be sent, with an attached "tear off" claim form with

prepaid postage for those who wish to make claims that do not require documentation, *e.g.*, Claims for Credit Monitoring, a Residual Cash Payment, and/or California Statutory Payment. Ex. A-1 ¶ 6. Where email addresses have been provided for Settlement Class Members, Email Notice (Ex. C-4) shall also be sent, in addition to the Postcard Notice. *Id.* Moreover, the Settlement Administrator will create a Settlement Website where Settlement Class Members can obtain notice of and information about the Settlement and submit claims. Ex. C ¶¶ 16–17. The Long Form Notice (Ex. C-5) will be posted on the Settlement Website, along with other important documents such as the Settlement Agreement, and a toll-free help line will be available to answer Settlement Class Members' questions. Ex. C ¶¶ 16–18.

The Notice Plan satisfies the "best notice practicable" standard pursuant to Rule 23 of the Federal Rules of Civil Procedure by giving direct summary postcard notice to the approximately 2,187,170 Settlement Class Members via U.S. mail. *See* Ex. A § 9; Ex. A-1 ¶ 6; Ex. B ¶¶ 42–45; Ex. C ¶ 21. In proposed Class Counsel's experience, and according to EAG, the reach of the Notice Plan meets that of other court-approved notice programs, and has been designed to meet due process requirements, including the "desire to actually inform" requirement.  Ex. B ¶¶ 42–45; Ex. C ¶ 21. The Notice Plan is thus the best notice practicable here.

The claims process similarly draws upon the most up-to-date techniques to facilitate participation, including the ability to submit claims electronically on the

Settlement Website or by mail.  Ex. A-1 ¶ 15; Ex. B ¶ 46.

### 4.    Opt-Out and Objection Procedures

Any Settlement Class Member who wishes to opt-out of the Settlement must

submit a request for exclusion to the Settlement Administrator, postmarked no later

than the Opt-Out Deadline. Ex. A ¶ 15.1. The written request for exclusion must:

> (i) identify the case name of the Action; (ii) identify the name and
> address of the Settlement Class Member seeking exclusion; (iii) be
> personally signed by the Settlement Class Member seeking exclusion;
> (iv) include a statement clearly indicating the individual's intent to be
> excluded from the Settlement; and (v) request exclusion only for that
> one Settlement Class Member whose personal signature appears on the
> request.

*Id.* ¶ 15.2. Any Settlement Class Member who submits a valid and timely request for

exclusion shall not: (i) be bound by any orders or judgments entered in connection

with the Settlement; (ii) be entitled to any relief under, or be affected by, the

Agreement; (iii) gain any rights by virtue of the Agreement; or (iv) be entitled to

object to any aspect of the Settlement. *Id.* ¶ 15.4.

Any Settlement Class Member who does not submit a valid and timely request

for exclusion shall be deemed to be part of the Settlement Class and shall be bound

by all applicable subsequent proceedings, orders, and judgments. *Id.* ¶ 15.5.

Any Settlement Class Member who wishes to object to the Settlement must

submit a written objection to the Court by the Objection Deadline. *Id.* ¶ 16.1. The

objection must include:

> (i) the case name and number of the Action; (ii) the name, address, telephone number of the objecting Settlement Class Member and, if represented by counsel, of his/her counsel; (iii) a statement of whether the objection applies to only the objector, to a specific subset of the class, or to the entire class; (iv) a statement of the specific grounds for the objection; and (v) a statement of whether the objecting Settlement Class Member intends to appear at the Final Approval Hearing, and if so, whether personally or through counsel.

*Id.* ¶ 16.2. Any Settlement Class Member who fails to object shall be deemed to have waived any such objection, shall not be permitted to object to any terms or approval of the Settlement at the Final Approval Hearing, and shall be precluded from seeking any review of the Settlement by appeal or any other means. *Id.* ¶ 16.4.

