Exhibit A

<u>**SETTLEMENT AGREEMENT AND RELEASE**</u>

This Class Action Settlement Agreement and Release ("Settlement Agreement" or "Agreement") is made as of October 1, 2025 by and between, as hereinafter defined, (a) the Settlement Class Representatives,[1] on behalf of themselves and the Settlement Class, and (b) Defendant Flagstar Bank, N.A. ("Flagstar" or "Defendant") (collectively, the "Parties"). This Agreement fully and finally compromises and settles any and all claims asserted against Flagstar in the Action *Angus et al. v. Flagstar Bank, N.A.*, Case No. 2:21-cv-10657-MFL-DRG pending in the United States District Court for the Eastern District of Michigan.

## 1.     **RECITALS**

1.1.     On March 5, 2021, Flagstar announced that it had been the victim of cyberattack in which cyber criminals infiltrated a file sharing platform used by Flagstar and accessed the personally identifiable information ("PII") of approximately 1.47 million individuals in the United States. On June 17, 2022, Flagstar announced that it had been the victim of a separate cyberattack in which cyber criminals infiltrated Flagstar's network and accessed the PII of approximately 1.58 million individuals in the United States. Together these two cyberattacks (the "Data Breaches") impacted the personal information of approximately 2,187,170 U.S. consumers, including approximately 364,000 California residents.

1.2.     Multiple putative class action lawsuits were filed against Flagstar on behalf of consumers impacted by either or both of the Data Breaches, which were then consolidated in *Angus et al. v. Flagstar Bank, N.A.*, Case No. 2:21-cv-10657-MFL-DRG on August 25, 2025. A Consolidated Class Action Complaint was filed in the consolidated Action on September 24, 2025.

1.3.     Parallel to their litigation of the Action, the Parties engaged in arm's-length settlement negotiations beginning in April 2025.  The negotiations were overseen by former United States District Court Judge Gerald E. Rosen. The Parties engaged in two mediation sessions on July 18, 2025, and August 8, 2025.  On August 8, 2025, the Parties executed a binding term sheet, to be superseded by this Agreement.

1.4.     The Parties recognize the expense and length of proceedings necessary to continue litigation of the Action through further motion practice, trial, and any possible appeals.  The Parties have taken into account the uncertainty and risk of the outcome of further litigation, and the difficulties and delays inherent in such litigation.  The Parties are also aware of the burdens of proof necessary to establish liability and damages for the claims alleged in the Action and the defenses thereto.  Based upon their investigation, discovery, and motion practice, as set forth above, the Parties have determined that the settlement set forth in this Agreement is in their respective best interests and that the Agreement is fair, adequate, and reasonable.  The Parties have therefore agreed to settle the claims asserted in the Action pursuant to the terms and provisions of this Agreement.

---

[1] All capitalized terms are defined in Section 2 below.

1.5.    It is the intention of the Parties to resolve the disputes and claims which they have between them on the terms set forth below.

NOW, THEREFORE, in consideration of the promises, covenants, and agreements herein described and for other good and valuable consideration acknowledged by each of the Parties to be satisfactory and adequate, and intending to be legally bound, the Parties do hereby mutually agree as follows:

## 2.    DEFINITIONS

As used in all parts of this Agreement, including the recitals above, and the exhibits hereto, the following terms have the meanings specified below:

2.1.    "Action" means the consolidated class action lawsuit captioned *Philip Angus, et al. v. Flagstar Bank, N.A. f/k/a Flagstar Bank, FSB*, Case No. 2:21-cv-10657 currently pending before the Honorable Matthew T. Leitman in the United States District Court for the Eastern District of Michigan.

2.2.    "Administrative Costs" means all reasonable costs and expenses incurred by the Settlement Administrator in carrying out its duties under this Agreement.

2.3.    "Agreement" or "Settlement Agreement" means this Settlement Agreement and Release and all of its attachments and exhibits, which the Parties understand and agree set forth all material terms and conditions of the Settlement of the Action between them and which is subject to approval by the Court.

2.4.    "Attorneys' Fees" means the attorneys' fees that Class Counsel request the Court to approve for payment from the Settlement Fund as compensation for Class Counsel's work in prosecuting and settling the Action.

2.5.    "Flagstar" means Flagstar Bank, N.A.

2.6.    "Flagstar's Counsel" means Flagstar's counsel of record in the Action from the law firms of Skadden, Arps, Slate, Meagher & Flom LLP and Troutman Pepper Hamilton Sanders LLP.

2.7.    "Class Counsel" means Norman E. Siegel of Stueve Siegel Hanson LLP and John A. Yanchunis of Morgan & Morgan Complex Litigation Group.

2.8.    "Class List" means the list of individuals in the United States whose information Flagstar determined was unlawfully accessed during either or both of the Data Breaches.

2.9.    "Complaint" means the Fifth Amended Class Action Complaint, at Docket Entry Number 112, filed in the Action on September 24, 2025.

2.10.    "Consumer Settlement Benefits Plan" means the plan for processing claims for and distributing Settlement benefits to Settlement Class Members, which shall be presented by Class

Counsel to the Court for approval in connection with a motion seeking a Preliminary Approval Order.

2.11. "Court" means the United States District Court for the Eastern District of Michigan, where the Action is pending.

2.12. "Data Breaches" means the two cybersecurity incidents experienced by Flagstar in 2021, which Flagstar determined the personal information of approximately 2,187,170 U.S. consumers was accessed, including approximately 364,000 California residents.

2.13. "Defendant" means Flagstar.

2.14. "Effective Date" means the date when all of the conditions set forth in Section 6.1 of this Agreement have occurred, provided, however, that Flagstar has not exercised its right of termination under Section 6.2 of this Agreement.

2.15. "Expenses" means the reasonable costs and expenses incurred in litigating the Action that Class Counsel request the Court to approve for payment from the Settlement Fund.

2.16. "Final Approval" means entry of a Final Approval Order and Judgment.

2.17. "Final Approval Hearing" means the hearing to be conducted before the Court to determine the fairness, adequacy, and reasonableness of the Agreement pursuant to Federal Rule of Civil Procedure 23 and whether to enter a Final Approval Order and Judgment.

2.18. "Final Approval Order and Judgment" means an order and judgment that the Court enters after the Final Approval Hearing, which finally approves the Agreement, certifies the Settlement Class, dismisses the Action with prejudice, and otherwise satisfies the settlement-related provisions of Federal Rule of Civil Procedure 23 in all respects.

2.19. "Judgment" means the Final Approval Order and Judgment.

2.20. "Notice Costs" means all reasonable costs and expenses incurred in connection with implementing and executing the Notice Plan.

2.21. "Notice Date" means the date by which notice will be completed, which shall be sixty (60) days after the Court enters the Preliminary Approval Order.

2.22. "Notice Plan" means the Settlement notice program to be presented by Class Counsel to the Court for approval in connection with a motion seeking a Preliminary Approval Order.

2.23. "Objection Deadline" means the deadline by which written objections to the Settlement must be filed with the Court. Such deadline shall be forty-five (45) days after the Notice Date.

2.24.   "Opt-Out Deadline" means the deadline by which written requests for exclusion from the Settlement must be postmarked as set forth in the Preliminary Approval Order.  Such deadline shall be forty-five (45) days after the Notice Date.

