# EXHIBIT C

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| PHILIP ANGUS, MARK WIEDDER, TANIA GARCIA, EDWARD BURDICK, RAY HARTER, DANIELLE MEIS, JONATHAN KELLEY, RYAN MARTIN, ARTHUR DORE, ANN KELLY, KEITH KELLY, RANDY MONIZ, HOLLY RINGLING, JOHN SCOTT SMITH, CHRISTOPHER P. KENNEDY, RAFAEL HERNANDEZ, WILLIAM WORTON, HASSAN NASRALLAH, NATHAN SILVA, LAURIE EWING SCANLON, EVERETT TURNER, and ALLIE MCLAUGHLIN, on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>        v.<br><br>FLAGSTAR BANK, N.A., f/k/a FLAGSTAR BANK, FSB, a Michigan-based federally chartered stock savings bank,<br><br>                Defendants. | Case No. 2:21-cv-10657-MFL-DRG<br><br><br>**DECLARATION OF BRANDON SCHWARTZ REGARDING PROPOSED NOTICE PLAN AND SETTLEMENT ADMINISTRATION** |

I, Brandon Schwartz, declare as follows:

1.      I serve as the Director of Notice at Eisner Advisory Group LLC ("EAG" or "EisnerAmper"), a comprehensive legal administration firm specializing in the development, implementation, and impartial management of intricate legal notification programs. EAG was asked by Counsel to devise and execute the proposed Notice Plan, as well as administer the claims process in the above-referenced matter (the "Action").[1] The statements presented herein are based on my personal knowledge, as well as information provided by other skilled EAG professionals operating under my supervision, along with my examination of information and documents furnished by Counsel.

2.      EAG routinely undertakes the creation and execution of notice plans, along with the administration of diverse class action and mass action settlements. Our expertise extends across a wide array of subject matters, encompassing but not limited to privacy, products liability, consumer rights, mass tort, antitrust, insurance, and healthcare. The accomplished members of the EAG team possess extensive experience in the design and implementation of notice procedures involving various aspects of class certification and settlement programs. For more detailed information about EAG, visit our website at www.eisneramper.com.

---

[1] All capitalized terms not otherwise defined in this document shall have the meaning ascribed to them in the Settlement Agreement.

## EXPERIENCE

3.      Drawing upon over 15 years of expertise in class actions, advertising, media, and marketing, I have cultivated comprehensive noticing solutions encompassing all facets of class certification and settlement. My proficiency extends to a deep understanding of email and postal distribution methodologies, reach and frequency analysis, strategic media generation, meticulous demographic research, media plan design, effective media development and procurement, commercial and video production creation, and the adept application of best practices for effective social media outreach.

4.      I have designed and implemented notice campaigns for more than 100 high-profile cases in addition to the hundreds of cases I have managed. Some of my notice plans include: *Miracle-Pond, et al. v. Shutterfly, Inc*, No. 2019-CH-07050 (Cir. Ct. Cook Cnty.); *Baldwin, et al. v. National Western Life Insurance Company,* No. 2:21-cv-04066 (W.D. Mo.); *In re: Novant Health, Inc,* No. 1:22-cv00697 (M.D.N.C.)*; Rivera, et al. v Google LLC*, 2019-CH-00990 (Cir. Ct. Cook Cnty.); *In Re: Sonic Corp. Customer Data Breach Litigation,* 1:17-md-02807-JSG (N.D. Ohio); *Riley v. Centerstone of America,* No. 3:22-cv-00662 (M.D. Tenn.); and *Tucker v. Marietta Area Health Care Inc.,* No. 2:22-cv-00184 (S.D. Ohio). A description of my experience is attached as **Ex. C-1**.

5.      As outlined in the following section, the courts have consistently

acknowledged both the credibility of EAG (curriculum vitae attached hereto as **Ex. C-2**) and the effectiveness of my class action notice plans. Illustrative court opinions affirming the sufficiency of EAG's notice plans include:

a. On April 21, 2025, in *Brim v. Prestige Care Inc Data Breach*, 3:24-cv-05133-BHS (W.D. WA), Judge Benjamin H. Settle ruled:

> The Court finds that the dissemination of the Notice: (a) was implemented in accordance with the Preliminary Approval Order; (b) constituted the best notice practicable under the circumstances; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of (i) the nature of the Action, (ii) the definition of the class certified, (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who timely requests exclusion; (vi) the time and manner for requesting exclusion; the binding effect of a class judgment on members under Rule 23(c)(3); (vii) Class Counsel's motion for a Fee Award and Expenses, (viii) Class Representatives' motion for Service Awards, (ix) their right to object to any aspect of the Settlement, Class Counsel's motion for a Fee Award and Expenses, and/or Class Representatives' motion for Service Awards; (d) constituted due, adequate and sufficient notice to all persons and entities entitled to receive notice of the proposed Settlement; and (e) was carried out as ordered by this Court's Preliminary Approval Order and satisfied the requirements of Rule 23 and the United States Constitution (including the Due Process Clause), and all other applicable law and rules.

b. On August 27th, 2024, in the Final Approval Order in *In re: Cleveland Brothers Data Incident Litigation*, No. 1:23-cv-00501-JPW (M.D. Pa), Judge Jennifer P. Wilson ruled:

> Notice to the Settlement Class required by Fed. R. Civ. P. Rule 23(e) has been provided in accordance with the Settlement Agreement and the Preliminary Approval Order. Such Notice has been given in an adequate and sufficient manner, constitutes the best notice practicable under the circumstances, and satisfies Fed. R. Civ. P. Rule 23(e) and due process.

c. On June 17th, 2024, in the Memorandum Opinion, Order, and Judgement in *In re: Novant Health, Inc.*, No. 1:22-cv-679 (M.D.N.C.), Chief Judge Catherine C. Eagles ruled:

> Approximately 11.7% of the settlement class submitted claims. Doc. 63-1 at, ¶ 17. By providing digital options, the Settlement Administrator was able to reduce mailing costs and retain more money to pay class members… The Settlement Administrator sent email notice to each class member for whom it had a valid email address. Doc. 63-1 at ¶ 6- 7. Given the nature of the claims and the fact that all class members had participated in online access to medical records, use of email notice was particularly likely to be effective. In the few cases where the class member did not have an email address on file or if the email bounced back, the Settlement Administrator sent postcard notice via first class mail…. The notice was reasonable and satisfies the requirements of due process.

d. On December 12, 2022, in the Order in *LaPrairie v. Presidio, Inc.*,

et al., No. 1:21-CV-08795-JFK (S.D.N.Y.), Judge Andrew L.

Carter, Jr. ruled:

> The Class Members have been given proper and adequate notice of the Settlement, fairness hearing, Class Counsel's application for attorneys' fees, and the service award to the Settlement Class Representative. An affidavit or declaration of the Settlement Administrator's compliance with the Notice process has been filed with the Court. The Notice process as set forth in the Settlement Agreement and ordered in the Preliminary Approval Order constitutes the best notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all Class Members in accordance with the requirements of Federal Rule of Civil Procedure 23(c)(2).

e. On September 28, 2022, in the Order in *Rivera, et al. v. Google*

*LLC,* 2019-CH-00990 (Ill. Cir. Ct. Cook Cnty.), Judge Anna M.

Loftus ruled:

> Pursuant to this Court's Order granting preliminary approval of the Settlement, Postlethwaite & Netterville, APAC ("P&N") served as Settlement Administrator. This Court finds that the Settlement Administrator performed all duties thus far required as set forth in the Settlement Agreement.

> The Court finds that the Settlement Administrator has complied with the approved notice process as confirmed by its Declaration filed with the Court. The Court further finds that the Notice plan set forth in the Settlement as executed by the Settlement Administrator satisfied the requirements of Due Process and 735 ILCS 5/2-803. The Notice plan was reasonably calculated and constituted the best notice

practicable to apprise Settlement Class Members of the nature of this litigation, the scope of the Settlement Class, the terms of the Settlement, the right of Settlement Class Members to object to the Settlement or exclude themselves from the Settlement Class and the process for doing so, and of the Final Approval Hearing. Accordingly, the Court finds and concludes that the Settlement Class Members have been provided the best notice practicable under the circumstances, and that the Notice plan was clearly designed to advise the Settlement Class Members of their rights.

## OVERVIEW

6.     Based on our review of the Settlement Agreement, the Settlement Class is defined as follows:

All persons in the United States whose personally identifying information ("PII") was impacted by either or both of the two Data Breaches Flagstar experienced in 2021, as reflected in the Class List.

7.     The Settlement Class includes (i) a Nationwide Settlement Class, representing approximately 2,187,170 individuals impacted by the Data Breaches and (ii) a California Settlement Class, representing approximately 364,000 California Settlement Class members. Excluded from the Settlement Class are (i) Flagstar, any entity in which Flagstar has a controlling interest, and of Flagstar's officers, directors, legal representatives, Successors, Subsidiaries, and assigns; (ii) any judge, justice, or judicial officer presiding over the Action and the members of their immediate families and judicial staff; and (iii) any individual who timely and validly opts out of the Settlement.

8.      The objective of this Notice Plan is to ensure the delivery of the most feasible and effective notice to the Settlement Class, in compliance with the provisions set forth in MCR 3.501  and Fed. R. Civ. P. 23. Consequently, it is my opinion that the ensuing Notice Plan satisfies due process standards and adheres to the recommendations in the *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*.

## PROPOSED NOTICE PLAN

9.      In order to obtain the pertinent contact details of Settlement Class Members, upon the preliminary approval, Flagstar will furnish EAG with a list of all records comprising, to the extent available, the names, physical addresses, and email address associated with each Settlement Class Member (the "Class List").

10.      Described below, the proposed Notice Plan provides that individual notice be sent to all Settlement Class Members identified in the Class List via a Postcard Notice (**Ex. C-3**). Where both a mailing address and an email address exist for a Settlement Class Member, they will receive a Postcard Notice and an Email Notice (**Ex. C-4**).

**Direct Mail Notice (Ex. C-3)**

11.      The summary Notice will be mailed as a double postcard that includes a tear-off Claim Form with pre-paid postage ("Postcard Notice") and will be sent by United States Postal Service ("USPS") First Class Mail to all Settlement Class

8

Members identified in the Class List. Prior to mailing, all mailing addresses will be checked against the National Change of Address ("NCOA")[2] database maintained by USPS to ensure the accuracy and currency of Settlement Class Member address information for proper formatting and mail delivery. Additionally, the addresses will be validated through the Coding Accuracy Support System to uphold zip code precision, while Delivery Point Validation will be employed to verify mailing address accuracy. In the event that NCOA provides a more current mailing address for a Settlement Class Member, EAG will update the address accordingly. In instances where a summary notice is returned with forwarding address information, EAG will re-send to the newly provided mailing address.

12.    For Settlement Class Members for whom Flagstar is not able to ascertain a mailing address from its records with reasonable effort, EAG will use reasonable efforts to identify a mailing address and mail a copy of the Postcard Notice to such address.

13.    For any Postcard Notices that are returned as undeliverable, EAG will utilize standard skip-tracing techniques to obtain forwarding address information. If skip-tracing yields an alternative forwarding mailing address, EAG will re-mail

---

[2] The NCOA database is maintained by the USPS and consists of approximately 160 million permanent change-of-address ("COA") records consisting of names and addresses of individuals, families, and businesses who have filed a COA with the USPS. The address information is maintained on the database for 48 months.

the notice to the address identified through the skip-tracing process.

**Direct Email Notice (Ex. C-4)**

14.    The summary notice will be formatted for email distribution ("Email Notice") to all Settlement Class Members for whom a facially valid email address is available in the Class List. The Email Notice will be created using embedded html text format presenting a user-friendly and easily readable layout that avoids the inclusion of tables, graphs or other elements that may increase the likelihood of the email landing in SPAM folders and/or being blocked by Internet Service Providers ("ISP" or "ISPs"). Additionally, EAG is committed to adhering to email industry best practices, incorporating essential elements such as "unsubscribe" links and Administrator contact information, and maintaining multiple IP addresses with strong sender reputations[3].

15.    To safeguard the integrity and optimize the deliverability of the Email Notice, all emails will undergo a hygiene and verification process. This process entails deduplication, syntax validation, detection and correction of misspelled

---

[3] ISPs assign scores, or sender reputation, to domains and IP addresses which tell email inbox providers if the email should be delivered to the recipient's inbox or directed to the spam folder. The sender reputation is determined by multiple factors such as: the timing and number of emails sent from the IP/domain; number of recipients that have marked incoming mail from the sender as spam; number of emails that are delivered directly to spam boxes; number of emails that bounce back; number of recipients that interact with the email (e.g., open, reply, forward or delete); quality of the content within the email (e.g. typos); the number of users that unsubscribe; and many other factors.

domains, domain validation, and risk validation. EAG will monitor and report all email delivery attempts. For instances where an email is returned as undeliverable, commonly known as a "bounce," the specific reason for the bounce will be documented. If an email address is determined to be non-existent when attempted to send, this would be categorized as a "hard bounce," and no further delivery attempts would be made to that address. Instances where the inbox is full, there is initial blocking or deferral by the ISP, or any other factors impeding delivery are categorized as "soft bounces." To limit the number of undelivered emails as a result of soft bounces, EAG will make additional email attempts to addresses experiencing a soft bounce. If an email remains undeliverable after subsequent attempts, it will be deemed undeliverable, and no additional delivery attempts would be pursued for that particular email address.

## Settlement Website

16.     EAG will create and maintain a website dedicated to this Settlement. The website address will be prominently included in the Postcard Notice (Ex. C-3), Email Notice (Ex. C-4), and Long Form Notice (Ex. C-5) (collectively, the "Notices"). The Notices, along with the Motion for Preliminary Approval, the Preliminary Approval Order, the Settlement Agreement, the Complaint filed in this Action, the Claim Form (Ex. C-6), and any filings Flagstar makes in connection with the Settlement or other materials the Parties agree to include, will be posted on

the Settlement Website for Settlement Class Members to review and download. Additional documents, including the Motion for Final Approval, Class Counsel's application for Attorneys' Fees and Expenses, and the request for Service Awards, will be added to the Settlement Website once they are filed.

17.     The Settlement Website will also allow Settlement Class Members to file a Claim Form electronically, and include relevant dates, other case-related information, instructions for how to be excluded from the Settlement Class or object to the Settlement, and contact information for the Settlement Administrator.