### 5.     Service Awards, Attorneys' Fees, and Expenses

At least twenty-one (21) days before the Objection Deadline, Proposed Class Counsel will separately move the Court for an order awarding Attorneys' Fees of up to one-third of the Settlement Fund, or $10,500,000, and reimbursement of Expenses up to $500,000 incurred in prosecuting and settling the Action to be paid exclusively from the Settlement Fund. *See* Ex. A ¶ 18.1. Proposed Class Counsel will also request Service Awards of up to $2,500 for each Settlement Class Representative[3] to be paid exclusively from the Settlement Fund. *Id.* ¶ 17.1.[4]

---

[3] Along with Michael McCarthy and Erin Tallman, former named Plaintiffs in the consolidated action before they were dismissed at the motion to dismiss stage.

[4] Flagstar agrees not to oppose the Service Award request. *Id.* ¶ 17.2. Attorneys' Fees and Expenses were not discussed in any manner until the Parties reached agreement on the material terms of the Settlement, including the payment of the Settlement Fund. Ex. B ¶ 49. There is no "clear sailing" provision.

### 6.   Release Provisions

In exchange for the benefits provided under the Settlement, Settlement Class Members will release Flagstar from claims that relate to or arise from the Data Breaches or the facts alleged in the Action. Ex. A ¶¶ 2.29, 2.30, 13.1.

## III.   THE SETTLEMENT CLASS MEETS THE CERTIFICATION REQUIREMENTS.

In *Thomsen v. Morley Companies, Inc*., 639 F. Supp. 3d 758 (E.D. Mich. 2022), Judge Ludington explained the criteria for approving a class action settlement in the data breach context before analyzing those criteria and granting preliminary approval. This Court followed that analysis in granting final approval of another data breach class action settlement in *Hummel v. Teijin Auto. Techs., Inc*., No. 2:23-CV-10341, 2024 WL 4278752 (E.D. Mich. Sept. 24, 2024) (Leitman, J.). *See also Teijin*, at ECF No. 31 (Motion for Final Approval relying extensively on *Morley Cos*.).

Plaintiffs rely on Judge Ludington's Order throughout this motion as it offers useful guidance in the data breach context, including the standards set forth below:

> The claims of "a class proposed to be certified for purposes of settlement[ ] may be settled, voluntarily dismissed, or compromised only with the court's approval."

> The question at the preliminary-approval stage is "simply whether the settlement is fair enough" to begin the class-notice process. At the preliminary-approval stage, Rule 23(e) requires the parties to "provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." "The court must direct notice" of a proposed settlement "to all class members who would be bound" by it if "the court will likely be able to approve the proposal

under Rule 23(e)(2)[ ] and certify the class for purposes of judgment on the proposal."

After preliminary approval, notice, and time for objections, the proposed settlement may be finally approved "only after a hearing and only on finding that it is fair, reasonable, and adequate."[5]

## A.    The Settlement Class Satisfies the Requirements of Rule 23(a).

### 1.    The Settlement Class is Sufficiently Numerous.

"The Class must be 'so numerous that joinder of all members is impracticable.'" *Id.* at 765 (quoting Fed. R. Civ. P. 23(a)(1)). "Although 'there is no strict numerical test, substantial numbers usually satisfy the numerosity requirement.'" *Id.* (quoting *Daffin v. Ford. Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006)). The proposed class includes approximately 2,187,170 individuals. Ex. A ¶ 2.34. "This 'sheer' volume satisfies numerosity." *Morley Cos.*, 639 F. Supp. 3d at 765 (quoting *Barry v. Corrigan*, 79 F. Supp. 3d 712, 731 (E.D. Mich. 2015)).

### 2.    Common Questions of Law and Fact Exist.

"The Class must share common questions of law or fact." *Id.* (citing Fed. R. Civ. P. 23(a)(2)). "Commonality requires 'a common contention' that, if resolved, would resolve claims of all class members 'in one stroke.'" *Id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "A common question of law or fact exists if all the Class's members suffered the same injury." *Id.* (citing *Dukes*, 564

---

[5] *Id*. at 764 (citations omitted) (quoting Fed. R. Civ. P. 23(e); *Garner Props. & Mgmt. v. City of Inkster*, 333 F.R.D. 614, 626 (E.D. Mich. 2020)).