2.25.   "Parent" means, with respect to any Entity, any other Entity that owns or controls, directly or indirectly, at least a majority of the securities or other interests that have by their terms ordinary voting power to elect a majority of the board of directors, or a majority of others performing similar function, of such Entity.

2.26.   "Parties" means the Settlement Class Representatives, on behalf of themselves and the Settlement Class, and Flagstar.

2.27.   "Parties' Counsel" means Class Counsel and Flagstar's Counsel.

2.28.   "Preliminary Approval Order" means an order finding that the Court has Article III jurisdiction over the Action, determining that the Court will likely be able to approve the Settlement under Federal Rule of Civil Procedure 23(e)(2), and concluding that the Court will likely be able to certify the Settlement Class for purposes of entering a Judgment.  The Preliminary Approval Order will include, among other things, (i) a procedure for Settlement Class Members to object to or request exclusion from the Settlement (along with the applicable Objection and Opt-Out Deadlines), (ii) the date and time of the Final Approval Hearing, and (iii) pertinent information from the Notice Plan and Consumer Settlement Benefits Plan.

2.29.   "Released Claims" means any claims, liabilities, rights, demands, suits, obligations, damages, including but not limited to consequential damages, losses or costs, punitive damages, attorneys' fees and costs, action or causes of action, penalties, remedies, of every kind or description—whether known or Unknown (as the term "Unknown Claims" is defined herein), suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, legal, administrative, statutory, or equitable—that relate to or arise from the Data Breaches or the facts alleged in the Action.

2.30.   "Released Parties" means Flagstar and any of its current, former, and future Affiliates, Parents, Subsidiaries, representatives, officers, agents, directors, employees, contractors, vendors, insurers, Successors, assigns, and attorneys.

2.31.   "Service Awards" means any payments made, subject to Court approval, to (i) Settlement Class Representatives and (ii) Erin Tallman and Michael McCarthy, who were named Plaintiffs in the Action, in recognition of their role in litigating this Action.

2.32.   "Settlement" means the settlement of the Action by and between the Parties, and the terms and conditions thereof as stated in this Agreement.

2.33.   "Settlement Administrator" means Eisner Advisory Group LLC.  A different Settlement Administrator may be substituted if approved by order of the Court.

2.34.   "Settlement Class" means all persons in the United States whose personally identifying information ("PII") was impacted by either or both of the two Data Breaches Flagstar experienced in 2021, as reflected in the Class List. The Settlement Class includes (i) a Nationwide

Settlement Class, representing approximately 2,187,170 individuals impacted by the Data Breaches and (ii) a California Settlement Class, representing approximately 364,000 California Settlement Class members. Excluded from the Settlement Class are (i) Flagstar, any entity in which Flagstar has a controlling interest, and of Flagstar's officers, directors, legal representatives, Successors, Subsidiaries, and assigns; (ii) any judge, justice, or judicial officer presiding over the Action and the members of their immediate families and judicial staff; and (iii) any individual who timely and validly opts out of the Settlement Class.

2.35. "Settlement Class Member" or "Member of the Settlement Class" means any person who is a member of the Settlement Class.

2.36. "Settlement Class Representatives" means the following plaintiffs and proposed class representatives named in the Complaint filed in the Action: Philip Angus, Mark Wiedder, Tania Garcia, Ray Harter, Danielle Meis, Jonathan Kelley, Ryan Martin, Arthur Dore, Randy Moniz, Holly Ringling, John Scott Smith, Christopher P. Kennedy, Rafael Hernandez, William Worton, Hassan Nasrallah, Nathan Silva, Laurie Ewing Scanlon, Everett Turner, and Allie McLaughlin.

2.37. "Settlement Fund" means the thirty-one million five hundred thousand United States Dollars ($31,500,000) that Flagstar shall pay pursuant to Section 3 of this Agreement.

2.38. "Settlement Fund Account" means the account described in Section 4 of this Agreement.

2.39. "Subsidiary" means, with respect to any Entity, any other Entity of which the first Entity or controls, directly or indirectly, at least a majority of the securities or other interests that have by their terms ordinary voting power to elect a majority of the board of directors, or others performing similar functions, of the other Entity.

2.40. "Successor" means, with respect to a natural person, that person's heirs, successors, and assigns, and, with respect to an Entity, any other Entity that through merger, buyout, assignment, or any other means or transaction, acquires all of the first Entity's duties, rights, obligations, shares, debts, or assets.

2.41. "Taxes" means (i) any applicable taxes, duties, and similar charges imposed by a government authority (including any estimated taxes, interest, or penalties) arising in any jurisdiction with respect to the income or gains earned by or in respect of the Settlement Fund, including, without limitation, any taxes that may be imposed upon the Parties or the Parties' Counsel with respect to any income or gains earned by or in respect of the Settlement Fund; (ii) any other taxes, duties, and similar charges imposed by a government authority (including any estimated taxes, interest, or penalties) relating to the Settlement Fund that the Settlement Administrator determines are or will become due and owing, if any; and (iii) any and all expenses, liabilities, and costs incurred in connection with the taxation of the Settlement Fund (including without limitation, expenses of tax attorneys and accountants).

2.42. "Unknown Claims" means any and all Released Claims that any Settlement Class Representative or Settlement Class Member does not know or suspect to exist in his or her favor as of the Effective Date and which, if known by him or her, might have affected his or her

decision(s) with respect to the Settlement.  With respect to any and all Released Claims, the Parties stipulate and agree that upon the Effective Date, Settlement Class Representatives and Settlement Class Members shall have waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, the District of Columbia, or principle of common law or otherwise, which includes or is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Settlement Class Representatives and Class Counsel acknowledge, and each Settlement Class Member by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims was separately bargained for and was a key element of the Settlement Agreement.

## 3.   SETTLEMENT FUND

3.1.   Within twenty-one (21) days of the Preliminary Approval Order, Flagstar shall make a non-reversionary settlement payment of thirty-one million five hundred thousand United States Dollars ($31,500,000) and deposit that settlement payment into the Settlement Fund.

3.2.   The Settlement Fund shall be used to pay for (i) Notice Costs; (ii) Administrative Costs; (iii) Service Awards approved by the Court; (iv) Attorneys' Fees and Expenses approved by the Court; and (v) Settlement benefits for the Settlement Class as provided for in the Consumer Settlement Benefits Plan to be filed by Class Counsel and approved by the Court.  In no event shall Flagstar be obligated to pay more than thirty-one million five hundred thousand United States Dollars ($31,500,000) in connection with the Settlement of the Action, including with respect to all Notice Costs and Administrative Costs.  In no event shall any funds revert to Flagstar.

## 4.   Settlement Fund Account

4.1.   The Settlement Fund monies shall be held in the Settlement Fund Account.

4.2.   All funds held in the Settlement Fund Account shall be deemed to be in the custody of the Court until such time as the funds shall be disbursed pursuant to this Agreement or further order of the Court.

4.3.   No amounts may be withdrawn from the Settlement Fund Account unless (i) authorized by this Agreement; (ii) authorized by the Consumer Settlement Benefits Plan or Notice Plan, after approval by the Court; or (iii) otherwise approved by the Court.