**Dedicated Toll-Free Hotline**

18.     A dedicated toll-free informational hotline will be available 24 hours per day, seven days per week. The hotline will utilize an interactive voice response ("IVR") system where Settlement Class Members can obtain essential information regarding the Settlement and be provided responses to frequently asked questions. Settlement Class Members will also have the option to leave a voicemail and receive a call back from the Settlement Administrator. Settlement Class Members may request copies of the Notices and paper Claim Form, as well as the Settlement Agreement, upon request through the toll-free hotline.

## REQUESTS FOR EXCLUSION

19.     Settlement Class Members that want to exclude themselves from the Settlement Class may submit a request for exclusion by mail to a dedicated Post

Office Box or by email to a dedicated email address that EAG will maintain. EAG will monitor all mail delivered to that Post Office Box and email delivered to that email address. EAG will track all exclusion requests received, which will be provided to the Parties.

## **CONCLUSION**

20.     The proposed Notice Plan encompasses individualized direct notice to all members of the Settlement Class who can be identified through reasonable efforts.

21.     It is my opinion based on my expertise and experience, as well as that of my team, that this method of focused notice dissemination provides effective notice in this Action, will provide the best notice that is practicable, adheres to MCR 3.501 and Fed. R. Civ. P. 23, follows the guidance set forth in the Manual for Complex Litigation 4th Ed. and FJC guidance, and exceeds the requirements of due process, including its "desire to actually inform" requirement.[4]

22.     The claims process similarly draws upon the most up-to-date techniques to facilitate participation, including the ability to submit claims electronically on the Settlement Website or by mail.

---

[4] *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950)

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 1st day of October, 2025 in Portland, Oregon.

_____
Brandon Schwartz

# Exhibit C-1

**EISNERAMPER**

# Brandon Schwartz



Brandon Schwartz is the Director of Notice for Eisner Advisory Group LLC ("EAG"), where he leads the strategy and execution of innovative legal notice programs for complex class actions and claims administration. With over 15 years of industry experience, he brings deep expertise in crafting effective, compliant, and results-driven notice solutions tailored to the unique demands of each case.

Brandon is widely recognized for his command of modern notice tactics, including cutting-edge digital and social media campaigns, email and direct mail distribution, demographic targeting, and reach and frequency analysis. His deep understanding of Fed R. Civ 23 ensures that notice plans meet the highest standards of compliance while maximizing reach and effectiveness.

A published author on topics related to legal notice, Brandon has led the design and delivery of notice campaigns in hundreds of matters spanning antitrust, consumer, privacy, securities litigation, and more.  Prior to joining EAG, Brandon was the Director of Notice and Media for a large claims administrator where he oversaw high-profile national campaigns and built a reputation for precision, creativity, and reliability in legal notice.

**EDUCATION & CREDENTIALS**
- Bachelor of Science, Marketing, University of Illinois at Chicago
- Bachelor of Science, Management, University of Illinois at Chicago
- Legal Notice Expert

**ARTICLES**
- Case Study: Effective Notice Leads to High Claims Rate
- Legal Notice and Social Media: How to Win the Internet
- Rule 23 Changes: Avoid Delays in Class Settlement Approval
- Rule 23 Changes: How Electronic Notice Can Save Money
- Tackling Digital Class Notice with Rule 23 Changes
- What to Expect: California's Northern District Procedural Guidance Changes

**SPEAKING ENGAGEMENTS**
- Class Action Law Forum: The Increase of Fraud in Class Actions and Mass Torts, Plus Ethics of Third-Party Filers, San Diego, March 13, 2024
- Class Action Law Forum: Notice and Administration: Fraud and Third-Party Filers, San Diego, CA, March 18, 2023
- Class Action Law Forum: Settlement and Notice & Claims Trends, San Diego, CA, March 18, 2022
- Class Action Law Forum: Consumer Class Actions, San Diego, CA, March 5, 2020
- Class Action Mastery: Best Practices in Claims Settlement Administration, HB Litigation Conference, San Diego, CA, January 17, 2019
- Class Action Mastery: Communication with the Class, HB Litigation Conference, New York, NY, May 10, 2018

"EisnerAmper" is the brand name under which EisnerAmper LLP and Eisner Advisory Group LLC provide professional services. EisnerAmper LLP and Eisner Advisory Group LLC are independently owned firms that practice in an alternative practice structure in accordance with the AICPA Code of Professional Conduct and applicable law, regulations and professional standards. EisnerAmper LLP is a licensed CPA firm that provides attest services, and Eisner Advisory Group LLC and its subsidiary entities provide tax and business consulting services. Eisner Advisory Group LLC and its subsidiary entities are not licensed CPA firms.

## SAMPLE JUDICIAL COMMENTS

- ***Milan, et al. v. Clif Bar and Company,*** Case No. 1:18-cv-02354 (N.D. Cal.), Judge James Donato ruled on March 21, 2025:

  *The distribution of the Class Notice pursuant to the Class Notice Program constituted the best notice practicable under the circumstances, and fully satisfies the requirements of Federal Rule of Civil Procedure 23 and the requirements of due process.*

- ***Meholic, et al. v. Seattle Arena Company,*** Case No. 24-2-06283-1 (Wash. Super. Ct.), Judge Lindsey M. Teppner ruled on January 3, 2025:

  *The Court finds that the Notice Program provided for in the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order: (i) was the best notice practicable under the circumstances; (ii) was reasonably calculated to provide, and did provide due and sufficient notice to the Settlement Class regarding the existence and nature of the Action, certification of the Settlement Class for settlement purposes only, the existence and terms of the Settlement Agreement, and the rights of Settlement Class Members to exclude themselves from the settlement, to object and appear at the Final Fairness Hearing, and to receive benefits under the Settlement Agreement; and (iii) satisfied the requirements of the Washington Rules of Civil Procedure, the United States Constitution, and all other applicable law.*

- ***Kandel, et al. v. Dr. Dennis Gross Skincare, LLC,*** Case No. 1:23-cv-01967 (S.D.N.Y.), Judge Edgardo Ramos ruled on October 31, 2024:

  *The Court finds that distribution of the Notice constituted the best notice practicable under the circumstances, and constituted valid, due, and sufficient notice to all members of the Settlement Class. The Court finds that such notice complies fully with the requirements of Fed. R. Civ. P. 23, the Constitution of the United States, and any other applicable laws...The Court finds and determines that the notice procedure carried out by EAG Gulf Coast LLC afforded adequate protections to Settlement Class members and provides the basis for the Court to make an informed decision regarding approval of the Settlement based on the responses of Settlement Class members. The Court finds and determines that the Notice was the best notice practicable, and has satisfied the requirements of law and due process.*

- ***Andrade-Heymsfield v. NextFoods, Inc.,*** Case No. 3:21-cv-1446 (S.D. Cal.), Judge Barry T. Moskowitz ruled on April 8, 2024:

  *The Court previously approved the parties' proposed notice procedures. (ECF No. 56). In the motion for final approval, Plaintiff represents that the approved notice plan was executed. (ECF No. 59 at 9). "Notice was provided to Class Members via newspaper, a press release, and various digital means," including "display banner advertising, keyword search online advertising, and social media advertising through Facebook, Instagram, TikTok and YouTube, delivering over 120 million targeted impressions." (Id.)...In light of these actions and the Court's prior order granting preliminary approval, the Court finds that the parties have provided sufficient notice to the class members.*



- **Hymes v. Earl Enterprises Holdings,** Case No. 6:19-cv-00644 (M.D. Fla.), Judge A. James Craner ruled on February 20, 2024:

   *The Court finds that the form content, and method of giving notice to the Settlement Class as described in Article VII of the Settlement Agreement (including the exhibits thereto): (a) was the best practicable notice to the Settlement Class; (b) was reasonably calculated to apprise Settlement Class Members of the pendency of the action, the terms of the proposed Settlement, and their rights under the proposed Settlement, including but not limited to their rights to object to or exclude themselves from the proposed Settlement and other rights under the terms of the Settlement Agreement; (c) was reasonable and constituted due, adequate, and sufficient notice to all Class Members and other persons entitled to receive notice; and (d) met all applicable requirements of law, including the Florida Rules of Civil Procedure, and met the Due Process Clause(s) of the United States Constitution. The Court further finds that the Notice was written in plain language, used simple terminology, and was designed to be readily understandable by Class Members.*

- **Tucker v. Marietta Area Health Care Inc.,** Case No. 2:22-cv-00184 (S.D. Ohio), Judge Sarah D. Morrison ruled on December 7, 2023:

   *The Court's Preliminary Approval Order approved the Short Form Settlement Notice, Long Form Notice, and Claim Form, and found the mailing, distribution, and publishing of the various notices as proposed met the requirements of Fed. R. Civ. P. 23 and due process, and was the best notice practicable under the circumstances, constituting due and sufficient notice to all persons entitled to notice. The roughly 6.2% claims rate supports a finding that the Notice Program was sufficient...The Court finds that the distribution of the Notices has been achieved pursuant to the Preliminary Approval Order and the Settlement Agreement, and that the Notice to Class Members complied with Fed. R. Civ. P. 23 and due process.*

- **Easter v Sound Generations,** Case No. 21-2-16953-4 (Wash. Super.), Judge James E. Rogers on July 14, 2023:

   *The Court has determined that the Notice given to the Settlement Class Members in accordance with the Preliminary Approval Order fully and accurately informed Settlement Class Members of all material terms of the Settlement and constituted the best notice practicable under the circumstances, and fully satisfied the requirements of Civil Rule 23, applicable law, and the due process clauses of both the U.S. and Washington Constitutions.*

- **Hezi v. Celsius Holdings, Inc.,** Case No. 1:21-CV-09892-VM (S.D.N.Y.), Judge Jennifer H. Rearden on April 5, 2023:

   *The Court finds and determines that the notice procedure carried out by Claims Administrator Postlethwaite & Netterville, APAC ("P&N") afforded adequate protections to Class Members and provides the basis for the Court to make an informed decision regarding approval of the Settlement based on the responses of Class Members. The Court finds and determines that the Notice was the best notice practicable, and has satisfied the requirements of law and due process.*



- ***Gilmore, et al. v. Monsanto Company, et al.,*** Case No. 3:21-CV-8159 (N.D. Cal.), Judge Vince Chhabria on March 31, 2023:

  *The Court finds that Class Notice has been disseminated to the Class in compliance with the Court's Preliminary Approval Order and the Notice Plan. The Court further finds that this provided the best notice to the Class practicable under the circumstances, fully satisfied due process, met the requirements of Rule 23 of the Federal Rules of Civil Procedure, and complied with all other applicable law.*

- ***John Doe, et al. v. Katherine Shaw Bethea Hospital and KSB Medical Group, Inc.,*** Case No. 2021L00026 (Ill. Cir. Ct., 15th Jud. Cir.), on March 28, 2023:

  *The Court has determined that the notice given to the Settlement Class Members, in accordance with the Preliminary Approval Order, fully and accurately informed Settlement Class Members of all material elements of the Settlement and constituted the best notice practicable under the circumstances, and fully satisfied the requirements of 735 ILCS 5/2-803, applicable law, and the Due Process Clauses of the U.S. Constitution and Illinois Constitution.*

- ***In re Forefront Data Breach Litigation,*** Case No. 1:21-cv-00887-LA (E.D. Wis.), Judge Lynn Adelman on March 22, 2023:

  *The Court finds that the dissemination of Notice to Settlement Class Members: (a) was implemented in accordance with the Preliminary Approval Order; (b) constituted the best notice practicable under the circumstances; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Class Members of (i) the pendency of the Action; (ii) their right to submit a claim (where applicable) by submitting a Claim Form; (iii) their right to exclude themselves from the Settlement Class; (iv) the effect of the proposed Settlement (including the releases to be provided thereunder); (v) Class Counsel's motion for a Fee Award and Costs and for Service Awards to the Class Representatives; (vi) their right to object to any aspect of the Settlement, and/or Class Counsel's motion for Service Awards to the Class Representatives and for a Fee Award and Costs; and (vii) their right to appear at the Final Approval Hearing; (d) constituted due, adequate, and sufficient notice to all natural persons entitled to receive notice of the proposed Settlement; and (e) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Constitution of the United States (including the Due Process Clause), and all other applicable laws and rules.*

- ***Sanders, et al. v. Ibex Global Solutions, Inc., et al.,*** Case No. 1:22-CV-00591 (D.D.C.), Judge Trevor N. McFadden on March 10, 2023:

  *An affidavit or declaration of the Settlement Administrator's compliance with the Notice process has been filed with the Court. The Notice process as set forth in the Settlement Agreement and ordered in the Preliminary Approval Order constitutes the best notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all Class Members in accordance with the requirements of Federal Rule of Civil Procedure 23(c)(2).*



- ***Pagan, et. al. v. Faneuil, Inc.,*** Case No. 3:22-CV-297 (E.D. Va), Judge Robert E. Payne on February 16, 2023:

    *The Court finds that the Notice Program, set forth in the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order, was the best notice practicable under the circumstances, was reasonably calculated to provide and did provide due and sufficient notice to the Settlement Class of the pendency of the Action, certification of the Settlement Class for settlement purposes only, the existence and terms of the Settlement Agreement, and their right to object and to appear at the final approval hearing or to exclude themselves from the Settlement Agreement, and satisfied the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and other applicable law.*

- ***LaPrairie v. Presidio, Inc., et al.,*** Case No. 1:21-CV-08795-JFK (S.D.N.Y.), Judge Andrew L. Carter, Jr. on December 12, 2022:

    *The Court hereby fully, finally and unconditionally approves the Settlement embodied in the Settlement Agreement as being a fair, reasonable and adequate settlement and compromise of the claims asserted in the Action. The Class Members have been given proper and adequate notice of the Settlement, fairness hearing, Class Counsel's application for attorneys' fees, and the service award to the Settlement Class Representative. An affidavit or declaration of the Settlement Administrator's compliance with the Notice process has been filed with the Court. The Notice process as set forth in the Settlement Agreement and ordered in the Preliminary Approval Order constitutes the best notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all Class Members in accordance with the requirements of Federal Rule of Civil Procedure 23(c)(2).*

- ***Nelson v. Bansley & Kiener, LLP,*** Case No. 2021-CH-06274 (Circuit Court of Cook County, IL), Judge Sophia H. Hall on November 30, 2022:

    *The court finds that such Notice as therein ordered, constitutes the best possible notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all Settlement Class Members in compliance with requirements of 735 ILCS 5/2-801, et seq.*

- ***Buck, et. al. v. Northwest Commercial Real Estate Investments, LLC, et al.,*** Case No. 21-2-03929-1-SEA (Superior Court King County, WA), Judge Douglass A. North on September 30, 2022:

    *Pursuant to the Court's Preliminary Approval Order, Postcard Notice was distributed to the Class by First Class mail and Email Notice was distributed to all Class Members for whom the Settlement Administrator had a valid email address. The Court hereby finds and concludes that Postcard and Email Notice was disseminated to members of the Settlement Class in accordance with the terms set forth in the Settlement and in compliance with the Court's Preliminary Approval Order. The Court further finds and concludes that the Postcard and Email Notice, and the distribution procedures set forth in the Settlement fully satisfy CR 23(c)(2) and the requirements of due process, were the best notice practicable under the circumstances, provided individual notice to all members of the Class who could be identified through reasonable effort, provided an opportunity for the Class Members to object or exclude themselves from the Settlement,*



*and support the Court's exercise of jurisdiction over the Settlement Class Members as contemplated in the Settlement and this Final Approval Order.*

- ***Rivera, et al. v. Google LLC,*** Case No. 2019-CH-00990 (Cir. Ct. Cook Cnty., Ill.), Judge Anna M. Loftus on September 28, 2022:

  *Pursuant to this Court's Order granting preliminary approval of the Settlement, Postlethwaite & Netterville, APAC ("P&N") served as Settlement Administrator. This Court finds that the Settlement Administrator performed all duties thus far required as set forth in the Settlement Agreement.*

  *The Court finds that the Settlement Administrator has complied with the approved notice process as confirmed by its Declaration filed with the Court. The Court further finds that the Notice plan set forth in the Settlement as executed by the Settlement Administrator satisfied the requirements of Due Process and 735 ILCS 5/2-803. The Notice plan was reasonably calculated and constituted the best notice practicable to apprise Settlement Class Members of the nature of this litigation, the scope of the Settlement Class, the terms of the Settlement, the right of Settlement Class Members to object to the Settlement or exclude themselves from the Settlement Class and the process for doing so, and of the Final Approval Hearing. Accordingly, the Court finds and concludes that the Settlement Class Members have been provided the best notice practicable under the circumstances, and that the Notice plan was clearly designed to advise the Settlement Class Members of their rights.*

- ***Patricia Davidson, et al. v. Healthgrades Operating Company, Inc.,*** Case No. 21-cv-01250-RBJ (D. Colo), Judge R. Brooke Jackson on August 22, 2022:

  *The Court finds that such Notice as therein ordered, constitutes the best possible notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all Settlement Class Members in compliance with the requirements of Federal Rule of Civil Procedure 23(c)(2).*

- ***Hosch, et al. v. Drybar Holdings LLC,*** Case No. 2021-CH-01976 (Circuit Court of Cook County, IL), Judge Pamela M. Meyerson on June 27, 2022:

  *The Court has determined that the Notice given to the Settlement Class Members, in accordance with the Preliminary Approval Order, fully and accurately informed Settlement Class Members of all material elements of the Settlement and constituted the best notice practicable under the circumstances, and fully satisfied the requirements of 735 ILCS 5/2-803, applicable law, and the Due Process Clauses of the U.S. Constitution and Illinois Constitution.*

- ***Baldwin, et al. v. National Western Life Insurance Company,*** 2:21-cv-04066-WJE (W.D. MO), Judge Willie J. Epps, Jr. on June 16, 2022:

  *The Court finds that such Notice as therein ordered, constituted the best possible notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all Settlement Class Members in compliance with the requirements of Rule 23(c)(2).*



- ***Chapman, et al. v. voestalpine Texas Holding LLC,*** Case No. 2:17-cv-174 (S.D. Tex.), Judge Nelva Gonzales Ramos on June 15, 2022:

  *The Class and Collective Notice provided pursuant to the Agreement and the Order Granting Preliminary Approval of Class Settlement:*

  *(a) Constituted the best practicable notice, under the circumstances;*
  *(b) Constituted notice that was reasonably calculated to apprise the Class Members of the pendency of this lawsuit, their right to object or exclude themselves from the proposed settlement, and to appear at the Fairness Hearing;*
  *(c) Was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and*
  *(d) Met all applicable requirements of the Federal Rules of Civil Procedure and the Due Process Clause of the United States Constitution because it stated in plain, easily understood language the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on members under Rule 23(c)(3).*

- ***Hanson v. Welch Foods Inc.,*** Case No. 3:20-cv-02011 (N.D. Cal.), Judge Joseph C. Spero on April 15, 2022:

  *The Class Notice and claims submission procedures set forth in Sections 5 and 9 of the Settlement Agreement, and the Notice Plan detailed in the Declaration of Brandon Schwartz filed on October 1, 2021, fully satisfy Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process, were the best notice practicable under the circumstances, provided individual notice to all Settlement Class Members who could be identified through reasonable effort, and support the Court's exercise of jurisdiction over the Settlement Class as contemplated in the Settlement Agreement and this Order. See Fed. R. Civ. P. 23(e)(2)(C)(ii).*

- ***McMorrow, et al. v. Mondelez International, Inc.,*** No. 17-cv-02327 (S.D. Cal.), Judge Cynthia Bashant on April 8, 2022:

  *Notice was administered nationwide and achieved an overwhelmingly positive outcome, surpassing estimates from the Claims Administrator both in the predicted reach of the notice (72.94% as compared to 70%) as well as in participation from the class (80% more claims submitted than expected). (Schwartz Decl. ¶ 14, ECF No. 206-1; Final App. Mot. 3.) Only 46 potential Class Members submitted exclusions (Schwartz Decl. ¶ 21), and only one submitted an objection—however the objection opposes the distribution of fees and costs rather than the settlement itself. (Obj. 3.) The Court agrees with Plaintiffs that the strong claims rate, single fee-related objection, and low opt-out rate weigh in favor of final approval.*

- ***Hadley, et al. v. Kellogg Sales Company,*** No. 16-cv-04955 (N.D. Cal.), Judge Lucy H. Koh on November 23, 2021:

  *The Class Notice and claims submission procedures set forth in Sections 4 and 6 of the Settlement Agreement, and the Notice Plan filed on March 10, 2021, fully satisfy Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process, were the best notice practicable under the circumstances, provided individual notice to all*



*Settlement Class Members who could be identified through reasonable effort, and support the Court's exercise of jurisdiction over the Settlement Classes as contemplated in the Settlement Agreement and this Order. See Fed. R. Civ. P. 23(e)(2)(C)(ii).*

- ***Miracle-Pond, et al. v. Shutterfly, Inc.,*** No. 2019-CH-07050 (Cir. Ct. Cook Cnty., Ill.), Judge Raymond W. Mitchell on September 9, 2021:

  *This Court finds that the Settlement Administrator performed all duties thus far required as set forth in the Settlement Agreement. The Court finds that the Settlement Administrator has complied with the approved notice process as confirmed by its Declaration filed with the Court. The Court further finds that the Notice plan set forth in the Settlement as executed by the Settlement Administrator satisfied the requirements of Due Process and 735 ILCS 5/2-803. The Notice plan was reasonably calculated and constituted the best notice practicable to apprise Settlement Class Members of the nature of this litigation, the scope of the Settlement Class, the terms of the Settlement, the right of Settlement Class Members to object to the Settlement or exclude themselves from the Settlement Class and the process for doing so, and of the Final Approval Hearing. Accordingly, the Court finds and concludes that the Settlement Class Members have been provided the best notice practicable under the circumstances, and that the Notice plan was clearly designed to advise the Settlement Class Members of their rights.*

- ***In re: Interior Molded Doors Indirect Purchasers Antitrust Litigation,*** No. 3:18-cv-00850 (E.D. Va.), Judge John A. Gibney on July 27, 2021:

  *The notice given to the Settlement Class of the settlement set forth in the Settlement Agreement and the other matters set forth herein was the best notice practicable under the circumstances. Said notice provided due and adequate notice of the proceedings an of the matters set forth therein, including the proposed settlement set forth in the Settlement Agreement, to all persons and entities entitled to such notice, and said notice fully satisfied the requirements of Rules 23(c)(2) and 23(e) and the requirements of due process.*

- ***Krommenhock, et al. v. Post Foods, LLC,*** No. 16-cv-04958 (N.D. Cal.), Judge William H. Orrick on June 25, 2021:

  *The Class Notice and claims submission procedures set forth in Sections 4 and 6 of the Settlement Agreement and the Notice Plan filed on January 18, 2021 fully satisfy Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process, were the best notice practicable under the circumstances, provided individual notice to all Settlement Class Members who could be identified through reasonable effort, and support the Court's exercise of jurisdiction over the Settlement Classes as contemplated in the Settlement Agreement and this Order. See Fed. R. Civ. P. 23(e)(2)(C)(ii).*

- ***Lisa Jones, et al. v. Monsanto Company, et al.,*** No. 4:19-cv-00102-BP (W.D. Mo.), Chief Judge Beth Phillips on May 13, 2021:

  *The Court also notes that there has been only one objection filed, and even the Objector has not suggested that the amount of the settlement is inadequate or that the notice or the method of disseminating the notice was inadequate to satisfy the requirements of the Due Process Clause or was otherwise infirm…However, with respect to the Rule 23(e)*



*factors, the Court finds that the process used to identify and pay class members and the amount paid to class members are fair and reasonable for settlement purposes.*

- ***Winters, et al. v. Two Towns Ciderhouse Inc.***, No. 3:20-cv-00468-BAS-BGS (S.D. Cal.), Judge Cynthia Bashant on May 11, 2021:

  *The settlement administrator, Postlethwaite and Netterville, APAC ("P&N") completed notice as directed by the Court in its Order Granting Preliminary Approval of the Class Action Settlement. (Decl. of Brandon Schwartz Re: Notice Plan Implementation and Settlement Administration ("Schwartz Decl.") ¶¶ 4–14, ECF No. 24-5.)….Notice via social media resulted in 30,633,610 impressions. (Schwartz Decl. ¶4.) Radio notice via Spotify resulted in 394,054 impressions. (Id. ¶ 5.) The settlement website received 155,636 hits, and the toll-free number received 51 calls. (Id. ¶¶ 9, 14.). Thus, the Court finds the Notice complies with due process.*

- ***Siddle, et al. v. The Duracell Company, et al.***, No. 4:19-cv-00568 (N.D. Cal.), Judge James Donato on April 19, 2021:

  *The Court finds that the Class Notice and Claims Administration procedures set forth in the Agreement fully satisfy Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process, were the best notice practicable under the circumstances, provided due and sufficient individual notice to all persons in the Settlement Class who could be identified through reasonable effort, and support the Court's exercise of jurisdiction over the Settlement Class as contemplated in the Agreement and this Final Approval Order.*

- ***Fabricant v. Amerisave Mortgage Corporation***, No. 19-cv-04659-AB-AS (C.D. Cal.), Judge Andre Birotte, Jr. on November 25, 2020:

  *The Class Notice provided to the Settlement Class conforms with the requirements of Fed. Rule Civ. Proc. 23, the California and United States Constitutions, and any other applicable law, and constitutes the best notice practicable under the circumstances, by providing individual notice to all Settlement Class Members who could be identified through reasonable effort, and by providing due and adequate notice of the proceedings and of the matters set forth therein to the other Settlement Class Members. The notice fully satisfied the requirements of Due Process. No Settlement Class Members have objected to the terms of the Settlement.*

- ***Edward Makaron, et al. v. Enagic USA, Inc.***, 2:15-cv-05145 (C.D. Cal.), Judge Dean D. Pregerson on January 16, 2020:

  *The Court makes the following findings and conclusions regarding notice to the Class:*

  *a. The Class Notice was disseminated to persons in the Class in accordance with the terms of the Settlement Agreement and the Class Notice and its dissemination were in compliance with the Court's Preliminary Approval Order;*

  *b. The Class Notice: (i) constituted the best practicable notice under the circumstances to potential Class Members, (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action, their right to object or to exclude themselves from the proposed Settlement, and their right to appear at the Final Approval Hearing, (iii) was reasonable and constituted due, adequate, and*



*sufficient individual notice to all persons entitled to be provided with notice, and (iv) complied fully with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable law.*

- ***John Karpilovsky and Jimmie Criollo, Jr., et al. v. All Web Leads, Inc.***, 1:17-cv-01307 (N.D. Ill.), Judge Harry D. Leinenweber on August 8, 2019:

  *The Court hereby finds and concludes that Class Notice was disseminated to members of the Settlement Class in accordance with the terms set forth in the Settlement Agreement and that Class Notice and its dissemination were in compliance with this Court's Preliminary Approval Order.*

  *The Court further finds and concludes that the Class Notice and claims submission procedures set forth in the Settlement Agreement fully satisfy Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process, were the best notice practicable under the circumstances, provided individual notice to all Settlement Class Members who could be identified through reasonable effort, and support the Court's exercise of jurisdiction over the Settlement Class as contemplated in the Settlement and this Order.*

- ***Hartig Drug Company Inc. v. Senju Pharmaceutical LTD. and Allergan, Inc.,*** 1:14-cv-00719 (D. Del.), Judge Joseph F. Bataillon on May 3, 2018:

  *The Court approves the proposed notice program, including the Mail Notice and the Publication Notice, attached as Exhibits A and B to the Declaration of Brandon Schwartz of Garden City Group in support of Plaintiff's Unopposed Motion to Distribute Notice to the Settlement Class ("Schwartz Declaration"). The Court further approves the claim form attached as Exhibit C to the Schwartz Declaration. The Court finds that the manner of notice proposed constitutes the best practicable notice under the circumstances as well as valid, due, and sufficient notice to all persons entitled thereto and complies fully with the requirements of the Federal Rule of Civil Procedure 23...*

- ***Gordon v. Hain Celestial Group, et al.,*** 1:16-cv-06526 (S.D.N.Y.), Judge Katherine B. Forrest on September 22, 2017:

  *The form, content, and method of dissemination of the Class Notice given to Settlement Class Members - as previously approved by the Court in its Preliminary Approval Order – were adequate and reasonable, constituted the best notice practicable under the circumstances, and satisfied the requirements of Rule 23 (c) and (e) and Due Process.*