U.S. at 349–50). Common to all Class Members is whether Flagstar's data security adequately protected their personal information. *See generally* 5AC at ¶ 336, ECF No. 112, PageID.2336–37. Commonality is satisfied because "[t]his factual question is common to all the members of the Class. Therefore, it is capable of class-wide resolution, satisfying commonality." *Morley Cos.*, 639 F. Supp. 3d at 765.

### 3. Plaintiffs' Claims Are Typical of the Class.

"'[T]he claims or defenses of the representative parties [must be] typical of the claims and defenses of the class.'" *Id.* (quoting Fed. R. Civ. P. 23(a)(3)). "Typicality is satisfied if the representative's claim 'arises from the same [transaction or occurrence as] the claims of other class members, and [they] are based on the same legal theory.'" *Id.* (quoting *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007)). Settlement Class Representatives' claims arise from the same Data Breaches that impacted other Class Members. *See* 5AC ¶¶ 2–3, 7, ECF No. 112, PageID.2221–3. Typicality is satisfied because resolving Settlement Class Representatives' claims would also resolve the Class Members' claims.[6]

### 4. Plaintiffs Satisfy the Adequacy Requirement.

"Finally, 'the representative parties [must] fairly and adequately protect the interest of the class.'" *Id.* (quoting Fed. R. Civ. P. 23(a)(4)). "Adequacy is governed

---

[6] *See, e.g.*, *Morley Cos.*, 639 F. Supp. 3d at 765 ("The claims of Plaintiffs and the Class arise from the same Data Incident . . . . Thus, resolving one plaintiff's claims would resolve them for the Class, satisfying typicality.").

by two criteria: '1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'"[7]

Settlement Class Representatives' and the Class's claims arise from the Data Breaches' impact on their PII. Settlement Class Representatives actively participated by assisting with the complaints and approving the Settlement. Ex. B ¶ 60. The proposed Service Awards do not misalign their interests. This satisfies adequacy.[8]

### B.   The Settlement Class Satisfies the Requirements of Rule 23(b)(3).

"The Class must also satisfy one of the three requirements of Rule 23(b)." *Id.* (citing *Dukes*, 564 U.S. at 345). "Rule 23(b)(3) … permits class actions if (1) the common questions of law and fact predominate over any questions affecting only individuals and (2) the class-action mechanism is superior to the other available methods for the fair and efficient adjudication of the controversy." *Morley Cos.*, 639 F. Supp. 3d at 766 (citing Fed. R. Civ. P. 23(b)(3)).

### 1.   Common Questions of Law or Fact Predominate.

"Predominance is satisfied if the Class's individual questions of law or fact

---

[7] *Id.* at 765–66 (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996)).

[8] *See, e.g., Morley Cos.*, 639 F. Supp. 3d at 766 ("Plaintiffs add that they have 'participated actively' in the case. And the proposed lead-plaintiff incentive award does not misalign the interests of Plaintiffs and the Class.") (citations omitted).

'are sufficiently cohesive to warrant adjudication by representation.'"[9] Settlement Class Representatives allege that Flagstar acted uniformly as to Plaintiffs and Class Members, resulting in the theft of their personal information and its placement on the dark web. *See generally* 5AC, ECF No. 112; *id.*at ¶ 336, PageID.2336–7. This satisfies the predominance requirement.[10]

### 2.   A Class Action is Superior.

"Superiority 'is met if the class action is a better way than individual litigation to adjudicate a claim.'"[11] "A class action is superior if it would 'vindicate[ ] the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'"[12] It would be impractical for 2,187,170 individuals to bring lawsuits against Flagstar regarding the Data Breaches. Thus, a class action is the better method to vindicate the Class's rights, superiority is satisfied.[13]

## IV.   THE COURT SHOULD APPOINT CLASS COUNSEL.

"After certifying a class, the court must appoint class counsel." *Morley Cos.*,

---

[9] *Id.* (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997)).