4.4.   The Parties agree that the Settlement Fund Account is intended to constitute a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1, *et seq*., and

that the Settlement Administrator shall be the "administrator" within the meaning of Treasury Regulation § 1.468B-2(k)(3).  The Parties further agree that the Settlement Fund Account shall be treated as a qualified settlement fund from the earliest date possible and agree to any relation-back election required to treat the Settlement Fund Account as a qualified settlement fund from the earliest date possible.

4.5.    Upon or before establishment of the Settlement Fund Account, the Settlement Administrator shall apply for an employer identification number for the Settlement Fund Account utilizing IRS Form SS-4 and in accordance with Treasury Regulation § 1.468B-2(k)(4), and shall provide Flagstar with that employer identification number on a properly completed and signed IRS Form W-9.

4.6.    The Settlement Administrator shall file or cause to be filed, on behalf of the Settlement Fund Account, all required federal, state, and local tax returns, information returns, including, but not limited to, any Form 1099-series return, and tax withholdings statements, in accordance with the provisions of Treasury Regulation § 1.468B-2(k)(l) and Treasury Regulation § l.468B-2(1)(2).  Any contract, agreement, or understanding with the Settlement Administrator relating to the Settlement Fund Account shall require the Settlement Administrator or its agent to file or cause to be filed, on behalf of the Settlement Fund Account, all required federal, state, and local tax returns, information returns, including, but not limited to any Form 1099-series return, and tax withholdings statements, in accordance with the provisions of Treasury Regulation § 1.468B-2(k)(1) and Treasury Regulation § l.468B-2(1)(2).  The Settlement Administrator may, if necessary, secure the advice of a certified public accounting firm in connection with its duties and tax issues arising hereunder.

4.7.    All Taxes relating to the Settlement Fund Account shall be paid out of the Settlement Fund Account, shall be considered to be an Administrative Cost of the Settlement, and shall be timely paid by the Settlement Administrator without prior order of the Court.  Further, the Settlement Fund Account shall indemnify and hold harmless the Parties and the Parties' Counsel for Taxes (including, without limitation, taxes payable by reason of any such indemnification payments).

4.8.    Following its payment of the Settlement Fund monies as described in Section 3.1 of this Agreement, Flagstar shall have no responsibility, financial obligation, or liability whatsoever with respect to investment of Settlement Fund Account funds, payment of federal, state, and local income, employment, unemployment, excise, and any other Taxes, penalties, interest, or other charges related to Taxes imposed on the Settlement Fund Account or its disbursements, payment of the administrative, legal, accounting, or other costs occasioned by the use or administration of the Settlement Fund Account.

**5.**    **Presentation of Settlement to the Court**

5.1.    No later than October 1, 2025, the Settlement Class Representatives and Class Counsel shall file this Agreement along with a motion seeking a Preliminary Approval Order pursuant to the requirements of Federal Rule of Civil Procedure 23(e)(1).  Such motion shall also include and seek approval of the Notice Plan and Consumer Settlement Benefits Plan.

5.2.     After entry by the Court of a Preliminary Approval Order, and no later than fourteen (14) days before the Final Approval Hearing, Settlement Class Representatives shall file a motion seeking final approval of the Settlement and entry of a Final Approval Order and Judgment, including a request that the preliminary certification of the Settlement Class for settlement purposes be made final.

## 6.     Effective Date and Termination

6.1.     The Effective Date of the Settlement shall be the first Business Day after all of the following conditions have occurred:

6.1.1.   The Parties execute this Agreement;

6.1.2.   The Court enters a Preliminary Approval Order, which shall include approval of the Notice Plan and Consumer Settlement Benefits Plan to be proposed by Class Counsel;

6.1.3.   Notice is provided to the Settlement Class in accordance with the Preliminary Approval Order and Notice Plan;

6.1.4.   The Court enters a Final Approval Order and Judgment; and

6.1.5.   The Final Approval Order and Judgment have become final because (i) the time for appeal, petition, rehearing, or other review has expired; (ii) if any appeal, petition, or request for rehearing or other review has been filed, the Final Approval Order and Judgment are affirmed without material change, or the appeal is dismissed or otherwise disposed of, and no other appeal, petition, rehearing or other review is pending, and the time for further appeals, petitions, and requests for rehearing or other review has expired.

6.2.     Flagstar may, in its sole discretion, terminate this Agreement upon five (5) Business Days written notice to Class Counsel if:

(i)      The Parties fail to obtain and maintain Preliminary Approval consistent with the material provisions of this Settlement Agreement, and after negotiating in good faith, the Parties are unable to modify the Settlement in a manner to obtain and maintain Preliminary Approval;

(ii)     The Court fails to enter a Final Approval Order and Judgment under the provisions of this Settlement Agreement;

(iii)    The settlement of the Settlement Class claims, or the Final Approval Order and Judgment, is not upheld on appeal;

(iv)     The Effective Date does not occur for any reason, including but not limited to the entry of an order by any court that would require either material modification or termination of the Settlement Agreement; or

(v)     The conditions under paragraph 15.6 of this Settlement Agreement are met concerning the Opt-Outs threshold.

6.3.    If this Agreement is terminated under Section 6.2 above, the following shall occur:

6.3.1.   Within ten (10) Business Days of receiving notice of a termination event from Flagstar's Counsel, the Settlement Administrator shall pay to Flagstar an amount equal to the Settlement Fund, together with any interest or other income earned thereon, less (i) any Taxes paid or due with respect to such income and (ii) any reasonable and necessary Administrative Costs or Notice Costs already actually incurred and paid or payable from the Settlement Fund pursuant to the terms of this Agreement;

6.3.2.   The Parties shall return to the status quo in the Action as if the Parties had not entered into this Agreement;

6.3.3.   Any Court orders approving certification of the Settlement Class and any other orders entered pursuant to this Agreement shall be null and void and vacated, and shall not be used in or cited by any person or entity in support of claims or defenses or in support or in opposition to a future class certification motion in connection with any further proceedings in the Action or in any other action, lawsuit, arbitration, or other proceeding involving a Released Claim; and

6.3.4.   This Agreement shall become null and void, and the fact of this Settlement and that Flagstar did not oppose certification of a Settlement Class shall not be used or cited by any person or entity in support of claims or defenses or in support of or in opposition to a future class certification motion in connection with any further proceedings in the Action or in any other action, lawsuit, arbitration, or other proceeding involving a Released Claim.

## 7.     Consumer Settlement Benefits Plan

7.1.    In connection with a motion seeking a Preliminary Approval Order, Class Counsel shall present to the Court for approval the Consumer Settlement Benefits Plan, which shall describe in detail, among other things, (i) the benefits available to Settlement Class Members and (ii) the process and timing for submitting claims for such benefits.

7.2.    The Settlement Administrator shall be responsible for implementing and executing the Consumer Settlement Benefits Plan.

7.3.    As specified in Section 3.2, the costs associated with any benefits provided to Settlement Class Members under the Consumer Settlement Benefits Plan shall be paid from the Settlement Fund.  For the avoidance of doubt, other than funding the Settlement Fund, Flagstar shall not under any circumstances be responsible for the costs associated with any benefits provided for under the Consumer Settlement Benefits Plan.