- ***In re: Sony PS3 "Other OS" Litigation,*** 4:10-cv-01811 (N.D. Cal.), Judge Yvonne Gonzalez Rogers on June 8, 2018:

  *The Court finds that the program for disseminating notice to the Class provided for in the Settlement, and previously approved and directed by the Court (the "Notice Program"), has been implemented by the Settlement Administrator and the Parties, and that such Notice Program, including the approved forms of notice, constitutes the best notice practicable under the circumstances and fully satisfied due process, the requirements of Rule 23 of the Federal Rules of Civil Procedure and all other applicable laws.*



- ***In re: Ductile Iron Pipe Fittings ("DIPF") Indirect Purchaser Antitrust Litigation,*** 3:12-cv-00169 (D.N.J.), Judge Anne E. Thompson on June 8, 2016:

  *Notice of the Settlement Agreements to the Settlement Classes required by Rule 23(e) of the Federal Rules of Civil Procedure, including the additional forms of notice as approved by the Court, has been provided in accordance with the Court's orders granting preliminary approval of these Settlements and notice of the Settlements, and such Notice has been given in an adequate and sufficient manner; constitutes the best notice practicable under the circumstances; and satisfies Federal Rules of Civil Procedure 23(c)(2)(B) and due process.*



**LEGAL NOTICE CASES**

| |
|---|
| *Lewis v. Lytx Inc.,* Case No. 3:22-CV-00046 (S.D. Ill.) |
| *Doe, et al. v. San Diego Fertility Center Medical Group, Inc., et al.,* Case No. 37-2024-00006118 (Cal. Super. Ct.) |
| *Tapia-Rendon, et al. v. Workeasy Software, LLC,* Case No. 1:21-cv-3400 (N.D. Ill.) |
| *Meholic, et al. v. Seattle Arena Company*, Case No. 24-2-06283-1 (Wash. Super. Ct.) |
| *Cadena, et al. v. American Honda Motor Co., Inc.,* Case No. CV 18-4007 (C.D. Cal.) |
| *In Re: Hapy Bear Surgery Center Data Security Incident Litigation*, Case No. VCU307987 (Cal. Super. Ct.) |
| *Brim, et al. v. Prestige Care, Inc.*, Case No. 3:24-CV-05133 (W.D. Wash.) |
| *Doe, et al. v. Virginia Mason Medical Center, et al.*, Case No. 19-2-26674-1 SEA (Wash. Super. Ct.) |
| *Velasco v. Belmont Groceries, LLC*, Case No. 2023-CH-01077 (Cir. Ct. Cook Cnty., Ill.) |
| *Newman, et al. v. Audienceview Ticketing Corporation, et al.*, Case No. 1:23-cv-03764 (S.D.N.Y) |
| *Severa, et al. v. Solvay Specialty Polymers USA, LLC, et al.,* Case No. 1:20-CV-06906 (D.N.J.) |
| *In Re Christie's Data Breach Litigation,* Case No. 1:24-cv-4221 (S.D.N.Y.) |
| *Reardon, et al. v. Suncoast Skin Solutions, Inc.,* Case No. 23-CA-000317 (Fla. 13th Jud. Cir.) |
| *Kandel, et al. v. Dr. Dennis Gross Skincare LLC,* Case No. 1:23-cv-01967-ER (S.D.N.Y.) |
| Public School Districts' Opioid Recovery Trust |
| *Haggerty, et al. v. Consumer Safety Technology, LLC,* Case No. 22-cv-01414 (Cal. Super. Ct.) |
| *Guzman, et al. v. Polaris Industries, Inc. et al.,* Case No. 8:19-cv-01543 (C.D. Cal.) |
| *Coleman v. USAA,* Case No. 3:21-cv-217 (N.D. Cal.) |
| *Knott, et al. v. United Water System, Inc., et al.,* Case No. 6:23-CV-00401 (W.D. La.) |
| *Jweinat, et al. v. loanDepot.com, LLC,* Case No. CGC-23-605149 (Cal. Super. Ct.) |
| *Tracey, et al. v Elekta, Inc., et al.,* Case No. 1:21-cv-02851 (N.D. Ga.). |
| *Coleman, et al. v. United Services Automobile Association, et al.,* Case No. 3:21-cv-00217 (S.D. Cal.) |
| *Ralph Milan, et al. v. Clif Bar & Company,* Case No. 18-cv-02354-JD (N.D. Cal.) |
| *In re: Valsartan N-Nitrosodimethylamine (NDMA) Products Liability Litigation* (non-settlement), Case No. 19-md-2875 (D.N.J.) |
| *Ayala v. Commonwealth Health Physician Network, et al.*, Case No. 2023-cv-3008 (Lackawanna Cnty. Ct. Com. Pl.) |
| *Andrade-Heymsfield v. NextFoods, Inc.,* Case No. 21-cv-1446 (S.D. Cal.) |
| *In Re: Novant Health, Inc.,* Case No. 1:22-cv-00697 (M.D.N.C.) |
| *White v. General Motors, LLC,* Case No. 1:21-cv-00410 (D. Colo.) |
| *Gunaratna v. Dennis Gross Skincare, LLC, et al.,* Case No. 2:20-cv-02311 (C.D. Cal.) |
| *Hymes v. Earl Enterprises Holdings,* Case No. 6:19-cv-00644 (M.D. Fla.) |
| *Rivera, et al. v. Google LLC,* Case No. 19-CH-00990 (Cir. Ct. Cook Cnty., Ill.) |
| *Hezi v Celsius Holdings, Inc,* Case No. 1:21-cv-09892 (S.D.N.Y.) |
| *M.S. v. Med-Data, Inc.,* Case No. 4:22-cv-00187 (S.D. Tex.) |
| *Ictech-Bendeck, et al. v. Progressive Waste Solutions of LA, Inc, et al.,* Case No. 2:18-cv-7889 (E.D. La.) |
| *Quackenbush, et al. v American Honda Motor Company, Inc., et al.,* Case No. 3:20-cv-05599 (N.D. Cal.) |
| *McFadden v. Nationstar,* Case No. 1:20-cv-00166 (D.D.C.) |



| |
|---|
| *Sanders, et al. v. Ibex Global Solutions, Inc., et al.,* Case No. 1:22-cv-00591 (D.D.C.) |
| *In re: Cathode Ray Tube (CRT) Antitrust Litigation,* Case No. 4:07-cv-05944 (N.D. Cal.) |
| *John Doe, et al. v. Katherine Shaw Bethea Hospital and KSB Medical Group, Inc.,* Case No. 2021L00026 (15th Jud. Cir. Ct. Lee Cnty., Ill.) |
| *Gonshorowski v. Spencer Gifts, LLC,* Case No. ATL-L-000311-22 (N.J. Super. Ct.) |
| *In re Forefront Data Breach Litigation,* Case No. 1:21-cv-00887-LA (E.D. Wis.) |
| *Stewart, et al. v. Albertsons Cos., Inc.,* Case No. 16CV15125 (Mult. Cty. Cir. Ct.) |
| *Simmons v. Assistcare Home Health Services, LLC, d/b/a Preferred Home Health Care of New York/Preferred Gold,* Case No. 511490/2021 (N.Y. Sup. Ct. Kings Cnty.) |
| *Terry Fabricant v. Top Flite Financial, Inc.,* Case No. 20STCV13837 (Cal. Super.) |
| *Riley v. Centerstone of America,* Case No. 3:22-cv-00662 (M.D. Tenn.) |
| *Bae v. Pacific City Bank,* Case, No. 21STCV45922 (Cal. Super.) |
| *Tucker v. Marietta Area Health Care Inc.,* Case No. 2:22-cv-00184 (S.D. Ohio) |
| *Acaley v. Vimeo.com, Inc,* Case No. 19-CH-10873 (Cir. Ct. Cook Cnty., Ill.) |
| *Easter v Sound Generations,* Case No. 21-2-16953-4 (Wash. Super.) |
| *GPM v City of Los Angeles,* Case No. 21STCV11054 (Cal. Super.) |
| *Pagan v. Faneuil, Inc,* Case No. 3:22-cv-297 (E.D. Va.) |
| *Estes v. Dean Innovations, Inc.,* Case No. 20-CV-22946 (Mult. Cty. Cir. Ct.) |
| *Buck, et al. v. Northwest Commercial Real Estate Investments, LLC, et al.,* Case No. 21-2-03929-1 (Wash. Super.) |
| *Gilmore, et al. v. Monsanto Company, et al.,* Case No. 3:21-cv-8159 (N.D. Cal.) |
| *Copley v. Bactolac Pharmaceutical, Inc., et al.,* Case No. 2:18-cv-00575 (E.D.N.Y.) |
| *James v. CohnReznick LLP,* Case No. 1:21-cv-06544 (S.D.N.Y.) |
| *Doe v. Virginia Mason,* Case No. 19-2-26674-1 (Wash. Super.) |
| *LaPrairie v. Presidio, Inc., et al,* Case No. 1:21-cv-08795 (S.D.N.Y.) |
| *Richardson v. Overlake Hospital Medical Center, et al,* Case No. 20-2-07460-8 (Wash. Super.) |
| *Weidman, et al. v. Ford Motor Company,* Case No. 2:18-cv-12719 (E.D. Mich.) |
| *Siqueiros, et al. v. General Motors, LLC,* Case No. 3:16-cv-07244 (N.D. Cal.) |
| *Vaccaro v. Delta Drugs, II. Inc.,* Case No. 20STCV28871 (Cal. Super.) |
| *Hosch v. Drybar Holdings LLC,* Case No. 2021-CH-01976 (Cir. Ct. Cook Cnty., Ill. |
| *Davidson v. Healthgrades Operating Company, Inc.,* Case No. 21-cv-01250 (D. Colo.) |
| *Baldwin, et al. v. National Western Life Insurance Co.,* Case No. 2:21-cv-04066 (W.D. Mo.) |
| *Deien v. Seattle City Light,* Case No. 19-2-21999-8 (Wash. Super.) |
| *Blake Chapman, et al. v. voestalpine Texas, LLC, et al,* Case No. 2:17-cv-00174 (S.D. Tex.) |
| *Hanson v. Welch Foods Inc.,* Case No. 3:20-cv-02011 (N.D. Cal.) |
| *McMorrow v. Mondelez International, Inc.,* Case No. 3:17-cv-02327 (S.D. Cal.) |
| *Hadley, et al. v. Kellogg Sales Company,* Case No. 5:16-cv-04955 (N.D. Cal.) |
| *Miracle-Pond, et al. v. Shutterfly, Inc.,* Case No. 16-cv-10984 (Cir. Ct. Cook Cnty., Ill.) |
| *In Re: Sonic Corp. Customer Data Breach Litigation,* Case No. 1:17-md-02807 (N.D. Ohio) |
| *In re: Interior Molded Doors Indirect Purchaser Antitrust Litigation,* Case No. 3:18-cv-00850 (E.D. Va.) |
| *Krommenhock, et al. v. Post Foods, LLC,* Case No. 3:16-cv-04958 (N.D. Cal.) |
| *Daley, et al. v. Greystar Management Services LP, et al.,* Case No. 2:18-cv-00381 (E.D. Wash.) |



| |
|---|
| *Brianna Morris v. FPI Management Inc.,* Case No. 2:19-cv-0128 (E.D. Wash.) |
| *Kirilose Mansour v. Bumble Trading Inc.,* Case No. RIC1810011 (Cal. Super.) |
| *Clopp et. al. v. Pacific Market Research, LLC et. al.,* Case No. 21-2-08738-4 (Wash. Super.) |
| *Lisa T. Leblanc, et al. v. Texas Brine Company, LLC, et al.,* Case No. 58410 (E.D. La.) |
| *Jackson-Battle v. Navicent Health, Inc.,* Case No. 2020-cv-072287 (Ga Super.) |
| *Fabricant v. Amerisave Mortgage Corp,* Case No. 2:19-cv-04659 (C.D. Cal.) |
| *Jammeh v. HNN Assoc.,* Case No. 2:19-cv-00620 (W.D. Wash.) |
| *Farruggio, et al. v. 918 James Receiver, LLC, et al.,* Case No. 3831/2017 (N.Y. Sup Ct) |
| *Winters, et al. v. Two Towns Ciderhouse Inc.,* Case No. 3:20-cv-00468 (S.D. Cal.) |
| *Siddle, et al. v. The Duracell Company,* et al, Case No. 4:19-cv-00568 (N.D. Cal.) |
| *Lisa Jones, et al. v. Monsanto Company,* Case No. 4:19-cv-00102 (W.D. Mo.) |
| *Makaron v. Enagic USA, Inc.,* Case No. 2:15-cv-05145 (C.D. Cal.) |
| *John Karpilovsky, et al. v. All Web Leads, Inc.,* Case No. 1:17-cv-01307 (N.D. Ill.) |
| *Hughes, et al. v. AutoZone Parts Inc., et al.,* Case No. BC631080 (Cal. Super.) |
| *Secaucus Investors LLC and Health Care Grower, LLC v. Harmoney Foundation of New Jersey, Inc., et al.,* Case No. BER-C-275-21 (N.J. Sup Ct.) |
| *Miller, et al. v. P.S.C., Inc. d/b/a Puget Sound Collections,* Case No. 3:17-cv-0586 (W.D. Wash.) |
| *Aaron Van Fleet, et al. v. Trion Worlds Inc.,* Case No. 535340 (Cal. Super.) |
| *Wilmington Trust TCPA (Snyder, et al. v. U.S. Bank, N.A., et al.),* Case No. 1:16-cv-11675 (N.D. Ill.) |
| *Deutsche Bank National Trust TCPA (Snyder, et al. v. U.S. Bank, N.A., et al.),* Case No. 1:16-cv-11675 (N.D. Ill.) |
| *Adriana Garcia, et al. v. Sun West Mortgage Company, Inc.,* Case No. BC652939 (Cal. Super.) |
| *Cajuns for Clean Water, LLC, et al. v. Cecilia Water Corporation, et al.,* Case No. 82253 (La. Dist.) |
| *In re: Sony PS3 "Other OS" Litigation,* Case No. 4:10-cv-01811 (N.D. Cal.) |
| *In re: Ductile Iron Pipe Fittings Indirect Purchaser Antitrust Litigation,* Case No. 3:12-cv-00169 (D.N.J.) |
| *In re: Ductile Iron Pipe Fittings Direct Purchaser Antitrust Litigation,* Case No. 3:12-cv-00711 (D.N.J.) |
| *Hartig Drug Company Inc., v. Senju Pharmaceutical et al.,* Case No. 1:14-cv-00719 (D. Del.) |
| *Gordon v. The Hain Celestial Group, et al.,* Case No. 1:16-cv-06526 (S.D.N.Y.) |
| *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico – Economic and Property Damages Settlement,* MDL No. 2179 (E.D. La.) |
| *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico –Medical Benefits Settlement,* MDL No. 2179 (E.D. La.) |
| *Byrner et al. v. Oregon One, Inc.,* Case No. 3:16-cv-01910 (D. Or.) |
| *In re: Google Inc. Cookie Placement Consumer Privacy Litigation,* MDL No. 2358 (D. Del.) |
| *In re: Pool Products Distribution Market Antitrust Litigation,* MDL No. 2128 (E.D. La.) |
| *In re: Polyurethane Foam Antitrust Litigation,* MDL No. 2196 (N.D. Ohio) |
| *In re: Processed Egg Products Antitrust Litigation,* MDL No. 2002 (E.D. Pa.) |
| *In re: The Flintkote Company and Flintkote Mines Limited,* Case No. 1:04-bk-11300 (Bankr. D. Del.) |
| *In re: Prograf (Tacrolimus) Antitrust Litigation,* MDL No. 2242 (D. Mass.) |
| *Markos v. Wells Fargo Bank, N.A.,* Case No. 1:15-cv-01156 (N.D. Ga.) |
| *Cross v. Wells Fargo Bank, N.A.,* Case No. 1:15-cv-01270 (N.D. Ga.) |
| *Ferrick v. Spotify USA Inc.,* Case No. 1:16-cv-08412 (S.D.N.Y.) |