[10] *See, e.g.*, *Morley Cos.*, 639 F. Supp. 3d at 766 (finding predominance where "the injury of each member of the Class—the theft of personal information—was the result of Defendant's alleged 'uniform' course of conduct").

[11] *Id.* (quoting *Calloway v. Caraco Pharm. Lab'ys*, 287 F.R.D. 402, 407 (E.D. Mich. 2012)).

[12] *Id.* (quoting *Amchem*, 521 U.S. at 617).

[13] *See, e.g., id.* (finding superiority where, "[b]ecause the data-breach issues predominate, it would be impractical for the members of the Class to individually sue the same defendant for theft of their personal information").

639 F. Supp. 3d at 766 (citing Fed. R. Civ. P. 23(g)(1)). In making this determination, the Court must consider:

> (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class.

*Id.* (citing Fed. R. Civ. P. 23(g)(1)).

Proposed Class Counsel readily satisfy the criteria. They, and their firms, have invested significant time investigating and litigating the claims in the Action. Ex. B ¶ 1. Proposed Class Counsel also have extensive experience in prosecuting data-breach class actions. *Id.* ¶¶ 3–10. Through that experience, Proposed Class Counsel have ample knowledge of the applicable law and the necessary resources. *Id.* As a result of Proposed Class Counsel's efforts, the proposed Settlement Agreement provides significant monetary relief to the Settlement Class. Accordingly, John Yanchunis of Morgan & Morgan Complex Litigation Group and Norman Siegel of Stueve Siegel Hanson LLP should be appointed as Class Counsel.[14]

## V.   THE COURT SHOULD DIRECT NOTICE TO THE CLASS.

### A.   The Standard for Issuance of Notice.

"There are two steps for approving class settlements: '(1) preliminary

---

[14] *See, e.g., Morley Cos.*, 639 F. Supp. 3d at 767 (appointing counsel who "invested many hours investigating the claims," "has extensive experience in prosecuting data-breach class actions," and "has ample knowledge of the applicable law").

approval of the settlement and the content and method of class notice; and (2) final approval after notice and a fairness hearing.'"[15]

"At the preliminary-approval stage, the issue is whether the Agreement 'is fair enough . . . to expend the effort and costs associated with sending potential class members notice and processing opt-outs and objections.'"[16] "The Agreement should be preliminarily approved if it '(1) does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment to class representatives or of segments of the class, or excessive compensation for attorneys, and (2) appears to fall within the range of possible approval' at the final-approval stage."[17] Rule 23(e)(2) provides that a proposed settlement may be approved only after a hearing and on a "finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Approval of a settlement is committed to the sound discretion of the court. *See Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886, 894 (6th Cir. 2019).

> Four factors govern whether the Agreement is 'fair, reasonable, and adequate': (1) whether the class representatives and class counsel have adequately represented the class, (2) whether the proposal was negotiated at arm's length, (3) whether the relief provided for the class is adequate, and (4) whether the proposal treats class members equitably relative to each other.

---

[15] *Id.* (quoting *Sheick v. Auto. Component Carrier, LLC*, No. 09-14429, 2010 WL 3070130, at *11 (E.D. Mich. Aug. 2, 2010)).

[16] *Id.* (quoting *Garner Props. & Mgmt. v. City of Inkster*, 333 F.R.D. 614, 626 (E.D. Mich. 2020)).

[17] *Id.* (quoting *Sheick*, 2010 WL 3070130, at *11).

*Morley Cos.*, 639 F. Supp. 3d at 767–68.

> ### B.  The Settlement is Fair, Reasonable, and Adequate.
>
> #### 1.  Plaintiffs and Their Counsel Have Provided Excellent Representation to the Settlement Class.

Settlement Class Representatives have the same claims as other Settlement Class Members and have actively participated in the case by working with proposed Class Counsel in preparing the initial and amended complaints and in approving the Settlement. Ex. B ¶¶ 59–60. The proposed Service Awards do not misalign the interests of Settlement Class Representatives and other Class Members. Accordingly, the adequate representation requirement is satisfied.[18]

> #### 2.  The Settlement Resulted from Arm's Length Negotiations.