## 8.     Duties of Settlement Administrator

8.1.    The Parties agree that Class Counsel will retain, subject to Court approval, an independent Settlement Administrator and notice provider for the Settlement ("Settlement Administrator").    The Settlement Administrator shall perform the functions specified in this Agreement, any functions specified in the Notice Plan or Consumer Settlement Benefits Plan after Court approval, and any other functions approved by the Court.  In addition to other responsibilities that are described elsewhere in this Agreement (and in the Notice Plan and Consumer Settlement Benefits Plan, once approved by the Court), the duties of the Settlement Administrator shall include:

8.1.1.   Reviewing, determining the validity of, and processing all claims submitted by Settlement Class Members;

8.1.2.   Establishing a reasonably practical procedure, using information obtained from Flagstar pursuant to Section 9.2, to verify that claimants are Settlement Class Members.

8.1.3.   Establishing and maintaining a post office box for receiving requests for exclusion from the Settlement Class;

8.1.4.   Establishing and maintaining a Settlement website;

8.1.5.   Responding to Settlement Class Member inquiries via U.S. mail, email, and telephone;

8.1.6.   Establishing a toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries, and answering the questions of Settlement Class members who call with or otherwise communicate such inquiries;

8.1.7.   Paying Taxes;

8.1.8.   Receiving and processing all written requests for exclusion from the Settlement Class and providing copies thereof to the Parties' Counsel.  If the Settlement Administrator receives any requests for exclusion or other requests after the Opt-Out Deadline, the Settlement Administrator shall promptly provide copies thereof to the Parties' Counsel;

8.1.9.   Within seven (7) days after the Opt-Out Deadline, providing a final report to the Parties' Counsel summarizing the number of written requests for exclusion and any other information requested by the Parties' Counsel;

8.1.10. After the Effective Date, processing and transmitting distributions to Settlement Class Members;

8.1.11. Prior to the Final Approval Hearing, preparing and executing an affidavit to submit to the Court that identifies each Settlement Class Member who timely and validly requested exclusion from the Settlement Class; and

8.1.12. Performing any other functions that the Parties jointly agree are necessary to accomplish administration of the Settlement.

8.2.     As specified in Section 3.2, all Administrative Costs incurred by the Settlement Administrator or otherwise in connection with administering the Settlement shall be paid from the Settlement Fund.

8.3.     Neither the Parties nor the Parties' Counsel shall have any liability whatsoever with respect to any act or omission of the Settlement Administrator, or any of its designees or agents, in connection with its performance of its duties under this Agreement, or under the Notice Plan or Consumer Settlement Benefits Plan once approved by the Court.

8.4.     The Settlement Administrator shall indemnify and hold harmless the Parties and the Parties' Counsel for any liability arising from any act or omission of the Settlement Administrator, or any of its designees or agents, in connection with its performance of its duties under this Agreement, or under the Notice Plan or Consumer Settlement Benefits Plan once approved by the Court.

## 9.     Notice Plan

9.1.     In connection with a motion seeking a Preliminary Approval Order, Class Counsel shall present the Notice Plan to the Court for approval, which shall describe in detail the process for implementing and executing a plan to notify Settlement Class Members of, among other things, (i) the Settlement, (ii) the availability and process for claiming benefits under the Consumer Settlement Benefits Plan, and (iii) the procedure for Settlement Class Members to object to the Settlement and request exclusion from the Settlement.

9.2.     The Settlement Administrator shall be responsible for implementing and executing the Notice Plan.  Within thirty (30) days after the Court's entry of a Preliminary Approval Order, Flagstar shall provide to the Settlement Administrator a Class List, which shall include Settlement Class Members' full names, last known postal address, and email addresses (to the extent available) as reflected in Flagstar's records.

9.2.1.   The Parties agree that the Class List shall be provided to the Settlement Administrator solely for the purpose of effecting the terms of this Settlement Agreement, and that such information shall not be used, disseminated, or disclosed by or to any other person for any other purpose.

9.2.2.   Flagstar's inclusion of an individual's information on the Class List is in no way an admission of liability by Flagstar with respect to that individual nor is it an admission that a litigation class could be certified under Federal Rule of Civil Procedure 23 in the Action.

9.2.3.   Should the Settlement be terminated for any of the reasons identified in Section 6.2, the Settlement Class Representatives, the Settlement Administrator, and Class Counsel shall immediately destroy any and all copies of the Class List described in Section 9.2.

9.2.4.   The provisions regarding the compilation and treatment of the Class List described in Section 9.2 and its subsections are material terms of this Settlement Agreement.

9.3.   As specified in Section 3.2, all Notice Costs incurred by the Settlement Administrator or otherwise in connection with implementing and executing the Notice Plan shall be paid from the Settlement Fund.

## 10.   CAFA Notice

10.1.   Flagstar will serve or cause to be served the notice required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, not later than ten (10) days after this Agreement is filed with the Court.

## 11.   Covenants Not to Sue

11.1.   The Class Representatives covenant and agree: (i) not to file, commence, prosecute, intervene in, or participate in (as class members or otherwise) any action in any jurisdiction based on or relating to any Released Claim, or the facts and circumstances relating thereto, against any of the Released Parties; (ii) not to organize or solicit the participation of Settlement Class Members, or persons who would otherwise fall within the definition of the Settlement Class but who requested to be excluded from the Settlement Class, in a separate class for purposes of pursuing any action based on or relating to any Released Claim or the facts and circumstances relating thereto, against any of the Released Parties; and (iii) that the foregoing covenants and this Agreement shall be a complete defense to any Released Claim against any of the Released Parties.

## 12.   Representations and Warranties

12.1.   Each Party represents that:

(i)   such Party has the full legal right, power, and authority to enter into and perform this Agreement, subject to Court approval;

(ii)   such Party is voluntarily entering into the Agreement as a result of arm's-length negotiations conducted by its counsel;

(iii)   such Party is relying solely upon its own judgment, belief, and knowledge, and the advice and recommendations of its own independently selected counsel, concerning the nature, extent, and duration of their rights and claims hereunder and regarding all matters which relate in any way to the subject matter hereof;

(iv)   such Party has been represented by, and has consulted with, the counsel of its choice regarding the provisions, obligations, rights, risks, and legal effects of this Agreement and has been given the opportunity to review independently this Agreement with such legal counsel and agree to the particular language of the provisions herein;

      (v)    the execution and delivery of this Agreement by such Party and the consummation by such Party of the transactions contemplated by this Agreement have been duly authorized by such Party;

      (vi)   except as provided herein, such Party has not been influenced to any extent whatsoever in executing the Agreement by representations, statements, or omissions pertaining to any of the foregoing matters by any Party or by any person representing any party to the Agreement;

      (vii)  each of the Parties assumes the risk of mistake as to facts or law;

      (viii) this Agreement constitutes a valid, binding, and enforceable agreement; and

      (ix)   no consent or approval of any person or entity is necessary for such Party to enter into this Agreement.

12.2.   The Settlement Class Representatives represent and warrant that they have not assigned or otherwise transferred any interest in any of the Released Claims against any of the Released Parties, and further covenant that they will not assign or otherwise transfer any interest in any of the Released Claims against any of the Released Parties.

12.3.   The Settlement Class Representatives represent and warrant that they have no surviving claim or cause of action against any of the Released Parties with respect to any of the Released Claims.

## **13.**   **Releases**

13.1.   As of the Effective Date, all Settlement Class Members and all Settlement Class Representatives, on behalf of themselves, their heirs, assigns, executors, administrators, predecessors, and Successors, and any other person purporting to claim on their behalf, hereby expressly, generally, absolutely, and unconditionally release and discharge any and all Released Claims against the Released Parties, and any of their current, former, and future Affiliates, Parents, Subsidiaries, representatives, officers, agents, directors, employees, contractors, vendors, insurers, Successors, assigns, and attorneys, except for claims relating to the enforcement of the Settlement or this Agreement.