| |
|---|
| *In re: Parmalat Securities Litigation*, MDL No. 1653 (S.D.N.Y.) |
| *Smith v. Floor and Décor Outlets of America, Inc.*, Case No. 1:15-cv-04316 (N.D. Ga.) |
| *Schwartz v. Intimacy in New York, LLC*, Case No. 1:13-cv-05735 (S.D.N.Y.) |
| *In re: TRS Recovery Services, Inc., Fair Debt Collection Practices Act Litigation*, MDL No. 2426 (D. Me.) |
| *Young v. Wells Fargo & Co*, Case No. 4:08-cv-00507 (S.D. Iowa) |
| *In re: Credit Default Swaps Antitrust Litigation*, MDL No. 2476 (S.D.N.Y.) |
| *Anthony Frank Lasseter et al. v. Rite-Aid*, Case No. 09-cv-2013-900031 (Ala. Cir. Ct.) |
| *Khoday v. Symantec Corp.*, Case No. 0:11-cv-00180 (D. Minn.) |
| *MacKinnon, Jr v. IMVU*, Case No. 1-11-cv-193767 (Cal. Super.) |
| *Ebarle, et al. v. LifeLock, Inc.*, Case No. 3:15-cv-00258 (N.D. Cal.) |
| *Sanchez v. Kambousi Restaurant Partners ("Royal Coach Diner")*, Case No. 1:15-cv-05880 (S.D.N.Y.) |
| *Schwartz v. Avis Rent A Car System*, Case No. 2:11-cv-04052 (D.N.J.) |
| *Klein v. Budget Rent A Car System*, Case No. 2:12-cv-07300 (D.N.J.) |
| *Pietrantonio v. Kmart Corporation*, Case No. 15-5292 (Mass. Cmmw.) |
| *Cox, et al. v. Community Loans of America, Inc., et al.*, Case No. 4:11-cv-00177 (M.D. Ga.) |
| *Vodenichar. et al. v. Halcón Energy Properties, Inc., et al.*, Case No. 2013-512 (Pa. Com. Pleas) |
| *State of Oregon, ex. rel. Ellen F. Rosenblum, Attorney General v. AU Optronics Corporation, et al.*, Case No. 1208 10246 (Or. Cir.) |
| *Barr v. The Harvard Drug Group, LLC, d/b/a Expert-Med*, Case No. 0:13-cv-62019 (S.D. Fla.) |
| *Splater, et al. v. Thermal Ease Hydronic Systems, Inc., et al.*, Case No. 03-2-33553-3 (Wash. Super.) |
| *Phillips v. Bank of America*, Case No. 15-cv-00598 (Cal. Super.) |
| *Ziwczyn v. Regions Bank and American Security Insurance Co.*, Case No. 1:15-cv-24558 (S.D. Fla) |
| *Dorado vs. Bank of America, N.A.*, Case No. 1:16-cv-21147 (S.D. Fla) |
| *Glass v. Black Warrior Electric*, Case No. cv-2014-900163 (Ala. Cir.) |
| *Beck v. Harbor Freight Tools USA, Inc.*, Case No. 15-cv-00598 (Ohio Com. Pleas) |
| *Ligon v. City of New York, et al.*, Case No. 12-cv-2274 (S.D.N.Y.) |
| *Abdellahi, et al., vs. River Metals Recycling, LLC*, Case No. 13-CI00095 (Ky. Cir.) |
| *Alegre v. XPO Last Mile, Inc.*, Case No. 2:15-cv-02342 (D.N.J.) |
| *Jack Leach, et al. v. E.I. du Pont de Nemours and Co.*, Case No. 01-C-608 (W. Va. Cir.) |
| *Hayes, et al. v. Citizens Financial Group Inc., et al.*, Case No. 1:16-cv-10671 (D. Mass.) |
| *In re: Foreign Exchange Benchmark Rates Antitrust Litigation*, Case No. 1:13-cv-07789 (S.D.N.Y.) |
| *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, Case No. 2:13-cv-05693 (C.D. Cal.) |
| *Cozzitorto vs. American Automobile Association of Northern California, Nevada & Utah*, Case No. C13-02656 (Cal. Super.) |
| *Filannino-Restifo, et al. v. TD Bank, N.A.*, Case No. 0:18-cv-01159 (D.N.J.) |
| *United States v. Takata Corporation*, Case No. 2:16-cv-20810 (E.D. Mich.) |
| *Free Range Content, Inc. v. Google Inc.*, Case No. 5:14-cv-02329 (N.D. Cal.) |
| *Bautista v. Valero Marketing and Supply Company*, Case No. 3:15-cv-05557 (N.D. Cal.) |
| *Devin Forbes and Steve Lagace -and- Toyota Canada Inc.*, Case No. cv-16-70667 (Ont. Super. Ct.) |
| *Thierry Muraton -and- Toyota Canada Inc.*, Case No. 500-06-000825-162 (Que. Super. Ct.) |
| *In re: Residential Schools Class Action Litigation*, Case No. 00-cv-192059 (Ont. Super. Ct.) |
| *In re: Tricor Antitrust Litigation*, Case No. 05-340 (D. Del.) |



| *Masztal v. City of Miami,* Case No. 3D06-1259 (Fla. Dist. App.) |
|---|
| *In re: Tribune Company, et al.,* Case No. 08-13141 (D. Del.) |
| *Marian Perez v. Tween Brands Inc.,* Case No. 14-cv-001119 (Ohio Com. Pleas) |
| *Ferguson v. Safeco,* Case No. DV 04-628B (Mont. Dist.) |
| *Williams v. Duke Energy,* Case No. 1:08-cv-00046 (S.D. Ohio) |
| *Boone v. City of Philadelphia,* Case No. 2:05-cv-01851 (E.D. Pa.) |
| *In re: Lehman Brothers Inc.,* Case No. 08-13555, 08-01420 (Bankr. S.D.N.Y.) |
| *In re: Department of Veterans Affairs (VA) Data Theft Litigation,* MDL No. 1796 (D.D.C.) |
| *In re: Countrywide Customer Data Breach Litigation,* MDL No. 1998 (W.D. Ky.) |
| *In re: Checking Account Overdraft Litigation,* MDL No. 2036 (S.D. Fla.) |
| *In re: Heartland Data Security Breach Litigation,* MDL No. 2046 (S.D. Tex.) |
| *Schulte v. Fifth Third Bank,* Case No. 1:09-cv-06655 (N.D. Ill.) |
| *Mathena v. Webster Bank, N.A.,* Case No. 3:10-cv-01448 (D. Conn.) |
| *Delandro v. County of Allegheny,* Case No. 2:06-cv-00927 (W.D. Pa.) |
| *Trombley v. National City Bank,* Case No. 1:10-cv-00232 (D.D.C.) |
| *Fontaine v. Attorney General of Canada,* Case No. 00-cv-192059 CP (Ont. Super. Ct.) |
| *Marolda v. Symantec Corp.,* Case No. 3:08-cv-05701 (N.D. Cal.) |



# Exhibit C-2



# Class & Mass Action Settlement Administration

## Our Approach

EisnerAmper provides pre-settlement consulting and post-settlement administration services in connection with lawsuits pending in state and federal courts nationwide. Since 1999, EisnerAmper professionals have processed more than $14 billion dollars in settlement claims. Our innovative team successfully administers a wide variety of settlements, and our industry-leading technology enables us to develop customizable administration solutions for class and mass action litigations.

EisnerAmper professionals have processed more than $14 billion dollars in settlement claims.

## Sample Case Experience*



### Environmental/Toxic Torts

- In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico (MDL 2179)
- In re: FEMA Trailer Formaldehyde Products Liability Litigation (MDL 1873)
- Sanchez et al v. Texas Brine, LLC et al.
- Burmaster et al. v. Plaquemines Parish Government, et al.
- Cajuns for Clean Water, LLC et al. v. Cecilia Water Corporation, et al.
- Cooper, et al. v. Louisiana Department of Public Works
- Maturin v. Bayou Teche Water Works
- Chevron Richmond Refinery Fire Settlement
- Chapman et al. v. voestalpine Texas LLC, et al.



### Consumer

- Jones et al. v. Monsanto Co.
- Hadley, et al. v. Kellogg Sales Co.
- McMorrow, et al. v. Mondelez International, Inc
- Krommenhock, et al. v. Post Foods, LLC
- Hanson v. Welch Foods Inc.
- Siddle et al. v. The Duracell Co. et al.
- Copley, et al. v. Bactolac Pharmaceutical, Inc.
- Hughes et al. v. AutoZone Parts Inc. et al.
- Winters v. Two Towns Ciderhouse, Inc.
- Burford et al. v. Cargill, Incorporated
- Fabricant v. AmeriSave Mortgage Corp. (TCPA)
- Makaron v. Enagic USA, Inc. (TCPA)
- Prescod et al. v. Celsius Holdings, Inc.
- Gilmore v. Monsanto Co.



### Antitrust

- In re: Cathode Ray Tube (CRT) Antitrust Litigation (MDL 1917)[4]
- In re: Interior Molded Doors Antitrust Litigation (Indirect)



### Mass Torts

- In re: E.I. du Pont de Nemours and Company C8 Personal Injury Litigation (MDL 2433)[1]
- In re: Testosterone Replacement Therapy Products Liability Litigation (MDL 2545)[1]
- In re: Paraquat Products Liability Litigation (MDL 3004)[1]
- In re: Paragard Products Liability Litigation (MDL 2974)
- In re: Roundup Products Liability Litigation (MDL 2741)[2]
- Essure Product Liability Settlement[3]
- Porter Ranch (JCCP 4861)



### Data Breach/Privacy

- Miracle-Pond, et al. v. Shutterfly
- Baldwin et al. v. National Western Life Insurance Co.
- Jackson-Battle, et al. v. Navicent Health, Inc.
- Bailey, et al. v. Grays Harbor County Public Hospital No. 2
- In re: Forefront Data Breach Litigation
- Easter et al. v. Sound Generations
- Rivera, et al. v. Google LLC
- Acaley v. Vimeo, Inc.



### Mass Arbitration

- T-Mobile
- Uber
- Postmates
- Instacart
- Intuit



### Other Notable Cases

- Brown, et al. v. State of New Jersey DOC (Civil Rights)
- Slade v. Progressive (Insurance)

*Work performed as Postlethwaite & Netterville, APAC (P&N)
[1]Services provided in cooperation with the Court-Appointed Special Master
[2]Appointed As Common Benefit Trustee
[3]Inventory Settlement

"EisnerAmper" is the brand name under which EisnerAmper LLP and Eisner Advisory Group LLC and its subsidiary entities provide professional services. EisnerAmper LLP and Eisner Advisory Group LLC practice as an alternative practice structure in accordance with the AICPA Code of Professional Conduct and applicable law, regulations and professional standards. EisnerAmper LLP is a licensed independent CPA firm that provides attest services to its clients, and Eisner Advisory Group LLC and its subsidiary entities provide tax and business consulting services to their clients. Eisner Advisory Group LLC and its subsidiary entities are not licensed CPA firms. The entities falling under the EisnerAmper brand are independently owned and are not liable for the services provided by any other entity providing services under the EisnerAmper brand. Our use of the terms "our firm" and "we" and "us" and terms of similar import, denote the alternative practice structure conducted by EisnerAmper LLP and Eisner Advisory Group LLC.



# Exhibit C-3

Flagstar Settlement Administrator
c/o Eisner Advisory Group LLC
P.O. Box 4427
Baton Rouge, LA 70821

FIRST-CLASS MAIL
U.S. POSTAGE PAID
CITY, STATE ZIP
PERMIT NO. XXXX

<<Barcode>>

Class Member ID: <<Refnum>>

<<FirstName>> <<LastName>>
<<BusinessName>>
<<Address>>
<<Address2>>
<<City>>, <<ST>> <<Zip>>-<<zip4>>

## NOTICE OF CLASS ACTION SETTLEMENT: FLAGSTAR BANK

If your personally identifying information ("PII") was impacted by either or both of the two Data Breaches at Flagstar Bank in 2021, you are entitled to submit a claim for monetary compensation under a class action settlement.

**www.[website].com**

## WHO IS A CLASS MEMBER?

This notice is about *Stacey, et al. v. Flagstar Bank, N.A.*, Case No. 2:21-cv-10657-MFL-DRG, the lawsuit against Flagstar Bank, N.A. on behalf of approximately 2,187,170 consumers whose personal information was impacted by one or both of the Data Breaches at Flagstar in 2021.

If you received this notice, then Flagstar determined that your information was accessed during either or both of the Data Breaches, and you are a "Class Member." Recently, Flagstar has agreed to settle the lawsuit and Class Members are now entitled to get cash payments.