The Parties mediated this case, twice, before a neutral mediator after litigating motions to dismiss concerning both Data Breaches, engaging in jurisdictional and choice-of-law discovery, and after Flagstar provided additional information related to (i) when and how the Data Breaches occurred, (ii) the number of individuals impacted by each of the Data Breaches, including the number of Californians, and (iii) financial information reflecting Flagstar's current and forthcoming fiscal position. Ex. B ¶¶ 32–33. Thus, the Settlement was negotiated at arm's length.[19]

---

[18] *See, e.g., Morley Cos.*, 639 F. Supp. 3d at 765-66, 768 (finding the "incentive award does not misalign the interests of Plaintiffs and the Class.") (citation omitted).

[19] *See, e.g., Morley Cos.*, 639 F. Supp. 3d at 768 (noting that the parties "conduct[ed] informal discovery," and "settled through a neutral mediator," and thus concluding that "[t]he parties negotiated the Agreement at arm's length.").

### 3.    The Relief Provided by the Settlement is Excellent.

The adequacy of relief considers: (1)   the costs, risks, and delay of trial and appeal; (2) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (3) the terms of any proposed attorney's fee, including timing of payment; and (4) any agreement required to be identified under Rule 23(e)(2).

*Morley Cos.*, 639 F. Supp. 3d at 768 (citing Fed. R. Civ. P. 23(e)(2)(C)).

Additional litigation would be complex, costly, and likely continue for several years with no guarantee of relief. Ex. B ¶ 54. A settlement now allows class members to obtain relief without high administrative burdens. *Id.* Class Members who do not wish to make a claim requiring documentation can simply "tear off" a claim form from the proposed postcard notice, check boxes indicating whether they want Credit Monitoring Services, California Statutory Payment, and/or Residual Cash Payment, and mail it to the Settlement Administrator, with the postage prepaid. Ex. A-1 ¶¶ 3–6. Claims requiring documentation may easily be made through the settlement website or by printing and mailing the Claim Form (Ex. C-6). Ex. C ¶¶ 16–17.

The $31,500,000 Settlement Fund obtained on behalf of 2,187,170 individuals amounts to $**14.40** per person, a more than adequate outcome for a data breach settlement. For example, as further detailed in the Joint Declaration, several orders within the Sixth Circuit grant approval of data breach settlements that do not nearly achieve that amount, including: (a) $10.03 per class member in *In re CorrectCare Data Breach Litig.*; (b) $6.18 per class member in *Thomsen v. Morley Companies,*

18

*Inc.*; (c) <u>$4.32 per class member</u> in *In re Wright & Fillipis, LLC Data Security Incident Litig.*; and (d) <u>$2.88 per class member</u> in *In re Sonic Corp. Customer Data Sec. Breach Litig*. *See* Ex. B ¶ 56; *see also id.* at ¶ 57 (comparing similar class size settlements ranging from $1.31 to $8.00 per class member). The result here far exceeds these comparators, and thus, the relief is adequate.

### 4.    The Settlement Treats Class Members Equitably.

"The Agreement must treat the members of the Class as relatively equal." *Morley Cos.*, 639 F. Supp. 3d at 768. Each Class Member may obtain (i) a Residual Cash Payment, (ii) Credit Monitoring Services, and (iii) with supporting documentation, reimbursement of documented Monetary Losses. For Settlement Class Members residing in California during the Data Breaches, they also may make a claim for the California Statutory Payment, relief available to them under California's Consumer Privacy Act, a claim that was upheld as regards the Data Breaches. Finally, $2,500 Service Awards do not raise concerns about inequality.[20]

### 5.    Other Agreements

Rule 23(e) mandates that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal," and that the Court

---

[20] *See, e.g.*, *id.* (finding this factor met where similar benefits were presented, and noting the "apportionment of relief among class members takes appropriate account of differences among their claims and injuries, thus satisfying equal treatment," and the "incentive award is only $1,500.00, so there are no concerns about the incentive award creating inequality.").

must consider any such agreements when determining whether the relief is adequate. *See* Fed. R. Civ. P. 23(e)(2)–(3). The only other agreement at issue is the Separate Opt-Out Agreement establishing the opt-out threshold under which Flagstar may terminate the Settlement Agreement. *See* Ex. A ¶ 15.6. Plaintiffs concurrently seek leave to file under seal with the Court this Separate Opt-Out Agreement.