13.2.   The Parties understand that if the facts upon which this Agreement is based are found hereafter to be different from the facts now believed to be true, each Party expressly assumes the risk of such possible difference in facts, and agrees that this Agreement, including the releases contained herein, shall remain effective notwithstanding such difference in facts.  The Parties agree that in entering this Agreement, it is understood and agreed that each Party relies wholly upon its own judgment, belief, and knowledge and that each Party does not rely on inducements, promises, or representations made by anyone other than those embodied herein.  Notwithstanding any other provision of this Agreement (including, without limitation, this Section), nothing in this Agreement shall be deemed to in any way impair, limit, or preclude the Parties' rights to enforce any provision of this Agreement, or any court order implementing this Agreement, in a manner consistent with the terms of this Agreement.

13.3.    The Parties agree that the Released Parties will suffer irreparable harm if any Settlement Class Member takes action inconsistent with Section 13, and that in that event, the Released Parties may seek an injunction as to such action without further showing of irreparable harm in this or any other forum.

13.4.    Promptly after the Effective Date, Class Counsel and the Settlement Class Representatives shall dismiss with prejudice all claims, actions, or proceedings that are released pursuant to this Agreement.

## 14.    No Admission of Wrongdoing

14.1.    This Agreement is made for the sole purpose of attempting to consummate settlement of the Action on a class-wide basis.  The Agreement settles claims which are contested in good faith, and it shall not be deemed an admission by any of the Parties as to the merits of any claim or defense.

14.2.    This Agreement, whether or not consummated, any communications and negotiations relating to this Agreement or the Settlement, and any proceedings taken pursuant to this Agreement:

14.2.1. Shall not be offered or received against any Defendant as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by any Defendant with respect to the truth of any fact alleged by any Settlement Class Representative or any Settlement Class Member or the validity of any claim that has been or could have been asserted in the Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault, breach of duty, or wrongdoing of any Defendant;

14.2.2. Shall not be offered or received against any Defendant as evidence of a presumption, concession, or admission of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by any Defendant;

14.2.3. Shall not be offered or received against any Defendant as evidence of a presumption, concession, or admission with respect to any liability, negligence, fault, breach of duty, or wrongdoing, or in any way referred to for any other reason as against any Defendant, in any other civil, criminal, or administrative action, or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Agreement; provided, however, that if this Agreement is approved by the Court, the Parties may refer to it to effectuate the liability protection granted them hereunder;

14.2.4. Shall not be construed against any Defendant as an admission or concession that the consideration to be given hereunder represents the amount that could be or would have been recovered after trial;

14.2.5. Shall not be construed as or received in evidence as an admission, concession, or presumption against any Settlement Class Representative or any Settlement Class Member that any of their claims are without merit, or that any defenses asserted by any Defendant have any merit, or that damages recoverable under the Action would not

have exceeded the Settlement Fund, provided, however, that if this Agreement is approved by the Court, Defendant may refer to it to enforce the release of claims granted to them hereunder; and

 14.2.6. Shall not be used by the Settlement Class Representatives or Class Counsel to argue or present any argument that Defendant could not contest class certification and/or proceeding collectively on any grounds if the Action were to proceed or to establish any of the elements of class certification in any litigated certification proceedings, whether in the Action or in any other judicial proceeding in which any Defendant is a party.

 14.3. The negotiation, terms, and entry of the Parties into this Agreement shall remain subject to the provisions of Federal Rule of Evidence 408, any and all state statutes of a similar nature, and the mediation privilege.

 14.4. Notwithstanding the foregoing, Defendant may use, offer, admit, or refer to this Agreement and to the Settlement reached herein where necessary to defend themselves in any other action, or in any judicial, administrative, regulatory, arbitrative, or other proceeding, and as necessary to comply with regulatory and/or disclosure obligations.

**15.** **Opt-Outs**

 15.1. Any Settlement Class Member who wishes to exclude themselves from the Settlement Class must submit a written request for exclusion to the Settlement Administrator, postmarked no later than the Opt-Out Deadline.

 15.2. The written request for exclusion must:

  (i) Identify the case name of the Action;

  (ii) Identify the name and address of the Settlement Class Member seeking exclusion;

  (iii) Be personally signed by the Settlement Class Member seeking exclusion;

  (iv) Include a statement clearly indicating the Settlement Class Member's intent to be excluded from the Settlement; and

  (v) Request exclusion only for that one Settlement Class Member whose personal signature appears on the request.

 15.3. Opt-out requests seeking exclusion on behalf of more than one Settlement Class Member shall be deemed invalid by the Settlement Administrator.

 15.4. Any Settlement Class Member who submits a valid and timely request for exclusion in the manner described herein shall not: (i) be bound by any orders or judgments entered in connection with the Settlement; (ii) be entitled to any relief under, or be affected by, the Agreement; (iii) gain any rights by virtue of the Agreement; or (iv) be entitled to object to any aspect of the Settlement.

15.5.    Any Settlement Class Member who does not submit a valid and timely request for exclusion in the manner described herein shall be deemed to be part of the Settlement Class upon expiration of the Opt-Out Deadline, and shall be bound by all subsequent proceedings, orders, and judgments applicable to the Settlement Class.

15.6    Within seven (7) days after the Opt-Out Deadline, the Settlement Administrator shall furnish to counsel for the Parties a complete list of all timely and valid requests for exclusion. If certain conditions occur as set forth in a separate agreement that Plaintiffs shall seek leave to file with the Court under seal, Flagstar may request in writing that, within 5 business days of such notice, the Parties meet and confer regarding a reasonable reduction to the Settlement Fund to address the costs associated with resolving disputes with the Opt-Outs. In the event the Parties are unable to reach an agreement within 10 days of Flagstar's written notice, Flagstar shall have the option to terminate this Settlement Agreement and any settlement terms or agreements then in effect subject to paragraphs 6.2 and 6.3 of this Agreement. Such option to terminate shall expire 7 days following the expiration of the 10-day negotiation period, at which point the option to terminate will be deemed waived.

15.7    Class Counsel agree that this Settlement Agreement is fair, reasonable, and in the best interests of the Settlement Class Members.

## 16.    Objections

16.1.    Any Settlement Class Member who wishes to object to the Settlement must submit a written objection to the Court on or before the Objection Deadline, as specified in the Preliminary Approval Order.

16.2.    The written objection must include:

(i)    The case name and number of the Action;

(ii)    The name, address, telephone number of the objecting Settlement Class Member and, if represented by counsel, of his/her counsel;

(iii)    A statement of whether the objection applies only to the objector, to a specific subset of the class, or to the entire class;

(iv)    A statement of the specific grounds for the objection; and

(v)    A statement of whether the objecting Settlement Class Member intends to appear at the Final Approval Hearing, and if so, whether personally or through counsel.

16.3.    In addition to the foregoing requirements, if an objecting Settlement Class Member is represented by counsel and such counsel intends to speak at the Final Approval Hearing, the written objection must include a detailed description of any evidence the objecting Settlement Class Member may offer at the Final Approval Hearing, as well as copies of any exhibits the objecting Settlement Class Member may introduce at the Final Approval Hearing.