## WHAT ARE THE SETTLEMENT BENEFITS AND TERMS?

Flagstar will pay $31,500,000 into a Settlement Fund—which will be distributed to Class Members who submit valid claims (after deducting attorneys' fees and expenses, service awards, and settlement Administrative Costs). All Class Members may submit Claims to get cash payments:

- ***First***, Class Members who suffered Documented Monetary Losses because of the Data Breaches may claim up to $25,000 (but Class Members must provide documentation of their losses).
- ***Second***, Class Members who lived in California at the time of the Data Breaches may get a statutory payment of up to $100.
- ***Third***, Class Members may claim a Residual Cash Payment estimated at $60, but of up to $599 (the value will be calculated after deducting payments for valid claims, settlement administrative costs and expenses, service awards, and attorneys' fees and expenses).
- ***Fourth,*** Class Members may also submit a claim for three (3) years of three-bureau Credit Monitoring Services**.**

More information about the types of claims and how to file them are available on the Settlement Website, **www.[website].com**. Remaining Settlement Fund money after claims are paid will go to a Court-approved charitable organization.

## WHAT ARE YOUR RIGHTS AND OPTIONS?

**Submit a Claim Form**. To receive a cash payment, you must submit a Claim Form by mail or online at www.[website].com. Forms must be postmarked or submitted online by _____, 2025..

**Opt Out**. You may opt-out from the Settlement and keep your ability to sue Flagstar on your own by mailing a written request for exclusion to the Settlement Administrator postmarked no later than _____, **2025**. If you do not opt-out, then you will be bound by the Settlement and give up your right to sue Flagstar about the Data Breaches.

**Object**. If you do not exclude yourself, you may object to the Settlement. Objections must be signed, postmarked no later than _____, **2025**, and provide the reasons for the objection. Visit **www.[website].com** for details.

**Do Nothing**. If you do nothing, you will ***not*** receive money and will lose the right to sue Flagstar about the Data Breaches. You will also be bound by the Court's decision.

**Attend the Final Approval Hearing**. The Court will hold a **Final Approval Hearing at _____ m. on _____, 2026** to determine if the Settlement is fair, reasonable, and adequate. All persons who timely object to the Settlement may appear at the Final Approval Hearing.

**Do I have an attorney?** Yes, the Court appointed John Yanchunis of Morgan & Morgan Complex Litigation Group and Norman Siegel of Stueve Siegel Hanson LLP, as Class Counsel to represent the entire Class.

**Do I have to pay for the attorneys?** No. The attorneys' fees and expenses will be paid exclusively from the Settlement Fund (subject to approval by the Court). The attorneys' fees will be in an amount of up to one third of the Settlement Fund ($10,500,000), plus reasonable litigation costs and expenses of up to $500,000. The request for Attorneys' Fees and Expenses will be on the Settlement Website after it is filed with the Court.

**How much are the Service Awards**? The named Plaintiffs, (also called the Settlement Class Representatives) will seek Service Awards of $2,500 for their efforts in leading this case.

**More Information?** Visit www.[website].com for more information.

**This Notice is a summary of the proposed settlement.**

BRM
Postage

Flagstar Settlement
Administrator
c/o Eisner Advisory Group LLC
P.O. Box 4427
Baton Rouge, LA 70821

<<Refnum>>

<<Class Member ID>>
<<Refnum>>

## CLAIM FORM

**Claims must be postmarked no later than <u>_____</u>, 2025. You may also submit a Claim Form online no later than <u>_____</u>, 2025.**

FIRST NAME: _____ LAST NAME: _____

ADDRESS: _____ CITY _____ STATE _____ ZIP CODE _____

<u>**Monetary Compensation**</u> - You can choose one or all of the following benefits. If you want to submit a claim for Documented Monetary Losses, visit **www.<mark>website</mark>.com** to submit your Claim Form and supporting documentation online or download a Claim Form to complete and return by mail.

1. **Residual Cash Payment of up to $599**: Do you want a *pro rata* cash payment estimated at $60 but up to $599? (check the box)    **Yes** ☐    ☐ **No**
   If you are a Class Member, you may receive a cash payment estimated at $60 (this value may be increased or decreased after payments for valid claims, settlement administrative costs, service awards, and attorneys' fees and expenses are deducted from the Settlement Fund).

2. **California Statutory Payment of $100**: Would you like to receive a *pro rata* California Statutory Payment estimated at $100? (check the box) ☐ **Yes**  ☐ **No**
   You are eligible to receive this payment *only if* you lived in California when the Data Breaches happened (January 2021 to December 2021).  This payment may decrease after payments for valid claims, settlement administration costs and expenses, service awards, and attorneys' fees and expenses are deducted from the Settlement Fund.

   4. **Credit Monitoring Services**: Would you like to receive three (3) years of three-bureau identity theft protection and Credit Monitoring Services? (check the box) ☐ **Yes**      ☐ **No**
   If selected, you must provide your email address here:
   Email Address:_____

**Select one of the following payment methods:** ☐**PayPal**   ☐ **Venmo** ☐ **Zelle** ☐**Virtual Prepaid Card**    ☐ **Check**

**Please provide the email address or phone number associated with your PayPal, Venmo or Zelle account, or email address for the Virtual Prepaid card:**
**Email Address:** _____

**By signing my name below,** I certify that I am eligible to make a claim in this settlement and that the information provided in this Claim Form is true.

_____ **(signature)**

# Exhibit C-4

| From: | Claims Administrator, Angus, et al. v. Flagstar Bank, N.A. |
| To: | <<Email Address>> |
| Subject: | Notice Class Action Settlement – Flagstar Data Breach |

---

**COURT APPROVED LEGAL NOTICE**
*Angus, et al. v. Flagstar Bank, N.A.,*
Case No. 2:21-cv-10657-MFL-DRG

**To all individuals who reside in the United States whose personally identifying information ("PII") was impacted by either or both of the two Data Breaches Flagstar experienced in 2021, you are eligible to receive a Settlement Benefit from a class action settlement.**

**Name:** <First Name> <Last Name>
**Class Member ID: <<RefNum>>**

**Why am I receiving this Email Notice?** You are receiving this Email Notice because the records of Flagstar Bank, N.A. ("Flagstar" or "Defendant") show that your personally identifying information ("PII") was impacted by one or both of two cybersecurity events believed to have occurred in January 2021 and December 2021, during which threat actors gained access to Flagstar's systems without authorization and acquired certain data ("the Data Breaches"). Flagstar's investigations of the Data Breaches determined that the threat actor accessed data pertaining to certain of Flagstar's current and former employees and customers, including name and Social Security Number, account numbers, and/or similar information. You are therefore likely a Settlement Class Member eligible to receive benefits under this settlement.

**Who is a Settlement Class Member?** You are affected by the settlement and potentially a Settlement Class Member if you are an individual who resides in the United States whose personally identifying information ("PII") was impacted by either or both of the two Data Breaches Flagstar experienced in 2021. The Settlement Class includes (i) a Nationwide Settlement Class, representing approximately 2,187,170 individuals impacted by the Data Breaches and (ii) a California Settlement Class, representing approximately 364,000 California Settlement Class members.

**What does the settlement provide?** Flagstar agrees to deposit into a Settlement Fund, $31,500,000 for the benefit of approximately 2,187,170 Settlement Class Members, including (i) reimbursement for Documented Monetary Losses of up to $25,000; (ii) three years of Credit Monitoring services; (iii) California Statutory Payments of up to $100; and (iv) Residual Cash Payments estimated at $60, but of up to $599. Subject to Court approval, the Settlement Fund will also pay for a notice and administration program, service awards to the Settlement Class Representatives, and attorneys' fees and expenses. Please visit **[here]** for a full description of the Settlement Class Member Benefits and documentation requirements.

**How do I submit a Claim Form for a benefit?** You must submit a Claim Form, available at **[here]** to be eligible to receive a benefit. Your completed Claim Form must be submitted online or mailed to the Claims Administrator at Flagstar Settlement Administrator, c/o Eisner Advisory Group LLC, P.O. Box 4427, Baton Rouge, LA 70821, and **postmarked, by [[DATE]].** You will need the Class Member ID located at the top of this email to submit a Settlement Claim.

**What are my other options?** If you **Do Nothing,** you will be legally bound by the terms of the settlement, and you will release your claims against Defendant and other Related Entities as defined in the Settlement Agreement. You may **Opt-Out** of the settlement by **[[Date]]** or file an **Objection** to the settlement by **[[Date]]**. Please visit **www.[Website].com** for more information on how to submit a request to opt-out and exclude yourself from or object to the settlement.

**Do I have a lawyer in this case?** Yes, the Court appointed John Yanchunis of Morgan & Morgan Complex Litigation Group and Norman Siegel of Stueve Siegel Hanson LLP to represent you and other Settlement Class Members. You will not be charged directly for these lawyers; instead, the attorneys' fees, not to exceed one third of the Settlement Fund or $10,500,000, plus reasonable litigation costs and expenses of up to $500,000, and service awards will be paid from the Settlement Fund. If you want to be represented by your own lawyer, you may hire one at your own expense.

**The Court's Final Fairness Hearing.** The Court is scheduled to hold a Final Fairness Hearing on **[[Date]], at [[Time]]**, to consider whether to approve the settlement, hear objections, determine if the settlement is fair, and consider Proposed Class Counsel's request for attorneys' fees not to exceed one third of the Settlement Fund or $10,500,000, plus reasonable litigation costs and expenses of up to $500,000, and service awards not to exceed $2,500 per Settlement Class Representative. You may appear at the hearing, either yourself or through an attorney hired by you, but you don't have to.

This Email Notice is only a summary. For more information or to change your address, visit **www.[Website].com** or call toll-free **[[Number]].**

### PLEASE DO NOT CONTACT THE COURT, CLERK OF THE COURT OR CLASS COUNSEL FOR INFORMATION ABOUT THE CLASS ACTION SETTLEMENT

Please monitor www.[Website].com/ for updates or call [[Number]].

This email was sent to you because Flagstar's records indicate you are a Settlement Class Member.| Unsubscribe

Please do not reply to this email, it is sent from an unmonitored mailbox.

# Exhibit C-5

**This is a Court approved Legal Notice. This is not a solicitation from a lawyer. Please read this notice carefully. Your legal rights will be affected, and you have a choice to make at this time.**

### NOTICE OF PROPOSED CLASS ACTION SETTLEMENT
*Angus et al. v. Flagstar Bank, N.A.*, Case No. 2:21-cv-10657-MFL-DRG
United States District Court, Eastern District of Michigan

---

# FLAGSTAR DATA BREACH CLASS ACTION SETTLEMENT

---

**If Your Personal Information Was Impacted in the 2021 Flagstar Data Breaches,
You May Be Eligible for Benefits from a Class Action Settlement**

A federal judge has given preliminary approval to a class action settlement in a case against Flagstar Bank, N.A. ("Flagstar") relating to two data breaches that occurred at Flagstar in January 2021 and December 2021 (the "Data Breaches"). The Data Breaches impacted the personal information of approximately 2,187,170 individuals in the United States, including 364,000 California residents.

The proposed settlement requires Flagstar to establish a Settlement Fund of $31,500,000 for the benefit of Settlement Class Members.

You are a Settlement Class Member if your personal information was impacted by either or both of the Data Breaches and you may claim one, two, three, or all four of the following settlement benefits:

- **Cash Payment for Documented Monetary Losses, up to $25,000 per individual**: All Settlement Class Members may submit a claim for reimbursement of out-of-pocket losses fairly traceable to the Data Breaches, including costs of credit monitoring and placing or removing a credit freeze on a credit file, up to $25,000 per person.

- **Residual Cash Payment, up to $599**: All Settlement Class Members may submit a claim for a cash payment currently estimated to be $60, and in no event more than $599. The residual cash payment may be claimed in addition to the cash payment for Documented Monetary Losses (the exact value of the cash payment will be calculated after deducting payments for valid claims, settlement administrative costs, service awards, and attorneys' fees and expenses).

- **Credit Monitoring Services**: All Settlement Class Members may submit a claim for three (3) years of three-bureau identity theft protection and Credit Monitoring Services.

- **California Statutory Payment, up to $100**: Settlement Class Members who resided in California at the time of the Data Breaches may also submit a claim to receive a statutory cash payment of up to $100.

**Settlement Class Members must submit a Claim Form by [DEADLINE] to be eligible for these settlement benefits.** The easiest way to submit a Claim Form is online at [WEBSITE]. If you are unsure of whether you are eligible for benefits, visit the website or call [NUMBER].

Questions? Go to [WEBSITE] or call [PHONE NUMBER]

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | | DEADLINE |
|---|---|---|
| **Submit a Claim Form** | To be eligible to receive benefits from this settlement, you **must** submit a Claim Form no later than **[DEADLINE]**.<br><br>For more information, *see* Questions 10-13. | Submitted or Postmarked on or Before _____, 2025 |
| **Exclude Yourself By Opting Out of the Settlement** | You can choose to opt out of the settlement and receive no benefits.<br><br>This is the only option that allows you to keep your right to bring any other lawsuit against Defendant for the same claims if you are a Class Member.<br><br>For more information, *see* Questions 15-17. | Submitted or Postmarked on or Before _____, 2025 |
| **Object to the Settlement and/or Attend the Final Approval Hearing** | If you do not opt out of the settlement, you may object to it writing to the Court about why you agree or disagree with the settlement. The Court cannot order a different settlement. You can also ask to speak to the Court at the Final Approval Hearing on **[DATE]**, **2026** about the fairness of the settlement, with or without your own attorney.<br><br>For more information, *see* Questions 18-19. | Received on or Before _____, 2025 |
| **Do Nothing** | You are automatically part of the settlement (unless you opt out). If you do nothing, you will not get benefits from this settlement, and you will give up the right to sue, continue to sue, or be part of another lawsuit against Flagstar related to the legal claims resolved by this settlement.<br><br>For more information, *see* Question 25. | No Deadline |

Questions? Go to [WEBSITE] or call [PHONE NUMBER]

## WHAT THIS NOTICE CONTAINS

**Basic Information**...............................................................................................#

**Who is in the Settlement?**...................................................................................#

**The Settlement Benefits—What You Get if You Qualify**...................................#

**How Do You Submit a Claim?**...........................................................................#

**What Does Flagstar Get?**...................................................................................#

**Excluding Yourself from the Settlement**..........................................................#

**Objecting to the Settlement**..............................................................................#

**The Lawyers Representing You**.........................................................................#

**The Court's Final Approval Hearing**...............................................................#

**If You Do Nothing**..............................................................................................#

**Getting More Information**..................................................................................#

## BASIC INFORMATION

| 1. | **Why did I get this Notice?** |
|---|---|

A federal court authorized this Notice because you have a right to know about the proposed settlement of this class action lawsuit, and about your options, before the Court decides whether to approve the settlement. This Notice explains the lawsuit, the settlement, your legal rights, what benefits are available, and how to get them.