## C.   Sixth Circuit: The Settlement is Fair, Reasonable, and Adequate.

The Sixth Circuit applies a seven-factor test to assess whether a class action settlement is "fair, reasonable, and adequate":

> (1) the "risk of fraud or collusion," (2) the "complexity, expense and likely duration of the litigation," (3) the "amount of discovery engaged in by the parties," (4) the "likelihood of success on the merits," (5) the "opinions of class counsel and class representatives," (6) the "reaction of absent class members," and (7) the "public interest." Of the *UAW* factors, "[t]he most important of the factors to be considered in reviewing a settlement is the probability of success on the merits."[21]

### 1.   There is No Risk of Fraud or Collusion.

"'Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary.'"[22] The Court can safely conclude this Settlement was negotiated at arm's length, without collusion, based on the terms of the Settlement itself; the length and difficulty of the negotiations; and the

---

[21] *Déjà vu Servs.*, 925 F.3d at 894–95 (citing *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) ("*UAW*") and quoting *Poplar Creek Dev. Co. v. Chesapeake Appalachia*, L.L.C., 636 F.3d 235, 245 (6th Cir. 2011)).

[22] *Morley Cos.*, 639 F. Supp. 3d at 769 (quoting *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008)).

20

involvement of an experienced mediator. This factor supports approval.[23]

### 2.    Complexity, Expense, and Duration Support Approval.

"Courts must also consider the complexity, expense, and likely duration of litigation because 'the costs, delays[,] and multitudes of other problems' can outweigh the value of the plaintiff's claims." *Id.* Plaintiffs face significant risks and costs should they continue to litigate the Action due to the potential expense and length of continued proceedings necessary to prosecute the litigation against Flagstar through motion practice, trial, and potential appeals. Further, if Plaintiffs prevailed on their intended motions for class certification and successfully defeated Flagstar's intended motions thus proceeding to trial, Plaintiffs would have faced significant risk, cost, and delay. Plaintiffs face the uncertain outcome and risk of further litigation, as well as the difficulties and delays inherent in such litigation.

In contrast, the proposed Settlement provides certain, substantial, and immediate relief to the proposed Settlement Class. It ensures that Settlement Class Members who submit Approved Claims will receive guaranteed benefits now. The substantial costs, risks, and delay of a trial and appeal support a finding that the proposed Settlement is adequate.[24]

---

[23] *See id.* ("No evidence of fraud or collusion exists here. On the contrary, the parties settled with a neutral mediator so this factor favors approval.") (citations omitted).
[24] *See, e.g., id.* ("[C]ontinued litigation would be complex, costly, and likely continue for several years with no guarantee of relief. So this factor also favors approval.").

### 3.    The Amount of Discovery Engaged in Supports Approval.

"A settlement is 'more likely to be fair and reasonable under the circumstances' if the parties have conducted discovery."[25] Here jurisdictional discovery, including depositions, was taken as to the Second Data Breach, choice-of-law discovery was taken as to the First Data Breach, and additional information was exchanged informally in connection with the mediations. Ex. B ¶¶ 21, 29, 32.

Yet, even where parties do not engage in formal discovery, "courts have held that settlements are permissible where, 'notwithstanding the status of discovery, plaintiffs' negotiators had access to a plethora of information regarding the facts of their case.'"[26] Moreover, proposed Class Counsel retained an expert to search the dark web for information exfiltrated during the Data Breaches, Ex. B ¶ 19, and the Parties exchanged informal discovery that allowed proposed Class Counsel to fairly evaluate the strengths and weaknesses of the case. Ex. B ¶ 32.