16.4.    Any Settlement Class Member who fails to object to the Settlement in the manner described in this Agreement and in the notice provided pursuant to the Notice Plan shall be deemed to have waived any such objection, shall not be permitted to object to any terms or approval of the Settlement at the Final Approval Hearing, and shall be precluded from seeking any review of the Settlement or the terms of this Agreement by appeal or any other means.

16.5.    The Parties will have the same right to seek discovery from any objecting Settlement Class Member as they would if the objector was a party in the Litigation, including the right to take the objector's deposition.  Such discovery will be conducted on an expedited basis, and the objecting Settlement Class Member is required to respond to any written discovery within fourteen (14) days and must appear for deposition within fourteen (14) days after a deposition is noticed.  Failure by an objector to make themselves available for a deposition or comply with expedited discovery requests may result in the Court striking and/or overruling the objection.  The Court may tax the costs of any such discovery to the objector or the objector's counsel if the Court determines that the objection is frivolous or is made for an improper purpose

## 17.    Service Awards

17.1.    The Settlement Class Representatives and Class Counsel shall submit a request to the Court for payment of Service Awards, not to exceed two thousand five hundred United States Dollars ($2,500) per individual, to (i) the Settlement Class Representatives and (ii) Erin Tallman and Michael McCarthy, who were named Plaintiffs in the Action.  Any request for Service Awards must be filed with the Court at least twenty-one (21) days before the Objection Deadline.  If approved by the Court, such Service Awards shall be paid by the Settlement Administrator from the Settlement Fund within fourteen (14) days after the Effective Date.

17.2.    Flagstar agrees not to oppose any request to the Court for Service Awards, provided such request does not seek more than two thousand five hundred United States Dollars ($2,500) per individual.

17.3.    The Parties agree that the effectiveness of this Agreement is not contingent upon the Court's approval of the payment of any Service Awards.  If the Court declines to approve, in whole or in part, a request for Service Awards, all remaining provisions in this Agreement shall remain in full force and effect.  No decision by the Court, or modification or reversal or appeal of any decision by the Court, concerning the payment of Service Awards, or the amount thereof, shall be grounds for cancellation or termination of this Agreement.

## 18.    Attorneys' Fees and Expenses

18.1.    Class Counsel shall submit a request to the Court for payment of Attorneys' Fees, expressed as a percentage of the value conferred by the Settlement on the Settlement Class, and for reimbursement of Expenses incurred in prosecuting and settling the Action.  Any request for Attorneys' Fees and Expenses must be filed with the Court at least twenty-one (21) days before the Objection Deadline.  If approved by the Court, such Attorneys' Fees and Expenses shall be paid by the Settlement Administrator from the Settlement Fund within fourteen (14) days of the Effective Date.

18.2.    The Parties agree that the effectiveness of this Agreement is not contingent upon the Court's approval of the payment of any Attorneys' Fees or Expenses.  If the Court declines to approve, in whole or in part, a request for Attorneys' Fees or Expenses, all remaining provisions in this Agreement shall remain in full force and effect.  No decision by the Court, or modification or reversal or appeal of any decision by the Court, concerning the payment of Attorneys' Fees or Expenses, or the amount thereof, shall be grounds for cancellation or termination of this Agreement. Class Counsel, in their sole discretion, and based on their good faith judgment as to the relative contributions of any other law firm representing one or more plaintiffs in this Litigation, shall allocate and distribute the Attorneys' Fees and Expense Award among themselves and any other Plaintiffs' counsel.

## 19.    Confidentiality

19.1.    The Parties and the Parties' Counsel agree that the terms of this Settlement shall remain confidential and not be disclosed until the Agreement is publicly filed in connection with the Settlement Class Representatives' motion seeking a Preliminary Approval Order.

19.2.    The Parties agree that no Party shall make any public statements about the Settlement, including by press release or website posting, prior to the Court providing preliminary approval of the Settlement.

## 20.    Notices

20.1.    All notices to Class Counsel provided for in this Agreement shall be sent by e-mail and First Class mail to the following:

> Norman E. Siegel
> **STUEVE SIEGEL HANSON LLP**
> 460 Nichols Road, Suite 200
> Kansas City, MO 64112
> siegel@stuevesiegel.com
>
> John A. Yanchunis
> **MORGAN & MORGAN COMPLEX LITIGATION GROUP**
> 201 N. Franklin Street, 7th Floor
> Tampa, FL 33602
> jyanchunis@ForThePeople.com

20.2.    All notices to Flagstar or Flagstar's Counsel provided for in this Agreement shall be sent by e-mail and First Class mail to the following:

> Marcella L. Lape
> William E. Ridgeway
> **SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
> 320 South Canal, 47th Floor
> Chicago, IL 60606
> Marcie.Lape@skadden.com
> William.Ridgway@skadden.com

> Sean P. McNally
> Jason E. Manning
> **TROUTMAN PEPPER HAMILTON SANDERS LLP**
> 4000 Town Center, Suite 1800
> Southfield, MI 48075
> Sean.McNally@troutman.com
> Jason.Manning@troutman.com

20.3.    All notices to the Settlement Administrator provided for in this Agreement shall be sent by email, to the email address listed on the Settlement Website, and First Class mail to the following:

> Flagstar Settlement Administrator
> c/o Eisner Advisory Group LLC
> PO Box 4427
> Baton Rouge, LA 70821

20.4.    The notice recipients and addresses designated in this Section may be changed by written notice posted to the Settlement website.

## 21.    **Miscellaneous Provisions**

21.1.    <u>Further Steps</u>.  The Parties agree that they each shall undertake any further required steps to effectuate the purposes and intent of this Agreement

21.2.    <u>Cooperation</u>.  The Parties: (i) acknowledge that it is their intent to consummate this Settlement Agreement and (ii) agree to cooperate to the extent reasonably necessary to effect and implement all terms and conditions of the Settlement Agreement and to exercise their best efforts to accomplish the foregoing terms and conditions of the Settlement Agreement.

21.3.    <u>Contact with Settlement Class Members</u>.  The Parties agree that Class Counsel may communicate with Settlement Class Members regarding the Settlement, and Flagstar shall not interfere with such communication.

21.4.    <u>Contractual Agreement</u>.  The Parties understand and agree that all terms of this Agreement, including the exhibits hereto, are contractual and are not a mere recital, and each signatory warrants that he or she is competent and possesses the full and complete authority to execute and covenant to this Agreement on behalf of the Party that he or she represents.

21.5.    <u>Recitals</u>.  The recitals set forth above in Section 1 shall be and hereby are terms of this Agreement as if set forth herein.

21.6.    <u>Headings</u>.  Any headings contained herein are for informational purposes only and do not constitute a substantive part of this Agreement.  In the event of a dispute concerning the terms and conditions of this Agreement, the headings shall be disregarded.

21.7.    <u>Integration</u>.  This Agreement constitutes the entire agreement among the Parties and no representations, warranties, or inducements have been made to any Party concerning this

Agreement other than the representations, warranties, and covenants expressly contained and memorialized herein.

21.8. <u>Exhibits</u>. The exhibits to this Agreement are expressly incorporated by reference and made part of the terms and conditions set forth herein.