For information on how to determine if you are a Settlement Class Member, and therefore eligible for benefits under this settlement, see Questions 5-6.

| 2. | **What is this class action lawsuit about?** |
|---|---|

On March 5, 2021, Flagstar announced that it had been the victim of cyberattack in January 2021 in which cyber criminals infiltrated a file sharing platform used by Flagstar and accessed the personally identifiable information ("PII") of approximately 1.47 million individuals in the United States. On June 17, 2022, Flagstar announced that it had been the victim of a separate cyberattack in December 2021 in which cyber criminals infiltrated Flagstar's network and accessed the PII of approximately 1.58 million individuals in the United States. Together, these two cyberattacks (the "Data Breaches") impacted the personal information of approximately 2,187,170 U.S. consumers, including approximately 364,000 California residents.

This lawsuit was brought on behalf of consumers whose personal information was impacted as a result of the Data Breaches. Judge Matthew F. Leitman of the United States District Court for the

Questions? Go to [WEBSITE] or call [PHONE NUMBER]

3

Eastern District of Michigan is overseeing this lawsuit, which is known as *Angus, et al. v. Flagstar Bank, N.A*, Case No. 2:21-cv-10657-MFL-DRG. The consumers who brought this lawsuit are called "Plaintiffs" and the company they sued, Flagstar, is called "Defendant." Plaintiffs claim that Flagstar did not adequately protect consumers' personal information and that Flagstar delayed in providing notice of the Data Breaches.

The most recent version of this lawsuit, which describes the specific legal claims alleged by Plaintiffs, is available at [WEBSITE]. Flagstar denies these claims and says it did not do anything wrong. No court or other judicial entity has made any judgment or other determination that Flagstar has any liability for these claims or did anything wrong.

| 3. | **Why is this lawsuit a class action?** |
|---|---|

In a class action, one or more people called "class representatives" sue on behalf of themselves and all people who have similar claims. Together, all these people are called a "class," and the individuals are called "class members." Because this is a class action, even persons who did not file their own lawsuit can obtain relief from harm that may have been caused by the Data Breaches, except for those who exclude themselves from the class.

| 4. | **Why is there a settlement?** |
|---|---|

The Court has not decided in favor of Plaintiffs or Flagstar. Instead, both sides agreed to a settlement after a mediation process overseen by a retired federal judge. The settlement avoids the cost and uncertainty of a trial and related appeals, while more quickly providing benefits to Settlement Class Members. The Settlement Class Representatives appointed to represent the Class and the attorneys for the settlement class ("Class Counsel," *see* Question 20) believe the settlement is in the best interest of all Settlement Class Members.

## WHO IS PART OF THE SETTLEMENT?

| 5. | **How do I know if I am part of the settlement?** |
|---|---|

Only members of the Settlement Class are eligible to receive benefits under the settlement. You are a Settlement Class Member if you are among the approximately 2,187,170 U.S. consumers identified by Flagstar whose personal information was impacted by the Data Breaches.

Specifically excluded from the Settlement Class are:

- Flagstar, any entity in which Flagstar has a controlling interest, and of Flagstar's officers, directors, legal representatives, Successors, Subsidiaries, and assigns;

- Any judge, justice, or judicial officer presiding over the Action and the members of their immediate families and judicial staff; and
- Any Settlement Class Member who timely and validly opts out of the Settlement Class (*see* Question 17).

| 6. | **What if I am not sure whether I am a Settlement Class Member?** |
|---|---|

Notice was sent via electronic and/or direct mail to all Settlement Class Members.

If you are not sure whether you are included in the settlement, you may call the Settlement Administrator at [PHONE NUMBER] with questions. You may also write with questions to:

Questions? Go to [WEBSITE] or call [PHONE NUMBER]

4

Flagstar Settlement Administrator
c/o Eisner Advisory Group LLC
P.O. Box 4427
Baton Rouge, LA 70821
[**WEBSITE**]

## THE SETTLEMENT BENEFITS – WHAT YOU RECIEVE IF YOU QUALIFY

### 7.   What does the settlement provide?

Flagstar will pay $31,500,000 into a Settlement Fund. The Settlement Fund will be used for the benefit of approximately 2,187,170 Settlement Class Members to:

- Make cash payments for Documented Monetary Losses of up to $25,000;

- Purchase Credit Monitoring Services;

- Make Residual Cash Payments estimated at $60, but up to $599 (subject to adjustment as set forth below);

- Make California Statutory Payments of up to $100;

- Pay the costs of notifying Settlement Class Members and administering the settlement;

- Pay service awards to the Settlement Class Representatives, as approved by the Court;

- Pay attorneys' fees, costs, and expenses, as approved by the Court (*see* Question 21).

The Residual Cash Payment amount shall be determined *pro rata* based on the amount remaining in the Settlement Fund following payment of the attorneys' fees and expenses, service awards, administrative costs, credit monitoring costs, claims for reimbursement of Documented Monetary Losses, and claims for California Statutory Payments.

The other settlement benefits are also subject to *pro rata* reduction as needed in the event that the total claims exceed $31,500,000. Specifically, in the event that the aggregate amount of payments for unreimbursed Documented Monetary Losses and California Statutory Payments exceeds the remaining amount in the Settlement Fund after payment of attorneys' fees and expenses, service awards, administrative costs, and credit monitoring services, then each Settlement Class Member's Claim for Documented Monetary Losses and California Statutory Payments shall be proportionately reduced and there will be no Residual Cash Payment.

### 8.   What payments are available under the settlement?

Settlement Class Members who submit a claim are eligible to receive one or more of the following payments:

**(1)    Settlement Benefit—Reimbursement for Documented Monetary Losses (up to $25,000)**. If you spent money to deal with fraud or identity theft that was fairly traceable to the Data Breaches, or to protect yourself from future harm, then you can submit a claim for reimbursement up

Questions? Go to [**WEBSITE**] or call [**PHONE NUMBER**]

5

to $25,000. Monetary Losses that are eligible for reimbursement may include, without limitation, the following:

- Unreimbursed losses relating to fraud or identity theft;

- Professional fees including attorneys' fees, accountants' fees, and fees for credit repair services;

- Costs associated with freezing or unfreezing credit with any credit reporting agency;

- Credit monitoring costs that were incurred on or after the Data Breaches through the date of Claim Form submission;

- Miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges.

This list provides examples only, and other losses or costs fairly traceable to the Data Breaches may also be eligible for reimbursement.

**To be eligible for this benefit, Settlement Class Members must submit a valid Claim Form by [DEADLINE] with documentation of the Monetary Losses**. This can include receipts or other documentation not "self-prepared" by you that document the costs incurred. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support other submitted documentation. The Settlement Administrator will decide if your claim for Monetary Losses is valid.

**(2) Settlement Benefit—California Statutory Payment (up to $100)**. In addition to, or in the alternative to, submitting a claim for Documented Monetary Losses, Residual Cash Payment, and/or Credit Monitoring (*see* Question 9 below), Settlement Class Members who resided in California at the time of the Data Breaches may elect to receive a statutory cash payment of up to $100 on a claims-made basis ("California Statutory Payment"). To be eligible to receive the California Statutory Payment, California Settlement Class Members must submit their name, address, Unique Class Member ID number, and an attestation under penalty of perjury that they were residents of California at the time of the Data Breaches. Unless specifically requested by the Settlement Administrator, California Settlement Class Members need not submit any proof-of-residency documentation. **To be eligible for this benefit, California Settlement Class Members must submit a valid Claim Form by [DEADLINE].**

**(3) Settlement Benefit—Residual Cash Payment (estimated at $60)**. In addition to the above benefits, Settlement Class Members may also submit a claim for a Residual Cash Payment. The amount of this benefit shall be determined pro rata based on the amount remaining in the Settlement Fund following payment of the attorneys' fees and expenses, service awards, administrative costs, credit monitoring costs, claims for reimbursement of Documented Monetary Losses, and claims for California Statutory Payments. The Residual Cash Payment shall not exceed $599 per individual. Proposed Class Counsel estimate this payment will be approximately $60 based on expected claims rates, but this amount could be higher or lower. **To be eligible for this benefit, Settlement Class Members must submit a valid Claim Form by [DEADLINE].**

**9. How will the settlement help protect me against future identity theft and fraud?**

Questions? Go to [WEBSITE] or call [PHONE NUMBER]

**Settlement Benefit—Credit Monitoring Services**. The settlement provides a way to help protect yourself from unauthorized use of your personal information. Settlement Class Members may submit a claim to enroll in three (3) years of three-bureau credit monitoring services at no cost. These services include the following features:

- Three-bureau credit monitoring providing notice of changes to your credit report at all three national credit bureaus;

- $1 million in identity theft insurance protections;

- CyberScan Dark Web Monitoring;

- Fully Managed Identity Restoration services;

- Member Advisory Services; and

- Lost Wallet Assistance.

The credit monitoring services will be provided by IDX, the nation's largest provider of incident response services, and trusted to protect over 100 million consumers. If you submit a valid Claim Form and elect to enroll in Credit Monitoring Services, you will receive enrollment instructions by email after approval of the settlement.

You may make a claim for Credit Monitoring Services in addition to a claim for Reimbursement for Documented Monetary Losses, Residential Cash Payment, and/or (if applicable) a California Statutory Payment.

**To be eligible for this benefit, you must submit a valid Claim Form by [DEADLINE].**

## HOW DO YOU SUBMIT A CLAIM?

| 10. | How do I get a benefit? |
|---|---|

**To receive a benefit under the settlement, you must complete and submit a Claim Form.** The full Claim Form is available at **[WEBSITE]**. A tear-off Claim Form will also be mailed to Settlement Class Members. The tear-off Claim Form can be used for claims that do not require documentation, such as the Residual Cash Payment, Credit Monitoring Services, and California Statutory Payment. The tear-off Claim Form is not sufficient for the Documented Monetary Loss claim.  You may submit a Claim Form online or through the mail.

Read the  instructions  carefully when filling out the Claim Form, provide the required documentation (as applicable), and submit the Claim Form according to  the instructions on the Claim Form.

| 11. | What is the deadline for submitting a Claim Form? |
|---|---|

The deadline to submit a Claim Form is [DATE] (this is the last day to file online and the postmark deadline for mailed Claim Forms).

| 12. | How will claims be decided? |
|---|---|

The Settlement Administrator will decide whether and to what extent any claim made on each Claim Form is valid.  The Settlement Administrator may require additional information.  If you do  not

Questions? Go to [WEBSITE] or call [PHONE NUMBER]

provide the additional information in a timely manner, then your claim will be considered invalid and will not be paid.

**13.    When will I get my payment?**

Settlement payments will be distributed as soon as possible if the Court grants final approval of the settlement and after any appeals are resolved.

The Court will hold a Final Approval Hearing on _____, **2026 at** _____**.m. ET** to decide whether to approve the settlement.  If the Court approves the settlement, there may be appeals from that decision and resolving those can take time, perhaps more than a year. It also takes time for all the Claim Forms to be processed.  Please be patient.

## LEGAL RIGHTS RESOLVED THROUGH THE SETTLEMENT

**14.    What am I giving up as part of the settlement?**

Flagstar gets a release from all claims covered by this Settlement. Thus, if the settlement becomes final and you do not exclude yourself from the settlement, you will be  a Settlement Class Member and you will give up your right to sue Flagstar and other persons ("Released Parties") as to all claims ("Released Claims") arising out of or relating to the Date Breaches. This release is described in the Settlement Agreement, which is available at **[WEBSITE].**  If you have any questions you can contact the Settlement Administrator (*see* Question 26).

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want to be part of this settlement, then you must take steps to exclude yourself from the Settlement Class.  This is sometimes referred to as "opting out" of the settlement.

**15.    If I exclude myself, can I get a payment from this settlement?**

No.  If you exclude yourself you will not be entitled to receive any benefits from the settlement,  but you will not be bound by any judgment in this case.

**16.    If I do not exclude myself, can I sue Flagstar for the same thing later?**

No. Unless you exclude yourself, you give up any right to sue Flagstar (and any other Released Parties) for the claims that this settlement resolves. You must exclude yourself from the Settlement Class to start your own lawsuit or to be part of any different lawsuit relating to the claims in this case. If you want to exclude yourself, then do not submit a Claim Form to ask for any benefit under the settlement.

**17.    How do I exclude myself from the settlement?**

To exclude yourself from the settlement you must mail a "Request for Exclusion" postmarked no later than [DEADLINE] to:

Flagstar Settlement Administrator
c/o Eisner Advisory Group LLC
Attn: Exclusion Request

Questions? Go to [WEBSITE] or call [PHONE NUMBER]

P.O. Box 4427
Baton Rouge, LA 70821

This statement must contain the following information:

- The case name of the Action (*Angus et al. v. Flagstar Bank, N.A.*)

- Your full name and address;

- Your personal signature;

- The words "Request for Exclusion" or a similar statement clearly indicating that you intend to be excluded from the settlement.

Requests for Exclusion seeking exclusion on behalf of more than one Settlement Class Member shall be deemed invalid by the Settlement Administrator.

If you do not comply with these procedures and the deadline for exclusions, you will lose any opportunity to exclude yourself from the Settlement Class, and your rights will be determined in this lawsuit by the Settlement Agreement if it is approved by the Court, and you may not recover under any other settlement agreement regarding the claims released as part of the settlement.

## OBJECTING TO THE SETTLEMENT

**18.     How do I tell the Court that I do not like the settlement?**

You can tell the Court that you do not agree with the settlement or some part of it by objecting to the settlement. The Court will consider your views in its decision on whether to approve the settlement. The Court can only approve or deny the settlement and cannot change its terms. To object, you must mail your objection to the Clerk of the Court, at the mailing addresses listed below, postmarked by **no later than [OBJECTION DEADLINE]**:

**Clerk of Court**
[ADDRESS]

Your objection must be written and must include all of the following:

- The case name and number of the Action (*Angus et al. v. Flagstar Bank, N.A.*, Case No. 2:21-cv-10657-MFL-DRG)

- Your full name, address, and telephone number;

- If represented by counsel, the full name, address, and telephone number of your counsel;

- A statement of whether the objection applies only to you, to a specific subset of the class, or to the entire class;

- A statement of the specific grounds for the objection; and

- A statement of whether you intend to appear at the Final Approval Hearing, and if so, whether personally or through counsel.