### 4.    The Likelihood of Success on the Merits Supports Approval.

"The likelihood of success on the merits 'provides a gauge from which the benefits of the settlement must be measured.'"[27] This case faces substantial hurdles

---

[25] *Id.* at 769 (citing *Green v. Platinum Rests. Mid-Am. LLC*, 2022 WL 1240432, at *5 (W.D. Ky. Apr. 27, 2022)).

[26] *Déjà Vu Servs.*, 925 F.3d at 898 (quoting *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981)); *see also, e.g.*, *Morley Cos.*, 639 F. Supp. 3d at 770 (finding that "[a]lthough the parties did not conduct formal discovery, they have conducted ample informal discovery," and "[t]his factor thus favors approval").

[27] *Morley Cos.*, 639 F. Supp. 3d at 770 (citing *Poplar Creek Dev. v. Chesapeake*

should it continue to trial. Plaintiffs would need to obtain class certification and survive any dispositive motions Flagstar might file. While Plaintiffs believe they have solid claims and will prevail, success is not guaranteed, especially where serious questions of law and fact exist, which is common in data breach litigation. This field of litigation is evolving; there is no guarantee of the ultimate result.[28]

### 5. The Views of Plaintiffs and Counsel Support Approval.

"'The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement.'"[29] Proposed Class Counsel supports the Settlement, Ex, B ¶ 51, which "favors approval too."[30]

### 6. The Public Interest Supports Approval of the Settlement.

"'[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and

---

*Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011).

[28] *See, e.g., id.* ("Plaintiffs have acknowledged the risk of continued litigation, especially the 'substantial hurdles' for data-breach cases at the pleadings stage. Therefore, this factor favors approval."); *see also, e.g., Gordon v. Chipotle Mexican Grill, Inc.*, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex."); *Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage); *In re Blackbaud, Inc., Customer Data Breach Litig.*, 2024 WL 2155221, at *1 (D.S.C. May 14, 2024) (denying class certification in data breach).

[29] *Id.* (quoting *UAW v. Ford Motor Co.*, 2008 WL 4104329, at *26 (E.D. Mich. Aug. 29, 2008)).

[30] *Morley Cos.*, 639 F. Supp. 3d at 770. The reaction of absent class members factor "is neutral because the proposed settlement is in the prenotice stage." *Id.*

unpredictable' and settlement conserves judicial resources.'"[31] The public interest

and judicial resources would be served by via relief for the 2,187,170-person class.[32]

## VI.   THE COURT SHOULD APPROVE THE NOTICE PLAN.

"After preliminarily approving a settlement, the court must direct notice of the

proposed settlement to all class members who would be bound by the proposal." *Id.*

(citing Fed. R. Civ. P. 23(e)(1)(B)). Where a class "is being certified under Rule

23(b)(3), notice must be 'the best notice practicable' and include 'individual notice

to all members who can be identified through reasonable effort.'" *Id.* (quoting Fed.

R. Civ. P. 23(c)(2)(B)).

> Notice must also include the following in "plain, easily understood
> language": (1) The nature of the action; (2) The definition of the class
> certified; (3) The class claims, issues, or defenses; (4) That a class
> member may enter an appearance through an attorney if the member so
> desires; (5) That the court will exclude from the class any member who
> requests exclusion; (6) The time and manner for requesting exclusion;
> and (7) The binding effect of a class judgment on members under Rule
> 23(c)(3).

*Id.* (citing Fed. R. Civ. P. 23(c)(2)(B)).

Following an extensive proposal process, Plaintiffs have selected, and

Flagstar approved, EAG as the Settlement Administrator. *See* Ex. A ¶ 2.33. As

explained above in Section II.B.3, the Notice Plan provides for direct mail Postcard

---

[31] *Id.* (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)).
[32] *See, e.g.*, *id.* ("Settling this 694,679-person class action would further the public interest by providing relief for the entire Class and conserving judicial resources.").

24

Notice, with an attached "tear off" claim form, Ex. A-1 ¶ 6; Ex. C ¶ 11; Email Notice for all Settlement Class Members where email addresses have been provided, *id.* ¶ 10; and industry standard address updating and remailing, *id.* ¶¶ 12, 13.