21.9. <u>Drafting</u>. The language of all parts of this Agreement shall in all cases be construed as a whole, according to their fair meaning, and not strictly for or against any Party. No Party shall be deemed the drafter of this Agreement. The Parties acknowledge that the terms of the Agreement are contractual and are the product of negotiations between the Parties and their counsel. Each Party and their counsel cooperated in the drafting and preparation of the Agreement. In any construction to be made of the Agreement, the Agreement shall not be construed against any Party and any canon of contract interpretation to the contrary shall not be applied.

21.10. <u>Modification or Amendment</u>. This Agreement may not be modified or amended, nor may any of its provisions be waived, except by an express writing signed by the Parties who executed this Agreement, or their Successors.

21.11. <u>Waiver</u>. The failure of a Party to insist upon strict performance of any provision of this Agreement shall not be deemed a waiver of such Party's rights or remedies or a waiver by such Party of any default by another Party in the performance or compliance of any of the terms of this Agreement. In addition, the waiver by one Party of any breach of this Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement.

21.12. <u>Severability</u>. Should any part, term, or provision of this Agreement be declared or determined by any court or tribunal to be illegal or invalid, the Parties agree that the Court may modify such provision to the extent necessary to make it valid, legal, and enforceable. In any event, such provision shall be separable and shall not limit or affect the validity, legality, or enforceability of any other provision hereunder.

21.13. <u>Counterparts</u>. This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Agreement shall exchange among themselves original signed counterparts.

21.14. <u>Electronic Mail</u>. Transmission of a signed Agreement by electronic mail shall constitute receipt of an original signed Agreement by mail.

21.15. <u>Successors and Assigns</u>. The Agreement shall be binding upon, and inures to the benefit of, the heirs, executors, Successors, and assigns of the Parties hereto.

21.16. <u>Survival</u>. The Parties agree that the terms set forth in this Agreement shall survive the signing of this Agreement.

21.17. <u>Governing Law</u>. All terms and conditions of this Agreement shall be governed by and interpreted according to the laws of the Michigan, without reference to its conflict of law provisions, except to the extent the federal law of the United States requires that federal law governs.

21.18.  <u>Interpretation</u>.  The following rules of interpretation shall apply to this Agreement:

(i)      Definitions apply to the singular and plural forms of each term defined.

(ii)     Definitions apply to the masculine, feminine, and neuter genders of each term defined.

(iii)    Whenever the words "include," "includes" or "including" are used in this Agreement, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

21.19.  <u>No Precedential Value</u>.  The Parties agree and acknowledge that this Agreement carries no precedential value.

21.20.  <u>Fair and Reasonable</u>.  The Parties and the Parties' Counsel believe this Agreement is a fair and reasonable compromise of the disputed claims and in the best interest of the Parties. The Parties have arrived at this Agreement as a result of extensive arms-length negotiations.

21.21.  <u>Retention of Jurisdiction</u>.  The administration and consummation of the Settlement as embodied in this Agreement shall be under the authority of the Court, and the Court shall retain jurisdiction over the Settlement and the Parties for the purpose of enforcing the terms of this Agreement.  The Court also shall retain exclusive jurisdiction over any determination of whether any subsequent suit is released by the Settlement Agreement.

21.22.  <u>Confidentiality of Discovery Material</u>.  The Parties, the Parties' Counsel, and any retained or consulting experts, agree that they remain subject to the Court's Protective Order, Dkt. No. 89, as appropriate.

21.23.  <u>No Government Third-Party Rights or Beneficiaries</u>.  Except as expressly provided for herein, no government agency or official can claim any rights under this Agreement or Settlement, whether with respect to the alleged conduct that is the subject of the releases in Section 13 or the funds (or remainder of funds) paid or used in the Settlement.

21.24.  <u>No Collateral Attack</u>.  The Settlement Agreement shall not be subject to collateral attack, including by any Settlement Class Member or any recipient of notices of the Settlement after the Judgment is entered.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed by themselves or by their duly authorized counsel:

**Class Counsel on behalf of the Settlement Class Representatives (who have specifically assented to the terms of this Settlement Agreement) and the Settlement Class:**

**Defendant Flagstar Bank, N.A.:**

Signed by:

*William E. Ridgway*

96A37A309BC7456...

Name: William E. Ridgway

Title: Partner

Date: 10/1/2025

Name: Norman E. Siegel

Date: 10/01/2025

Name: John A. Yanchunis

Date: 10/1/2025

**<u>EXHIBITS</u>**

1.   Consumer Settlement Benefits Plan

# Exhibit A-1

## Consumer Settlement Benefits Plan

*Philip Angus, et al. v. Flagstar Bank, N.A. f/k/a Flagstar Bank, FSB*, Case No. 2:21-cv-10657 (E.D. Mich.)

Capitalized terms used herein as are defined in the Settlement Agreement, or as noted below.

1.   **DEFINITIONS**

   a.   "**Approved Claims**" means complete and timely Claim submitted by Settlement Class Members that have been approved by the Settlement Administrator.

   b.   "**Claim**" means a request for benefits under this Settlement Agreement.

   c.   "**Claim Form**" means the form that a Settlement Class Member shall use to submit a Claim.  The content of the Claim Form will be substantially in the form attached as **Exhibit C-6** to Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and To Direct Notice of Proposed Settlement to the Class ("Motion for Preliminary Approval"), except as modified by the Court.

   d.   "**Claimant**" means a Settlement Class Member who submits a Claim.

   e.   "**Monetary Losses**" means unreimbursed monetary losses fairly traceable to the Data Breaches, as further described below.

2.   **Reimbursement of Documented Monetary Losses.** All Settlement Class Members may submit a Claim Form for reimbursement of documented Monetary Losses fairly traceable to the Data Breaches up to $25,000 per individual. Monetary Losses may include, without limitation, unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; costs associated with freezing or unfreezing credit

1

with any credit reporting agency; credit monitoring costs that were incurred on or after the Data Breaches through the date of Claim submission; and miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges. Settlement Class Members with Monetary Losses must submit documentation supporting their Claims. This can include receipts or other documentation not "self-prepared" by the Claimant that documents the costs incurred. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support other submitted documentation.

3. **Credit Monitoring.** All Settlement Class Members may also submit a Claim for three years of Credit Monitoring which will include at least three bureau credit monitoring and $1 million in identity theft insurance protections.

4. **California Statutory Payment.** In addition to, or in the alternative to, making Claims for Documented Monetary Losses and/or Credit Monitoring, Settlement Class Members who resided in California at the time of the Data Breaches may elect to receive a statutory cash payment of up to $100 on a claims-made basis ("California Statutory Payment"). To be eligible to receive the California Statutory Payment, California Settlement Class members must submit their name, address, Unique Class Member ID number, and an attestation under penalty of perjury that they were residents of California at the time of the Data Breaches. Unless

2

specifically requested by the Settlement Administrator, California Subclass Members need not submit any proof-of-residency documentation. This benefit may be stacked with any claim for Documented Monetary Losses and/or a Residual Cash Payment.

5. **Residual Cash Payment.** All Settlement Class Members may also submit a claim for a Residual Cash Payment. The amount of this benefit shall be determined pro rata based on the amount remaining in the Settlement Fund following payment of the Attorneys' Fees and Expenses, Service Awards, Administrative Costs, Credit Monitoring costs, Claims for reimbursement of documented Monetary Losses, and claims for California Statutory Payments. The Residual Cash Payment shall not exceed $599 per individual. Class Counsel may include within the Notices an estimate(s) of the likely Residual Cash Payment based upon various claims rate(s).