Questions? Go to [WEBSITE] or call [PHONE NUMBER]

9

If you are represented by counsel and your counsel intends to speak at the Final Approval Hearing, your written objection must include:

- A detailed description of any evidence you may offer at the Final Approval Hearing and
- Copies of any exhibits you may introduce at the Final Approval Hearing.

To be considered by the Court, your objection must be either (a) electronically filed by [OBJECTION DEADLINE]; or (b) mailed first-class postage prepaid to the Clerk of Court for the United States District Court for the Eastern District of Michigan and postmarked by no later than [OBJECTION DEADLINE].

### 19.    What is the difference between objecting and asking to be excluded?

Objecting is telling the Court that you do not like the settlement and why you do not think it should be approved. You can object only if you are a Settlement Class Member.

Excluding yourself is telling the Court that you do not want to be part of the Class and do not want to receive any benefit from the settlement. If you exclude yourself, then you have no basis to object because you are no longer a member of the Settlement Class and the case no longer affects you. If you submit both a valid objection and a valid request to be excluded, you will be deemed to have only submitted the request to be excluded.

## THE LAWYERS REPRESENTING YOU

### 20.    Do I have a lawyer in this case?

Yes. The Court appointed John Yanchunis of Morgan & Morgan Complex Litigation Group and Norman Siegel of Stueve Siegel Hanson LLP as Class Counsel to represent the Class.

You will not be charged for their services. If you want to be represented by your own lawyer, then you may hire one at your own expense.

If you have questions about making a claim, please contact the Settlement Administrator. *See* Question 26.

### 21.    How will the lawyers be paid?

Class Counsel will ask the Court for an award for attorneys' fees up to $10,500,000, plus reasonable litigation costs and expenses of up to $500,000. This payment for any attorneys' fees and expenses to Class Counsel will be made out of the Settlement Fund. Any such award would compensate Class Counsel for investigating the facts, litigating the case, and negotiating the Settlement and will be the only payment to them for their efforts in achieving this Settlement and for their risk in undertaking this representation on a wholly contingent basis.

Class Counsel will also ask the Court for Service Awards up to $2,500 for each of the Settlement Class Representatives for their services in representing the Class in this matter.

Any award for attorneys' fees and expenses for Class Counsel and the Settlement Class Representative Service Awards must be approved by the Court. The Court may  award less than the amount requested. Class Counsel's papers in support of final  approval of the Settlement will

Questions? Go to [WEBSITE] or call [PHONE NUMBER]

be filed no later than _____, 2025, and their application for attorneys' fees and expenses and service award will be filed no later than _____, 2025, and will be posted on the settlement website.

## THE COURT'S FINAL APPROVAL HEARING

**22.     When and where will the Court decide whether to approve the settlement?**

The Court will hold a Final Approval Hearing at _____ m. ET on _____, 2026, at the United States District Court, Eastern District of Michigan, Theodore Levin U.S. Courthouse, 231 w. Lafayette Blvd., Detroit, MI 48226, Courtroom 110, or by remote or virtual means as ordered by the Court. At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are timely and valid objections, then the Court will consider them and will listen to people who have asked to speak at the hearing if such a request has been properly made. The Court will also rule on the request for an award of attorneys' fees and reasonable expenses, and service award. After the hearing the Court will decide whether to approve the settlement. We do not know how long these decisions will take. The hearing may be moved to a  different date or time without additional notice, so Class Counsel recommend checking **[WEBSITE]** or calling **[PHONE NUMBER]**.

**23.     Do I have to attend the hearing?**

No. Class Counsel will present the Settlement Agreement to the Court. You or your own lawyer are welcome to attend at your expense, but you are not required to do so. If you send an objection, you do not have to visit the Court to talk about it. As long as you filed your written objection on time with the Court and mailed it according to the instructions provided in Question 18, the Court will consider it.

**24.     May I speak at the hearing?**

You may ask the Court for permission to speak at the final fairness hearing. To do so, you must file an objection according to the instructions in Question 18, including all the information required.

## IF YOU DO NOTHING

**25.     What happens if I do nothing?**

If you do nothing you will not get any money from this settlement. If the Court approves the settlement and the judgment becomes final, then you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Defendant and the other Released Parties based on any of the Released Claims related to the Date Breaches, ever again.

## GETTING MORE INFORMATION

**26.     How do I get more information?**

If you have questions about this notice or the settlement, you may go to the settlement website at [WEBSITE]. You can also contact the Settlement Administrator at [PHONE NUMBER] or by mailing a letter to Flagstar Data Breach Settlement c/o Eisner Advisory Group LLC, P.O. Box 4427, Baton Rouge, LA 70821 for more information or to request that claim form or a copy of this document

Questions? Go to [WEBSITE] or call [PHONE NUMBER]

11

be sent to you in the mail. If you wish to communicate directly with Class Counsel, you may contact them. You may also seek advice and guidance from your own private lawyer at your own expense, if you wish to do so.

This notice is only a summary of the lawsuit and the settlement. Other related documents can be accessed through the settlement website.

This Notice is approved by the United States District Court for the Eastern District of Michigan. **PLEASE DO <u>NOT</u> CONTACT THE COURT DIRECTLY IF YOU HAVE QUESTIONS ABOUT THE SETTLEMENT**. Please contact the Settlement Administrator if you have any questions.

Questions? Go to [WEBSITE] or call [PHONE NUMBER]

# Exhibit C-6

<table>
<tr><td>

**Your Claim must be submitted online or postmarked by: [[DATE]], 2025**

</td><td>

### CLAIM FORM
### FLAGSTAR DATA BREACH LITIGATION

*Angus, et al. v. Flagstar Bank, N.A.,*
Case No. 2:21-cv-10657-MFL-DRG
United States District Court for the Eastern District of Michigan

</td><td></td></tr>
</table>

## I. GENERAL INSTRUCTIONS

You have been identified by Flagstar as a Settlement Class Member who resides in the United States and whose personally identifying information ("PII") was impacted by either or both of the two Data Breaches Flagstar experienced in 2021.

**To be eligible for settlement benefits, You must submit this Claim Form**. There are two ways to submit this Claim Form:

1. Complete the Claim Form online at [WEBSITE]. **To receive a settlement benefit from this settlement via an electronic payment, you must submit the Claim Form electronically.** If submitting a Claim Form online, you must do so by [**DEADLINE**].

*OR*

2. Mail your Completed Claim Form, including any supporting documentation, by U.S. mail to the following address: Flagstar Settlement Administrator c/o Eisner Advisory Group LLC, P.O. Box 4427, Baton Rouge, LA 70821. Please type or legibly print all requested information, in blue or black ink. If you submit the Claim Form by U.S. Mail, the completed and signed Claim Form must be postmarked by [**DEADLINE**].

For more information on submitting a Claim Form, please refer to the Long Form Notice posted on the Settlement Website **www.[[URL]].com**,

## II. OVERVIEW OF SETTLEMENT BENEFITS

Settlement Class Members are eligible to receive:

❖ **Reimbursement for Documented Monetary Losses:** All Settlement Class Members may submit a claim for reimbursement of Documented Monetary Losses fairly traceable to the Data Breaches **up to $25,000** per individual. Documented Monetary Losses may include, without limitation, unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs that were incurred on or after the Data Breaches through the date of Claim submission; and miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges. Settlement Class Members with Monetary Losses must submit documentation supporting their Claims. This can include receipts or other documentation not "self-prepared" by the Claimant that documents the costs incurred. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support other submitted documentation; **AND**

❖ **Residual Cash Payment:** All Settlement Class Members may claim a cash payment currently estimated to be approximately $60, but up to $599. The residual cash payment may be claimed in addition to a claim for Documented Monetary Losses (the exact value of the cash payment will be calculated after deducting payments for valid claims, settlement administrative costs, service awards, and attorneys' fees and expenses); **AND**

❖ **California Statutory Payment**: Settlement Class Members who resided in California at the time of the Data Breaches may elect to receive a statutory cash payment of up to $100; **AND**

❖ **Credit Monitoring Services:** In addition to all of the above, all Settlement Class Members may claim three (3)

years of three-bureau identity theft protection and Credit Monitoring Services.

These Settlement benefits are subject to *pro rata* reduction as needed in the event that the total claims exceed the $31,500,000.00 cap on payments to be made by Defendant. Specifically, in the event that the aggregate amount of payments for unreimbursed documented Monetary Losses and California Statutory Payments exceeds the remaining amount in the Settlement Fund after payment of Attorneys' Fees and Expenses, Service Awards, Administrative Costs, and Credit Monitoring services, then each Settlement Class Member's Claim for documented Monetary Losses and California Statutory Payments shall be proportionally reduced on a *pro rata* basis, and there will be no Residual Cash Payment. The Parties do not anticipate any *pro rata* decrease.

## III. SETTLEMENT CLASS MEMBER NAME AND CONTACT INFORMATION

Provide your name and contact information below. You must notify the Settlement Administrator if your contact information changes after you submit this Claim Form.

_____     _____
**First Name**                                 **Last Name**

_____
**Address 1**

_____
**Address 2**

_____   ___ ___ ___   ___ ___ ___ ___ ___
**City**                                            **State**        **Zip Code**

**Email Address:** _____@_____

**Telephone Number (optional): (** ____ ____ ____ **)** ____ ____ ____ **-** ____ ____ ____ ____

## IV. PROOF OF DATA BREACH SETTLEMENT CLASS MEMBERSHIP

☐   Check this box to certify if you are an individual who resides in the United States and to whom the Settlement Administrator sent notice of this Settlement.

Enter the Class Member ID Number provided on your Postcard Notice:

**Class Member ID:** ___ ___ ___ ___ ___ ___ ___ ___

## V. REIMBURSEMENT FOR DOCUMENTED MONETARY LOSSES

All Settlement Class Members may submit a claim for reimbursement of Documented Monetary Losses up to $25,000 per individual. Documented Monetary Losses may include, without limitation, unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs that were incurred on or after the Data Breaches through the date of Claim submission; and miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges that are fairly traceable to the Data Breaches.

Settlement Class Members who elect to submit a claim for reimbursement of Documented Monetary Losses must provide the Settlement Administrator the information required to evaluate the claim, including:

1.   The Settlement Class Member's name and current address;
2.   Documentation supporting the unreimbursed cost, loss, or expenditure; and
3.   A brief description of the documentation describing the nature of the cost, loss, or expenditure, if the nature of the cost, loss, or expenditure is not apparent from the documentation alone.

**You must have documented Monetary Losses incurred as a result of the Data Breaches and submit documentation to obtain this benefit.**

Documentation supporting Documented Monetary Losses can include receipts or other documentation not "self-prepared" by the Settlement Class Member that documents the costs incurred. "Self-prepared" documents, such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support to other submitted documentation.

☐   **I hereby attest under penalty of perjury that the unreimbursed costs, losses, or expenditures I am claiming were incurred as a result of the Data Breaches.**

| Cost Type (Fill all that apply) | Approximate Date of Documented Monetary Loss | Amount of Documented Monetary Loss | Description of Supporting Reasonable Documentation (Identify what you are attaching and why) |
|---|---|---|---|
| Example: Identity Theft Protection Service | 0 7/17/2 0 (mm/dd/yy) | $50.00 | Copy of identity theft protection service bill |
| | ___/___ ___/___ ___ (mm/dd/yy) | $_____._____ | |
| | __ ___/___ ___/___ ___ (mm/dd/yy) | $_____.____ | |
| | __ ___/___ ___/___ ___ (mm/dd/yy) | $_____._____ | |

## VI. RESIDUAL CASH PAYMENT

In addition to claiming Documented Monetary Losses, you may also claim a Residual Cash Payment of up to $599. While the amount of this payment depends upon the number of valid claims made, the amount of the Cash Payment is currently estimated to be approximately $60 per valid claim.

To be eligible for this benefit, you must select the box below:

☐   **Yes, I choose a Residual Cash Payment.**

**Note: You may also submit a claim for reimbursement of Documented Monetary Losses above.**

## VII. CREDIT MONITORING SERVICES

In addition to claims for Documented Monetary Losses and a Residual Cash Payment, all Settlement Class Members may claim three (3) years of three-bureau identity theft protection and Credit Monitoring Services that will include the following features: (1) CyberScan Dark Web Monitoring, (2) $1,000,000 Reimbursement Insurance, (3) Fully Managed Identity Restoration services, (4) Member Advisory Services, and (5) Lost Wallet Assistance.

To be eligible for this benefit, you must select the box below:

☐      **Yes, I choose three (3) years of Credit Monitoring Services**

## VIII. CALIFORNIA STATUTORY PAYMENT

In addition to claims for Documented Monetary Losses, a Residual Cash Payment, and Credit Monitoring Services, Settlement Class Members who resided in California at the time of the Data Breaches—from January through December 2021—may elect to receive a statutory cash payment of up to $100.

To be eligible for this benefit you must select the box below and attest that you resided in California at the time of the Data Breaches:

☐      **Yes, I choose the California Statutory Payment and I Attest that I resided in California in 2021.**

## IX. PAYMENT SELECTION

Please select one of the following payment options, which will be used should you be eligible to receive a settlement payment.

☐      **Venmo**

_____

Enter the mobile number or email address associated with your Venmo account

☐      **Zelle**

_____

Enter the mobile number or email address associated with your Zelle account

☐      **PayPal**

_____

Enter the mobile number or email address associated with your PayPal account

☐      **Virtual Prepaid Card**

_____

Enter the email address where you would like the Virtual Prepaid Card delivered

☐   **Physical Check**  -  Payment will be mailed to the address provided above.

## X. ATTESTATION & SIGNATURE

I declare under penalty of perjury that the foregoing information I have supplied in this Claim Form is true and correct to the best of my recollection, and that this form was executed on the date set forth below.

_____        ____ ____ / ____ ____ / ____ ____ ____ ____
Signature                                                                                                Date

**_____**
Printed Name