The Postcard Notice includes, among other information: (a) a description of the material terms of the Settlement; (b) identification of the Settlement Class and applicable Released Parties; (c) how to submit a Claim Form; (d) the Claim Form Deadline; (e) Opt-Out Deadline; (f) the Objection Deadline; (g) the Final Approval Hearing date; and (h) the Settlement Website address at which Settlement Class Members may access the Settlement Agreement, Long Form Notice, and other related documents and information. Ex. C ¶ 16; Ex. A-1 ¶ 6. Although the deadlines are blank, this information will be filled in following preliminary approval. *Id.* Thus, the Notice Plan satisfies Rule 23 and due process and should be approved.[33]

## VII.   CONCLUSION

Accordingly, Plaintiffs request the Court enter the proposed order directing notice to the Settlement Class, attached hereto as Ex. D, as set forth in the Notice Plan and schedule a Final Approval Hearing. Plaintiffs also include a proposed schedule of dates leading to a Final Approval Hearing, attached as **Ex. E**.

Dated: October 1, 2025                    Respectfully Submitted,

                                          */s/ John A. Yanchunis*

---

[33] *See, e.g.*, *Morley Cos.*, 639 F. Supp. 3d at 771 (finding text of similar notice "satisfie[d] the requirements of Rule 23 and due process").

John A. Yanchunis
**MORGAN & MORGAN COMPLEX
LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
(813) 223-5505
jyanchunis@ForThePeople.com

Norman E. Siegel MO #44378
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100
siegel@stuevesiegel.com

*Proposed Class Counsel*

Jeffrey S. Goldenberg
**GOLDENBERG SCHNEIDER, L.P.A**
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
Tel: (513) 345-8291
Email: jgoldenberg@gs-legal.com

Gary E. Mason
**MASON LLP**
5335 Wisconsin Avenue, NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290
Email: gmason@masonllp.com

Charles E. Schaffer
**LEVIN, SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (212) 592-1500
Email: cschaffer@lfsblaw.com

M. Anderson Berry

26

**CLAYEO C. ARNOLD,**
**A PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, CA 95825
(916) 777-7777
aberry@justice4you.com

Brian D. Flick (OH #0081605)
**DannLaw**
P.O. Box 6031040
Cleveland, Ohio 44103
Phone: (216) 373-0539
Fax: (216) 373-0536
notices@dannlaw.com

Bryan L. Bleichner
**Chestnut Cambronne PA**
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Telephone: (612) 339-7300
bbleichner@chestnutcambronne.com

***Interim Executive Committee – First Data
Breach***

E. Powell Miller
**The Miller Law Firm, P.C.**
950 W. University Drive, Suite 300
Rochester, Michigan 48307
Telephone: (248) 841-2200
epm@millerlawpc.com

Rachel K. Tack
**Zimmerman Reed LLP**
1100 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402
Telephone: (612) 341-0400
Email: rachel.tack@zimmermanreed.com

Danielle L. Perry
**Mason LLP**
5335 Wisconsin Avenue NW, Suite 640
Washington, District of Columbia 20015
Telephone: (202) 429-2290
Email: dperry@masonllp.com

Michael Reese
**Reese LLP**
100 W. 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 594-5300
Email: mreese@reesellp.com

Jamisen A. Etzel
**Lynch Carpenter LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222
Telephone: (412) 322-9243
Email: jamisen@lcllp.com

*Plaintiffs Executive Committee – Second Data Breach*

David H. Fink
Fink Bressack PLLC
38500 Woodward Avenue, Suite 350
Bloomfield Hills, Michigan 48304
Telephone: (248) 971-2500
Email: dfink@finkbressack.com

*Interim Liaison Counsel – Second Data Breach*

Adam E. Polk (State Bar No. 273000)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
apolk@girardsharp.com

28

Krysta Kauble Pachman (280951)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029
Tel: (310) 789-3100
kpachman@susmangodfrey.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October 1, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

/s/ *John A. Yanchunis*
John A. Yanchunis