6. **Notice.** Within sixty (60) days following entry of the Preliminary Approval Order, the Settlement Administrator shall execute the Notice Plan, using the forms of Notice approved by the Court. Where physical addresses have been provided for Settlement Class members, Postcard Notices shall be sent, with an attached "tear off" claim form with prepaid postage for those who wish to make claims that do not require documentation, *e.g.*, Claims for Credit Monitoring, a Residual Cash Payment, and/or California Statutory Payment, substantially in the

form of Ex. C-3 to Plaintiffs' Motion for Preliminary Approval. Where email addresses have been provided for Settlement Class Members, Email Notice (Ex. C-4 to Plaintiff's Motion for Preliminary Approval) shall also be sent, in addition to the Postcard Notice. The Email Notice and Postcard Notice shall include, among other information: (a) a description of the material terms of the Settlement; (b) identification of the applicable settlement subclass(es) and applicable Released Parties for each Settlement Class Member; (c) how to submit a Claim Form; (d) the Claim Form Deadline; (e) the last day of the Opt-Out Period for Settlement Class Members to opt-out of the Settlement Class; (f) the last day of the Objection Period for Settlement Class Members to object to the Settlement and/or Application for Attorneys' Fees and Costs; (g) the Final Approval Hearing date; and (h) the Settlement Website address at which Settlement Class Members may access this Agreement and other related documents and information. The Settlement Administrator shall insert the correct dates and deadlines in the Notices before the Notice Program commences, based upon those dates and deadlines set by the Court in the Preliminary Approval Order. If the date or time for the Final Approval Hearing changes, the Settlement Administrator shall update the Settlement Website to reflect the new date. No additional notice to the Settlement Class is required if the date or time for the Final Approval Hearing changes.

7.     **Assessing Claims**. The Settlement Administrator will establish a reasonably practicable procedure to protect against fraudulent Claims. Defendant will provide to the Settlement Administrator reasonable information to facilitate this procedure. The Settlement Administrator shall agree to maintain the confidentiality of such information, to implement appropriate safeguards to prevent unauthorized access to such information, and to use such information strictly for the business purpose of administering the Settlement. The Settlement Administrator shall have the sole discretion and authority to determine whether and to what extent a Claim is supported by reasonable documentation and seeks reimbursement for actual losses that are fairly traceable to the Data Breach. The Settlement Administrator is authorized to contact any Settlement Class Member (by e-mail, telephone, or U.S. mail) to seek clarification regarding a submitted Claim prior to making a determination as to its validity.  In no event shall any Settlement Class Member be compensated for documented Monetary Losses that were spent or incurred prior to January 20, 2021, or after the Claims Deadline.

8.     **Deficient Claims**. To the extent the Settlement Administrator determines a Claim seeking reimbursement pursuant to Paragraphs 2, 3, 4, or 5 above is deficient in whole or part, the Settlement Administrator shall notify the Settlement Class Member of the deficiencies within a reasonable time of making such determination and give the Settlement Class Member twenty-one (21) days to cure

the deficiencies. Such notifications shall be sent via e-mail, unless the Claimant did not provide an e-mail address, in which case such notifications shall be sent via U.S. mail. If the Settlement Class Member attempts to cure the deficiencies but fails to do so, as determined by the sole discretion and authority of the Settlement Administrator, the Settlement Administrator shall notify the Settlement Class Member of that determination (that a failure to timely cure the relevant deficiency(ies) has occurred) within ten (10) days of the determination. All such determinations of disputed Claims by the Settlement Administrator are final (the "Final Determination"), subject to the dispute provisions below.

9. **Payment Timing**. Payments for Approved Claims shall be issued by the Settlement Administrator in the form of a check mailed and/or an electronic payment as soon as practicable after the Effective Date, and following completion of any deficiency process or Claims Appeals, as described above, but in no event prior to the Effective Date.

10. **Timing**. Settlement checks shall bear in the legend that they expire if not negotiated within ninety (90) days of their date of issue. If a Settlement Check is not cashed within sixty (60) days after the date of issue, the Settlement Administrator is authorized to send an e-mail and/or place a telephone call to that participating Settlement Class Member reminding him/her of the deadline to cash such check.

11. **Returned Checks**. For any Settlement check returned to the Settlement Administrator as undeliverable (including, but not limited to, when the intended recipient is no longer located at the address), the Settlement Administrator shall make reasonable efforts to locate a valid address and resend the Settlement check within thirty (30) days after the check is returned to the Settlement Administrator as undeliverable. In attempting to locate a valid address, the Settlement Administrator is authorized to send an e-mail and/or place a telephone call to that participating Settlement Class Member to obtain updated address information. Any replacement Settlement checks issued to participating Settlement Class Members shall remain valid and negotiable for sixty (60) days from the date of their issuance and may thereafter automatically be canceled if not cashed by the participating Settlement Class Members within that time.

12. **Uncashed Checks**. To the extent that a Settlement check is not cashed within ninety (90) days after the date of issue, the Settlement Administrator shall undertake the following actions: (1) attempt to contact the participating Settlement Class Member by e-mail and/or telephone to discuss how to obtain a reissued check; (2) if those efforts are unsuccessful, make reasonable efforts to locate an updated address for the participating Settlement Class Member using advanced address searches or other reasonable methods; and (3) reissue a check or mail the participating Settlement Class Member a postcard (either to an updated address if

located or the original address if not) providing information regarding how to obtain a reissued check. Any reissued Settlement checks issued to participating Settlement Class Members shall remain valid and negotiable for sixty (60) days from the date of their issuance and may thereafter automatically be canceled if not cashed by the participating Settlement Class Members within that time.

13. **Unclaimed Property**. To the extent any money remains in the Settlement Fund more than one hundred and fifty (150) days after the distribution of Settlement payments to the participating Settlement Class Members, or thirty (30) days after all reissued Settlement checks are no longer negotiable, whichever occurs later or as otherwise agreed to by the Parties, any remaining money shall be used to purchase an extension of the Credit Monitoring services for those who submitted an Approved Claim for that relief, and, in the event the amount remaining is insufficient to purchase any additional Credit Monitoring term, awarded to the designated and Court-approved cy près recipients.

14. **Deceased Class Members**. If the Settlement Administrator is notified that a participating Settlement Class Member is deceased, the Settlement Administrator is authorized to reissue the Settlement Check to the participating Settlement Class Member's estate upon receiving proof the participating Settlement Class Member is deceased and after consultation with Class Counsel.

15.    **Submission of Electronic and Hard Copy Claims**. Participating Settlement Class Members may submit Claim Forms to the Settlement Administrator electronically via the Settlement Website or physically by mail to the Settlement Administrator. Claim Forms must be submitted electronically or postmarked on or before the Claims Deadline.

16.    **Contingencies**.  In the event that the aggregate amount of payments for unreimbursed documented Monetary Losses and California Statutory Payments exceeds the remaining amount in the Settlement Fund after payment of Attorneys' Fees and Expenses, Service Awards, Administrative Costs, and Credit Monitoring services, then each Settlement Class Member's Claim for documented Monetary Losses and California Statutory Payments shall be proportionately reduced on a pro rata basis, and there will be no Residual Cash Payment.